## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SILEIRI DOE,
MERYEM DOE, and
OLIVIA DOE,

on behalf of themselves and all others
similarly situated, and

VENEZUELAN ASSOCIATION OF
MASSACHUSETTS,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

U.S. CUSTOMS AND BORDER
PROTECTION,

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security,

JOSEPH B. EDLOW, in his official capacity
as Director of U.S. Citizenship and
Immigration Services, and

RODNEY S. SCOTT, in his official capacity
as Commissioner of U.S. Customs and Border
Protection,

*Defendants*.

Case No.

**CLASS ACTION COMPLAINT FOR
VACATUR, DECLARATORY, AND
INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

JURISDICTION AND VENUE ..........................................................................................2

PARTIES ................................................................................................................................3

    I.  Individual Plaintiffs............................................................................................3

    II.  Associational Plaintiff.......................................................................................4

    III.  Defendants ........................................................................................................5

STATEMENT OF FACTS ....................................................................................................5

    I.  The INA authorizes the Secretary to terminate an individual's parole based on a case-by-case determination that the purpose of parole has been served...............................5

    II.  DHS regulations require parole applicants at the U.S.-Mexico border to use CBP One to schedule an appointment for inspection ....................................................................6

    III.  Individual Plaintiffs and VAM members secured their appointments via CBP One and were granted parole ...............................................................................................9

    IV.  Defendants unlawfully terminated Individual Plaintiffs' and VAM members' parole *en masse*..................................................................................................................9

    V.  Defendants' unlawful actions have had devastating impacts on Individual Plaintiffs and VAM members ...............................................................................................12

CLASS ALLEGATIONS ....................................................................................................14

CLAIMS FOR RELIEF.......................................................................................................16

PRAYER FOR RELIEF ......................................................................................................22

## INTRODUCTION

1.      This action is brought on behalf of individual noncitizen Plaintiffs ("Individual Plaintiffs"), on behalf of themselves and others similarly situated, and the Venezuelan Association of Massachusetts ("VAM"), on behalf of its members, who waited at the U.S.-Mexico border for weeks and months at serious physical, emotional, and financial risk to themselves and their families for the opportunity to lawfully enter the United States.  Individual Plaintiffs, putative class members, and VAM members are noncitizens who were lawfully granted parole—a critical legal pathway for people in crisis to enter the country so that they may safely apply for asylum or other immigration relief.  They provided personal information and biometrics to the U.S. government and relied on the government's representation that they would be able to legally remain in the country for a set duration, typically two years.  They joined communities around the country, received work authorization and gained employment, secured housing, and obtained other benefits that were dependent on their lawful parole status.  But their parole was suddenly and arbitrarily terminated in April 2025 by mass emails from a "no reply" government address, and in some cases, without any notice whatsoever.

2.      Both the parole terminations themselves and the final decision to terminate parole *en masse* by Defendants U.S. Department of Homeland Security ("DHS") and U.S. Customs and Border Protection ("CBP") are patently unlawful.  Defendants did not terminate the Individual Plaintiffs' or VAM members' parole on a case-by-case basis or upon a determination that the purpose of parole has been served, as is expressly required by the Immigration and Nationality Act ("INA") and DHS regulations.  Instead, Defendants terminated *en masse* the lawful parole status of hundreds of thousands of noncitizens seeking asylum or other immigration relief and who secured appointments for inspection at the border through the U.S. government's "CBP One" app.

3.      Defendants provided *no explanation at all* for the mass parole terminations, abandoning their duty under the Administrative Procedure Act ("APA") to make reasonable decisions and provide adequate explanations for those decisions.  In the mass parole termination emails to Individual Plaintiffs and VAM members, Defendants did not identify any individual recipient by name, did not provide any basis for the termination, and did not consider any individual recipient's reliance interests in their lawful status to remain in the United States. Defendants' actions flout the APA's basic requirements.

4.      Defendants' callous and unlawful actions indiscriminately stripped Individual Plaintiffs and VAM members of their legal right to live and work in the United States.  They went from living in the United States legally to being deemed "illegal aliens" overnight, substantially increasing their risk of immediate detention and removal to countries from which they fled (or even to third countries to which they have no ties).

5.      Individual Plaintiffs and hundreds of VAM members secured appointments for inspection via the U.S. government's CBP One app, were inspected by CBP officers at a designated port of entry along the U.S.-Mexico border, and were lawfully granted parole between May 13, 2023 and January 19, 2025.  Through this lawsuit the Individual Plaintiffs, on behalf of themselves and the putative class, and VAM on behalf of its members, seek to hold unlawful, vacate and/or set aside Defendants' decision to conduct an *en masse* parole termination and the parole terminations themselves.  They seek to restore the *status quo ante*, including by the restoration of their work authorizations, so that they may enjoy the full duration of their grants of parole.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including the INA, 8 U.S.C. § 1101 *et seq.*, and the APA, 5 U.S.C. § 551 *et seq.*

2

7.      This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief in order to provide complete relief to the class pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers. The APA further authorizes the Court to grant preliminary and permanent relief to stay, set aside, enjoin, or vacate agency action that is outside the statutory authority of the agency, is arbitrary, capricious, or is otherwise not in accordance with law.  5 U.S.C. §§ 705–706.

8.      Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because at least one Individual Plaintiff resides in this judicial district, Plaintiff VAM has its principal place of business in this judicial district, a substantial part of the events or omissions giving rise to this action are occurring in this district, and each defendant is an agency of the United States or an officer of the United States sued in his or her official capacity.

## PARTIES

**Individual Plaintiffs**

9.      Plaintiff **Sileiri Doe** is a Venezuelan citizen and a member of VAM, who lives in Ohio.   Sileiri arrived at the Brownsville, Texas port of entry after making an appointment via the CBP One app.  Sileiri met with CBP officials who inspected her and granted her parole to enter and remain in the United States until September 13, 2026.   She submitted an asylum application in January 2025, with a hearing scheduled for September 2026.   Sileiri's parole was abruptly terminated on or around April 18, 2025 via mass email, and her work authorization was subsequently revoked.

10.      Plaintiff **Meryem Doe** is a citizen of Cuba and a member of VAM, who lives in Texas.   Meryem arrived at the El Paso, Texas port of entry on July 14, 2024, after making an appointment via the CBP One app.  Meryem met with CBP officials who inspected her and granted

her parole to enter and remain in the United States until July 13, 2026. She has a pending application for lawful permanent residency under the Cuban Adjustment Act. Meryem's parole was abruptly terminated on or around April 18, 2025 via mass email. Meryem does not currently have work authorization; prior to her parole termination, she submitted an application, which remains pending.

11.     Plaintiff **Olivia Doe** is a citizen of Haiti living in Massachusetts. Olivia arrived at a port of entry in Texas after making an appointment via the CBP One app. Olivia met with CBP officials who inspected her and granted her parole to enter and remain in the United States until November 30, 2026. She submitted an asylum application in February 2025, with a hearing scheduled for December 2027. Olivia's parole was abruptly terminated on or around April 18, 2025 via mass email, and her work authorization was subsequently revoked.

**Associational Plaintiff**

12.     Plaintiff VAM is a nonprofit membership-based organization that provides services to noncitizens who recently arrived from Venezuela and other countries. These services range from assistance with employment and obtaining driver's licenses, to legal guidance on adjustment of immigration status and applying for asylum. VAM also provides support service for newly arrived noncitizens by providing basic necessities like clothing, food, and assistance with paying rent. VAM has almost 3,000 members across the United States; over 400 of its members reside in Massachusetts. About 675 members of VAM are noncitizens that secured appointments for inspection via the CBP One app, were inspected by CBP officers at a designated port of entry along the U.S.-Mexico border, were lawfully granted parole between May 13, 2023 and January 19, 2025, and had their parole terminated in April 2025.

**Defendants**

13.     Defendant **DHS** is a federal agency headquartered at 2707 Martin Luther King, Jr. Ave. S.E., Washington, D.C. 20528.

14.     Defendant **U.S. Citizenship and Immigration Services ("USCIS")** is a component agency of DHS with its headquarters at 5900 Capital Gateway Dr. Camp Springs, M.D. 20746.

15.     Defendant **CBP** is a component agency of DHS with its headquarters at 1300 Pennsylvania Ave., NW, Washington, D.C. 20229.

16.     **Defendant Kristi Noem** is the Secretary of DHS.  She is sued in her official capacity.

17.     **Defendant Joseph B. Edlow** is the Director of USCIS, a component agency of DHS.  He is sued in his official capacity.

18.     **Defendant Rodney S. Scott** is the Commissioner of CBP, a component agency of DHS.  He is sued in his official capacity.

STATEMENT OF FACTS

I.     **The INA authorizes the Secretary to terminate an individual's parole based on a case-by-case determination that the purpose of parole has been served**

19.     Under U.S. immigration law, the Executive Branch has long been permitted to exercise its discretion to temporarily allow into the United States noncitizens who are applying for admission to the country instead of holding them in detention.  *See* 8 U.S.C. § 1182(d)(5)(A). Currently, the DHS Secretary holds that parole authority by statute.[1]  *See id.*

---

[1] The Secretary has further delegated that authority by regulation to various other DHS officials. *See* 8 C.F.R. § 212.5(a).

20.    Parole may be granted "under such conditions as [the DHS Secretary] may prescribe" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* The Secretary or her delegees may terminate a noncitizen's parole when "in the opinion of the Secretary of Homeland Security," "the purposes of [] parole . . . have been served." *Id.*

21.    DHS regulations provide the conditions under which the DHS Secretary and her delegees may grant and terminate parole. *See* 8 C.F.R. § 212.5(a). As relevant here, the regulation provides that parole decisions be made "in accordance with" the terms of INA § 212(d)(5), *i.e.*, on a case-by-case basis.

22.    A grant of parole terminates automatically, without written notice, (a) when the noncitizen departs the United States, or (b) "if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). In all other cases, parole "shall be terminated upon written notice to the alien." *Id.* § 212.5(e)(2). Those other cases include when the "purpose for which parole was authorized" is "accomplish[ed]" or "when in the opinion of" the DHS Secretary or an authorized official "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.*

## II.    DHS regulations require parole applicants at the U.S.-Mexico border to use CBP One to schedule an appointment for inspection

23.    In May 2023, DHS began directing noncitizens to use the CBP One mobile application as the primary, if not exclusive, mechanism to seek parole and/or asylum at the U.S.-Mexico border. *See* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314, 31,317–18. (May 16, 2023). DHS's regulations required that noncitizens at the border use the CBP One app to

schedule an appointment for inspection at a port of entry, or else they were ineligible for asylum, with very limited exceptions. *Id.*

24.    CBP One was not a tool to request parole or to claim asylum, but a scheduling tool to make appointments for inspection at a designated port of entry. *See* Examining CBP One: Functions, Features, Expansion, and Risks: Joint Hearing Before the Subcommittee on Border Security and Enforcement and the Subcommittee On Oversight, Investigations, and Accountability, 118th Cong. 19 (2024) (statement of Adam Hunter, Deputy Assistant Secretary for Immigration Policy at the Department of Homeland Security). CBP officers at the border retained discretion to determine the appropriate process for each noncitizen, including an option to grant parole on a case-by-case basis for urgent humanitarian reasons or significant public benefit. *See* Customs & Border Protection, CBP One: Policies, Guides, Training, Memos (Sept. 26, 2024), at 12, U.S. Customs & Border Protection FOIA Reading Room, https://perma.cc/XGP9-G5AP (PDF) (directing CBP officers to consider "the totality of the individual case circumstances" while making case-by-case parole determinations).

25.    Noncitizens seeking to schedule an appointment with federal immigration officials installed the CBP One app on their phones, answered a series of questions about their background, and provided an email address for future communications. After registering with CBP One, applicants were given a date and the port of entry at which they should present themselves for inspection and potential entry into the United States.

26.    Noncitizens seeking appointments could request them each day, entering a pool from which CBP selected registrants through a semi-random process. Priority was given to those with the earliest CBP One registration dates. Selected users were notified through CBP One and given 23 hours to accept the appointment, while users who were not selected had to repeat the

process the following day.  These individuals often waited weeks and months in Mexico, using the app day after day to request an appointment, hoping they would be selected.

27.     At the port of entry interview, noncitizens seeking parole provided biometrics, including fingerprints, photographs and sometimes DNA.  During inspection, the CBP officer determined an appropriate processing disposition for the noncitizen, including by initiating removal proceedings by issuing a Notice to Appear before an immigration judge, and considering, on a case-by-case basis, whether to grant parole for urgent humanitarian reasons or a significant public benefit.  INA § 212(d), 8 U.S.C. 1182(d).

28.     To make their discretionary parole determinations, CBP officers considered a variety of factors, such as "the nature of the noncitizen's inadmissibility, any humanitarian or public interest considerations relevant at the time of inspection, any previous apprehensions, previous grants of discretion, and the noncitizen's intended purpose for seeking entry into the United States."  *See* Examining CBP One, at 19 (statement of Rep. Adam Hunter).

29.     Pursuant to a CBP officer's case-by-case determination that parole is appropriate for urgent humanitarian reasons or a significant public benefit, a noncitizen may lawfully enter the United States for a set duration of time, obtain work authorization, apply for asylum or other immigration relief, and apply for other benefits for which they are eligible.  The noncitizen's parole terminates automatically at the expiration of the time for which parole was authorized, 8 U.S.C. § 212.5(e)(1), or may be terminated upon written notice consistent with the case-by-case process described above, 8 C.F.R. 212.5(e)(2)(i).

### III.    Individual Plaintiffs and VAM members secured their appointments via CBP One and were granted parole

30.    Individual Plaintiffs and VAM members followed the above-described process to lawfully enter the United States between May 16, 2023, and January 19, 2025.

31.    Individual Plaintiffs and VAM members installed the CBP One app on their phones, answered a series of questions about their background, and provided an email address for future communications.

32.    Individual Plaintiffs and VAM members were given a date and the port of entry at which they should present themselves for inspection and potential entry into the United States. They presented themselves for inspection at the designated port of entry and were inspected, including by providing biometrics to federal immigration officials.

33.    Following inspection, Individual Plaintiffs and VAM members were lawfully granted parole based on urgent humanitarian reasons or a significant public benefit.  According to the terms of their parole, they were able to remain legally present in the United States for a set duration, typically two years.

34.    As a result, Individual Plaintiffs and VAM members lawfully entered the United States.  Many applied for employment authorization under longstanding regulations, including 8 C.F.R. § 274a.12(c)(11), and other benefits, including certain federal and state health care benefits, financial aid to attend college, housing and emergency shelter benefits, and other safety net and supplemental programs.

### IV.    Defendants unlawfully terminated Individual Plaintiffs' and VAM members' parole *en masse*

35.    In January 2025, the Trump Administration disabled the scheduling functionality in CBP One and, in March, renamed the app "CBP Home" and enabled it so that noncitizens could report their departures via the app.  *See* Dep't of Homeland Sec., Six Months of Keeping America

Safe Under President Trump and Secretary Noem (July 20, 2025), https://perma.cc/7Z6X-328H ("President Trump ended the CBP One app that allowed more than one million aliens to illegally enter the U.S."); *see also* U.S. Dep't of Homeland Sec., *DHS Launches CBP Home App with Self-Deport Reporting Feature* (March 10, 2025), https://perma.cc/KND3-4KKB.

36.    In April 2025, the Trump Administration terminated all grants of parole authorized through CBP One.  *See* Valerie Gonzalez, Trump's DHS Revokes Legal Status for Migrants Who Entered the US on Biden-Era CBP One App (Apr. 8, 2025), https://perma.cc/FX74-BN5Z.

37.    Many Individual Plaintiffs and VAM members received a mass email from a "no reply" government address that terminated their lawful parole status effective immediately.  The mass email was not addressed to any specific recipient, was not signed by any government official, and provided no explanation for the termination.  The mass parole termination emails were received in several iterations, starting in early April and continuing into the next couple of weeks.

38.    The mass email stated as follows:

**<u>Notice of Termination of Parole</u>**

It is time for you to leave the United States.

You are currently here because the Department of Homeland Security (DHS) paroled you into the United for a limited parole period.  Pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), DHS is now exercising its discretion to terminate your parole.  Unless it expires sooner, your parole will terminate 7 days from the date of this notice.

If you do not depart the United State *immediately* you will be subject to potential law enforcement actions that will result in your removal from the United States – unless you have otherwise obtained a lawful basis to remain here.  Any benefits you receive in the United States in connection with your parole – such as work authorization – will also terminate.  You will be subject to potential criminal prosecution, civil fines, and penalties, and any other lawful options available to the federal government.

DHS encourages you to leave immediately on your own.  You can use the CBP Home mobile app on your phone to make arrangements for your departure.  If you are departing the United States via land, you should report your departure once outside the United States via that same app.  If you are having trouble reporting your departure via land, visit https://i94.cbp.dhs.gov/home for more information about voluntarily reporting your departure.

Again, DHS is terminating your parole.  Do not attempt to remain in the United States – the federal government will find you.  Please depart the United States immediately.

*See* Termination Notice, Exhibit A.

39.    The Termination Notice was sent in such an indiscriminate manner that DHS emailed it to some immigration lawyers who are U.S. citizens, urging them to depart the United States.  *See* Miriam Jordan, Jazmine Ulloa, and Hamed Aleaziz, *They Followed the Rules.  Now Thousands of Migrants Are Told, 'Leave*,' N.Y. Times, April 15, 2025.

40.    The Termination Notice did not clarify that, if the individual had applied for asylum or other immigration relief, as in the case of Individual Plaintiffs Sileiri and Olivia, the individual has the right to stay in the United States until an Immigration Judge or other immigration officials determined their eligibility for such benefits.  USCIS, Affirmative Asylum Processing with USCIS, https://perma.cc/L4LJ-65E8 (visited July 15, 2025) ("You may live in the United States while your Form I-589 is pending before USCIS.").

41.    On April 8, DHS announced that it was immediately revoking the lawful parole status of all individuals who had secured their appointments for inspection via the CBP One app.  An agency spokesperson stated: "Formal termination notices have been issued, and affected aliens are urged to voluntarily self-deport using the CBP Home app.  Those who refuse will be found, removed, and permanently barred from reentry."  *See* Ali Bianco, DHS revokes parole for hundreds of thousands who entered via the CBP One App, Politico, April 8, 2025.

42.    Some Individual Plaintiffs and VAM members did not receive the Termination Notice but learned that their parole status had been terminated only after they looked up their online Form I-94 (proof of legal visitor status).  Meryem, who also applied for asylum, did not receive any notice when DHS terminated her parole.  Instead, after reading about the mass parole

terminations in the news, Meryem looked up her online Form I-94 and learned that DHS had terminated her parole without notifying her.

43.     Several weeks later, DHS emailed many Individual Plaintiffs and VAM members that DHS intended to revoke their employment authorization in 15 days ("Notice of Intent to Revoke Employment Authorization").  *See* Notice of Intent to Revoke Employment Authorization, Exhibit B.  They subsequently received notices that their employment authorization had been revoked.  *See* Revocation of Employment Authorization, Exhibit C.

## V.     Defendants' unlawful actions have had devastating impacts on Individual Plaintiffs and VAM members

44.     Defendants' mass parole terminations have upended the lives of Individual Plaintiffs and VAM members.

45.     Each of the Individual Plaintiffs has been severely harmed by the sudden and arbitrary termination of their lawful parole status.

46.     Before arriving in the United States, Plaintiff Sileiri was an advocate on behalf of fetal/maternal health in Venezuela.  As a result of her advocacy, she was harassed, threatened and ultimately kidnapped and tortured by the ruling party's political operatives.  Sileiri fled Venezuela in 2018.  But since the mass termination of her parole, Sileiri is living under the looming threat of detention and deportation, with the government likely to argue that Sileiri is accruing unlawful presence.[2]  After Sileiri's parole was terminated, she lost her work authorization.  Sileiri was in the process of obtaining her driver's license when her parole was revoked.  She had completed the written portion of the test but was unable to complete the process because DHS unlawfully terminated her parole.  Before DHS terminated her parole, Sileiri went to church and took English

---

[2] The accrual of unlawful presence may render an individual ineligible for admission into the United States.  INA § 212(a)(9)(B)(i), INA § 212(a)(9)(C)(i)(I).

12

classes. Now Sileiri only leaves home as necessary for daily activities. She lives in a constant state of fear of being detained and deported, even though she entered the United States lawfully and has a pending asylum claim.

47. Plaintiff Meryem is also afraid to leave her house now that she no longer has parole. Although she has a claim for permanent immigration relief under the Cuban Adjustment Act, without parole status, Meryem risks being detained and removed before her application can be processed. The government is also likely to maintain that she is accruing unlawful presence. In Cuba, Meryem worked as a legal administrative assistant, but had to flee based on threats she received after refusing to join the Communist Party. If she returned to Cuba, her safety would be at severe risk. Meryem stays home with her three-year old daughter most of the time, and she is afraid to enroll her child in day care. Meryem would like to look for work to help support her family, but she has been unable to do that because she does not have work authorization.

48. Olivia, like the other Individual Plaintiffs, has also suffered significant harm since her parole and work authorization were unlawfully revoked. Olivia lives in a shelter with her newborn baby, and she is unable to seek employment to support herself and her baby. She now lives under the looming threat of detention and deportation, and the government is likely to maintain that she is accruing unlawful presence. Although she has a pending asylum application, without parole status, Olivia is at risk of deportation to Haiti, due to the government's current practice of detaining and removing noncitizens without parole.

49. VAM members have also been severely harmed by the sudden and arbitrary termination of their lawful parole status. There are 675 members of VAM who used the CBP One app to schedule inspections at the border, were granted parole, and then had their parole terminated in April 2025. VAM members experienced the same types of harms identified above by class

members.  These harms include elevated risk of detention and removal, termination of work authorizations, and termination of eligibility for certain benefits available to those with lawful status, such as certain federal and state health care benefits, financial aid to attend college, housing and emergency shelter benefits, and other safety net and supplemental programs.  The revocations of work authorization have deprived or threaten to deprive Individual Plaintiffs and VAM members of their primary source of income, which in turn impairs their ability to provide for their families and to pay the fees and cost of legal representation necessary to apply for asylum or seek an adjustment in immigration status.  VAM therefore seeks relief from the unlawful mass parole terminations on behalf of its members.

## CLASS ALLEGATIONS

50.     Plaintiffs Sileiri, Meryem, and Olivia ("Putative Class Representatives") bring this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2): Plaintiffs seek to certify the following nationwide class under Federal Rule of Civil Procedure 23(b)(2):

> All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023, and January 19, 2025; (iii) had their parole terminated in April 2025; and (iv) remain in the United States.

51.     This action meets all of the Rule 23(a) prerequisites for maintaining a class action.

52.     The Plaintiff Class is so numerous that joinder is impracticable.  Approximately 900,000 individuals entered the United States using the CBP One app.  Marissa A. Priante, et al., DHS Revokes Legal Status, Sends Parole Termination Notices to CBP One App Users in United States, Nat'l Law Rev. (Apr. 16, 2025), https://perma.cc/7L56-QPYE.  While Plaintiffs are unable to identify the exact number of Plaintiff Class Members, Plaintiffs are informed and believe that the Plaintiff Class is likely comprised of hundreds of thousands of individuals and therefore is

sufficiently numerous particularly in light of their geographic spread and that joinder would be an impracticable drain on judicial resources.

53.     The claims of the Plaintiff Class members share common issues of law, including whether Defendants acted outside their statutory authority or otherwise in violation of the APA when they terminated parole absent a case-by-case determination that the purposes of parole had been served for each Plaintiff Class member.

54.     The claims of the Plaintiff Class members share common issues of fact, including, but not limited to: whether the mass parole terminations for Plaintiff Class members were made on a case-by-case basis, as required by 8 U.S.C. § 1182(d)(5)(A); and whether the mass parole terminations for Plaintiff Class members were made by an authorized official based on their determination that the purpose of parole has been served, as required by 8 C.F.R. 212.5(e)(2)(i).

55.     Because the claims of the Plaintiff Class members share common issues of law and fact, they will not require individualized determinations of the circumstances of any plaintiff.

56.     The claims or defenses of the Putative Class Representatives are typical of the claims or defenses of the members of the Plaintiff Class.  Like other members of the class, the Putative Class Representatives have been harmed by, among other things, Defendants' failure to abide by the plain text of the INA or DHS regulations, thereby leading to arbitrary, capricious, and unlawful action.

57.     The Putative Class Representatives will fairly and adequately protect the interests of the Plaintiff Class.  The Putative Class Representatives will defend the rights of all proposed class members fairly and adequately and have no interest that is now or may be potentially antagonistic to the interests of the Plaintiff Class.  The attorneys representing the Putative Class Representatives include experienced litigators with expertise in class actions, civil rights, and

immigration, and attorneys who are considered able practitioners in federal litigation, including constitutional and administrative law litigation. These attorneys should be appointed as class counsel.

58.     The members of the proposed class are readily ascertainable through Defendants' records.

59.     For reasons set forth by Plaintiff Class's allegations, Defendants have acted, have threatened to act, and will act on grounds generally applicable to the Plaintiff Class, thereby making final equitable and declaratory relief appropriate to the class as a whole. The Plaintiff Class may therefore be properly certified under Federal Rule of Civil Procedure 23(b)(2).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Parole Terminations are Contrary to Law**
**(APA - 5 U.S.C. § 706(2)(A))**
*Class Count Raised by All Plaintiffs Against All Defendants*

60.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

61.     A reviewing court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A)-(C).

62.     DHS's parole authority, as set forth in 8 U.S.C. § 1182(d)(5)(A), requires that terminations of parole be made on a "case-by-case basis" and upon a determination that, in the opinion of the Secretary of Homeland Security, "the purposes of such parole . . . have been served."

63.     As explained above, Defendants terminated *en masse* the lawful parole status of hundreds of thousands of noncitizens across the country. Defendants did not identify any individual recipient by name, did not provide any basis for the termination specific to any recipient, and did not consider any individual recipient's reliance interests in their lawful status to remain in the United States.

16

64.     Defendants did not adjudicate these parole terminations on a case-by-case basis and did not determine that the purpose of parole had been served in any individual case.

65.     Defendants' terminations of the parole of Individual Plaintiffs, putative class members, and VAM members therefore violated 8 U.S.C. § 1182(d)(5)(A).

**SECOND CLAIM FOR RELIEF**
**Parole Terminations Are Arbitrary and Capricious**
**(APA - 5 U.S.C. § 706(2)(A))**
*Class Count Raised by All Plaintiffs Against All Defendants*

66.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

67.     Pursuant to the APA, a reviewing court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A).

68.     The APA's arbitrary-and-capricious standard requires that agencies make reasonable decisions and provide adequate explanations for those decisions. Agency action violates this requirement if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

69.     Under the APA, agencies cannot depart from prior policies without explaining their reasons for doing so, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and must specifically consider the reliance interests of those who may be impacted by a change in their policies. *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 30–31 (2020).

70.     Defendants' terminations of the parole of Individual Plaintiffs, putative class members, and VAM members are arbitrary and capricious in numerous respects, including because Defendants did not adequately explain their decision, failed to explain their reversal in position,

and failed to consider affected individuals' reliance interests in their parole and work authorizations.

### THIRD CLAIM FOR RELIEF
**Parole Terminations are Contrary to Law**
**(APA - 5 U.S.C. § 706(2)(A))**
*Class Count Raised by All Plaintiffs Against All Defendants*

71.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

72.     An agency must "abide by its own regulations." *Rotinsulu v. Mukasey*, 515 F.3d 68, 72 (1st Cir. 2008); *accord United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

73.     DHS regulations require "termination upon written notice" when on a case-by-case basis an authorized official finds that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States" and that the purpose for which parole was authorized has been accomplished. 8 C.F.R. § 212.5(e)(2)(i).

74.     Defendants' parole terminations violated 8 C.F.R. § 212.5(e)(2)(i) in at least two ways.

75.     First, Defendants did not make case-by-case determinations that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States" when they terminated the parole of hundreds of thousands of noncitizens. 8 C.F.R. § 212.5(e)(2)(i). Instead, Defendants terminated parole *en masse*. They did not identify any individual recipient by name, did not provide any basis for the termination specific to any recipient, and did not consider any individual recipient's reliance interests in their lawful status to remain in the United States.

76.     Second, to the extent Defendants made any determinations based on humanitarian reasons or in consideration of the public benefit, the decision was not made by an authorized

18

official listed in § 212.5(a). The parole terminations were not sent from or signed by any authorized official.

77.    Having violated 8 C.F.R. § 212.5, the Defendants' terminations of the parole of Individual Plaintiffs, putative class members, and VAM members are "not in accordance with law." 5 U.S.C. § 706(2)(A).

**FOURTH CLAIM FOR RELIEF**
**Agency Decision to Terminate Parole *En Masse* Is Contrary to Law**
**(APA - 5 U.S.C. § 706(2)(A))**
***Class Count Raised by All Plaintiffs Against All Defendants***

78.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

79.    A reviewing court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A)-(C).

80.    DHS's parole authority, as set forth in 8 U.S.C. § 1182(d)(5)(A), requires that terminations of parole be made on a "case-by-case basis" and upon a determination that, in the opinion of the Secretary of Homeland Security, "the purposes of such parole . . . have been served."

81.    Defendants' decision to terminate *en masse* the lawful parole status of all individuals who secured their appointments for inspection via the CBP One app is contrary to law.

82.    As explained above, Defendants terminated *en masse* the lawful parole status of hundreds of thousands of noncitizens across the country. Defendants did not identify any individual recipient by name, did not provide any basis for the termination specific to any recipient, and did not consider any individual recipient's reliance interests in their lawful status to remain in the United States.

83.    Defendants did not decide the mass parole terminations on a case-by-case basis and did not determine that the purpose of parole had been served in any individual case.

84.    Because Defendants' mass parole terminations violated 8 U.S.C. § 1182(d)(5)(A), Defendants' decision to terminate *en masse* the lawful parole status of all individuals who secured their appointments for inspection via the CBP One app is contrary to law

**FIFTH CLAIM FOR RELIEF**
**Agency Decision to Terminate Parole *En Masse* Is Arbitrary and Capricious**
**(APA - 5 U.S.C. § 706(2)(A))**
***Class Count Raised by All Plaintiffs Against All Defendants***

85.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

86.    Pursuant to the APA, a reviewing court must "hold unlawful and set aside agency action" that is "arbitrary [or] capricious."  5 U.S.C. § 706(2)(A).

87.    The APA's arbitrary-and-capricious standard requires that agencies make reasonable decisions and provide adequate explanations for those decisions.  Agency action violates this requirement if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

88.    Under the APA, agencies cannot depart from prior policies without explaining their reasons for doing so, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), and must specifically consider the reliance interests of those who may be impacted by a change in their policies.  *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 30–31 (2020).

89.    Defendants' decision to terminate *en masse* the lawful parole status of all individuals who secured their appointments for inspection via the CBP One app is arbitrary and capricious, in numerous respects, including because Defendants did not adequately explain their

decision, failed to explain their reversal in position, and failed to consider affected individuals' reliance interests in their parole and work authorizations.

**SIXTH CLAIM FOR RELIEF**
**Agency Decision to Terminate Parole *En Masse* Is Contrary to Law**
**(APA - 5 U.S.C. § 706(2)(A))**
***Class Count Raised by All Plaintiffs Against All Defendants***

90.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

91.     An agency must "abide by its own regulations." *Rotinsulu v. Mukasey*, 515 F.3d 68, 72 (1st Cir. 2008); *accord United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

92.     DHS regulations require "termination upon written notice" when on a case-by-case basis an authorized official finds that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States" and that the purpose for which parole was authorized has been accomplished.  8 C.F.R. § 212.5(e)(2)(i).

93.     Defendants' decision to terminate *en masse* the lawful parole status of all individuals who had secured their appointments for inspection via the CBP One app violated 8 C.F.R. § 212.5(e)(2)(i) in at least two ways.

94.     First, Defendants did not make case-by-case determinations that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States" when they terminated the parole of hundreds of thousands of noncitizens.  8 C.F.R. § 212.5(e)(2)(i).  Instead, Defendants terminated parole *en masse*.  They did not identify any individual recipient by name, did not provide any basis for the termination specific to any recipient, and did not consider any individual recipient's reliance interests in their lawful status to remain in the United States.

95.     Second, to the extent Defendants made any determinations based on humanitarian reasons or in consideration of the public benefit, the decision was not made by an authorized

official listed in § 212.5(a). The mass parole terminations were not sent from or signed by any authorized official.

96.     Because Defendants' mass parole terminations violated 8 C.F.R. § 212.5, Defendants' decision to terminate *en masse* the lawful parole status of all individuals who secured their appointments for inspection via the CBP One app is contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a stay under 5 U.S.C. § 705 of terminations of parole and work authorization issued in order to restore the *status quo ante* so that Plaintiff Class members may enjoy the full duration of their grants of parole;

2. Permanently enjoin Defendants from enforcing the termination of parole and work authorization issued in order to restore the *status quo ante* so that Plaintiff Class members may enjoy the full duration of their grants of parole;

3. Hold unlawful, vacate and/or set aside under 5 U.S.C. § 706 the terminations of parole and work authorization issued in order to restore the *status quo ante* so that Plaintiff Class members may enjoy the full duration of their grants of parole;

4. Declare that the terminations of parole of the Plaintiff Class were unlawful under the APA;

5. Issue a stay under 5 U.S.C. § 705 of Defendants' decision to terminate *en masse* the lawful parole status of the Plaintiff Class in order to restore the *status quo ante* so that Plaintiff Class members may enjoy the full duration of their grants of parole;

6. Permanently enjoin Defendants from enforcing their decision to terminate *en masse* the lawful parole status of the Plaintiff Class in order to restore the *status quo ante* so that Plaintiff Class members may enjoy the full duration of their grants of parole;

7.     Hold unlawful, vacate and/or set aside under 5 U.S.C. § 706 Defendants' decision to terminate *en masse* the lawful parole status of the Plaintiff Class in order to restore the *status quo ante* so that Plaintiff Class members may enjoy the full duration of their grants of parole;

8.     Declare that Defendants' decision to terminate parole *en masse* was unlawful under the APA;

9.     Certify this case as a class action lawsuit, and appoint class counsel of record, as proposed herein;

10.    Award Plaintiffs' counsel attorneys' fees and costs for this action; and

11.    Award such other and further relief that the Court may deem just, equitable, and proper.

Dated: August 11, 2025                     Respectfully,

*/s/ Melanie M. Chaput*
Melanie M. Chaput (MA Bar No. 643470)
Heather Arroyo (MA Bar No. 698460)
Iris Gomez (MA Bar No. 201000)
MASSACHUSETTS LAW REFORM
INSTITUTE
40 Court Street, Suite 700
Boston, MA 02108
Telephone: 617.357.0700
Facsimile: 617.357.0777
mchaput@mlri.org
harroyo@mlri.org
igomez@mlri.org

Brian D. Netter (D.C. Bar No. 979362)
Allyson R. Scher (D.C. Bar No. 1616379)
Cortney Robinson Henderson (D.C. Bar No. 1656074)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090

bnetter@democracyforward.org
ascher@democracyforward.org
crhenderson@democracyforward.org

*Counsel for Plaintiffs*