UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILEIRI DOE, MERYEM DOE, and OLIVIA DOE, on behalf of themselves and all others similarly situated, and VENEZUELAN ASSOCIATION OF MASSACHUSETTS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection.<br><br>Defendants. | Civil Action No. 1:25-cv-12245-ADB |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST
<u>TO FILE PSEUDONYMOUSLY</u>**

Defendants, by and through their counsel Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully oppose Plaintiffs Sileiri Doe, Meryem Doe, and Olivia Doe's August 12, 2025, Motion for Leave to File Pseudonymously. ("Motion") (ECF Doc. 4).

1

## **LEGAL STANDARD**

The First Circuit, along with other federal courts, "have recognized a strong presumption against the use of pseudonyms in civil litigation." *Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022). When a party wishes to proceed under a pseudonym, they must show that they have a "reasonable fear of severe harm that outweighs the public's interest in open litigation." *Id.* at 26 (quoting *Doe v. Megless*, 654 F.3d 404, 409 (2d Cir. 2011). "The party seeking pseudonymity bears the burden of rebutting the strong presumption against it."  *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 73 (1st Cir. 2022).

Unlike other circuits, the First Circuit has not established a multi-factor test for when the use of a pseudonym in civil litigation may be warranted; and instead, the Court has stated, "the appropriate test must center on the totality of the circumstances."  *Id.* at 70.  The First Circuit has advised that "courts – in balancing the relevant interests – must not lose sight of the big picture.  Litigation by pseudonym should occur only in 'exceptional cases.'"  *Id.*

"A district court adjudicating a motion to proceed under a pseudonym should balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account."  *Id.* at 72.  "In most cases, the inquiry should focus upon the extent to which the facts align with one or more of the following paradigms: whether the case is one in which the movant reasonably fears that coming out of the shadows will cause him unusually severe physical or mental harm; whether the case is one in which compelled disclosure of the movant's name will likely lead to disclosure of a nonparty's identity, causing the latter substantial harm; whether the case is one in which compelled disclosure would likely deter, to an unacceptable degree, similarly situated individuals from litigating; or whether the federal suit is bound up with a prior proceeding subject by law to confidentiality protections and forcing disclosure of the party's identity would significantly impinge upon the interests served by keeping the prior proceeding confidential."  *Id.*

Although Plaintiffs call the above "criteria," (ECF Doc. 4-1 at 2), the First Circuit did not characterize the above as "criteria," but as rough paradigms. "Because these paradigms are framed in generalities, a court enjoys broad discretion to quantify the need for anonymity in the case before it. This broad discretion extends to the court's ultimate determination as to whether that need outweighs the public's transparency interest." *Id.* Furthermore, the First Circuit recognized that the paradigms that it outlined are "rough cuts" and "[t]here may also be rare cases in which – although they fall within one or more of these paradigms – either the need for openness or the prospect of serious prejudice to other parties from a grant of pseudonymity overwhelms the movant's privacy concerns." *Id.*

## ARGUMENT

Plaintiffs have not met their burden to proceed pseudonymously, and they have not overcome the presumption of open court proceedings. *Doe. v. Massachusetts Institute of Technology*, 46 F.4th at 68 ("Judicial hostility to a party's use of a pseudonym springs from our Nation's tradition of doing justice out in the open, neither 'in a corner nor in any covert manner.'") (internal citation omitted). While they allege that disclosure of their identities will result in harm to themselves, Plaintiffs fail to acknowledge the fact that basic information about the individual plaintiffs' identities is crucial to the Defendants' ability to defend their case. On balance, the minimal identifying information about each of the individual plaintiffs (name, date of birth and A-Number) is required to be disclosed.

### A. Plaintiffs' Allegations are Insufficient to Overcome the Presumption

Plaintiffs allege that revealing their individual identities exposes them to significant risk of retaliation, threats and harassment. (ECF Doc. 4-1 at 2-3). Plaintiffs state that they "live under the threat of detention and deportation" due to the termination of their parole period; that they fear disclosing their identities will cause the United States government to retaliate against them in

3

immigration proceedings; and that they could face public harassment.

Defendants will not "retaliate" against any plaintiffs – alien or otherwise – named in the complaint. To the contrary, the government recognizes a plaintiff's right to petition this Court for relief, even where it is later decided he or she does not have standing to do so, or the Court determines that it does not have jurisdiction to hear a matter.

On the other hand, a plaintiff's participation in litigation against the government does not immunize that plaintiff from the government's normal, lawful exercise of its sovereign function. The government cannot be deprived of the sovereign prerogative to use lawfully obtained information for a lawful purpose should such purpose arise.

Plaintiffs also argue that federal regulations underscore the importance of confidentiality where asylum claims are implicated. (ECF Doc. 4-1 at 3) (citing 8 C.F.R. §§ 208.6, 1208.6). While both 8 C.F.R §§ 208.6 and 1208.6 speak to the confidentiality of records kept by "DHS and the Executive Office for Immigration Review that indicate that a specific alien has applied for . . . asylum" and specify those records "shall also be protected from disclosure" the restriction is specifically caveated "except as permitted in this section." *See* 8 C.F.R. §§ 208.6(b), 1208.6(b). Both regulations specify that "this section shall not apply to any disclosure to . . . any Federal, State, or local Court in the United States considering any legal action . . . [a]rising from the proceedings of which the asylum application . . . is a part." *See* 8 C.F.R. §§ 208.6(c)(2)(ii), 1208.6(c)(2)(ii).

In addition, Plaintiffs allege that disclosure of their identities could result in harm to their family members. (ECF Doc. 4-1 at 4). First, Plaintiffs provide no specific reasons why their family members could be harmed, except for the general theory that because Plaintiffs fled their countries of origin and are seeking asylum in the United States, that disclosure of their identities could lead to those countries retaliating against the Plaintiffs' family members. This theory of harm is speculative, and taken to its logical conclusion, all applicants for asylum in the U.S. must be allowed

to proceed pseudonymously in litigation. Such a result is not the case, and in fact it would run counter to the First Circuit's strong presumption against parties proceeding pseudonymously in litigation. Second, Plaintiffs' argument that their family in the U.S. will also face harassment from the public if their connection with the Plaintiffs were made known, is also speculative. Third, Plaintiffs posit that "[t]heir friends and loved ones also risk retaliation from the United States government." As explained earlier with respect to the Plaintiffs themselves, Defendants will not be retaliating against Plaintiffs or their relatives based on the filing of the instant lawsuit. On the other hand, a plaintiff's participation in litigation against the government does not immunize that plaintiff (or the plaintiff's relatives) from the government's normal, lawful exercise of its sovereign function.

Finally, Plaintiffs argue that if they were required to disclose their identities, that similarly situated individuals will be deterred from litigating similar cases. Specifically, Plaintiffs point to the deterrence concern in those cases in which "the injury litigated against would be incurred as a result of the disclosure of the [party's] identity." (Citing *Mass. Inst. of Tech.*, 46 F.4th at 71). However, in this case, the alleged injury litigated against, the termination of Plaintiffs' parole and revocation of their employment authorization, has already occurred, and thus such alleged injury would not be incurred as a result of the disclosure of Plaintiffs' identities. To the extent that Plaintiffs fear being deported, such a future "injury" would not be incurred from this lawsuit or their disclosure of their identities in the course of this case but would be based on Plaintiffs' lack of grounds to be lawfully present in the United States.

### B. Prejudice to Defendants' Ability to Defend this Case

Plaintiffs' cursory statement that "the identities of Individual Plaintiffs are not material to the Government's defense in this case," (ECF Doc. 4-1 at 6), should be rejected. On the contrary, keeping Plaintiffs' identities anonymous would unfairly and critically impede Defendants' ability to defend this case.

Defendants have asked Plaintiffs for the names, dates of birth and Alien Registration Number ("A-Number") for each of the individual plaintiffs – this is the minimal information that Defendants will need to determine the immigration history of each plaintiff. Without this information, Defendants will be unable to defend against Plaintiffs' broad arguments that parole was terminated *en masse* and allegedly for no discernable reasons, for these individual plaintiffs. The identities of the plaintiffs are thus essential to establish the Plaintiffs' standing in this case. Moreover, the Defendants need to be aware of the identities of these individuals in order to test their claims and vet their backgrounds. *See*, *e.g.*, Fed. R. Evid. 608 and 609(a).

Defendants cannot be placed in a position where they are trying to defend their case and test Plaintiffs' claims without any of the pertinent information about the Plaintiffs. This lawsuit is directly challenging the terminations of Plaintiffs' parole and alleging that such terminations were done unlawfully in violation of the Administrative Procedure Act. Without the ability to investigate the Plaintiffs' immigration history and background, it will be impossible for Defendants to determine why each Plaintiff's parole was terminated, and if there are any additional facts relevant to potential defenses. Accordingly, Defendants must be provided the minimal identifying information for the named Plaintiffs (name, date of birth and A-Number).

## CONCLUSION

The Court should deny Plaintiff's Motion for Leave to File Pseudonymously.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: September 25, 2025    By:    */s/ Shawna Yen*
Shawna Yen Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

6

Tel.: 617-748-3100
Email: Shawna.Yen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 25, 2025

By: */s/ Shawna Yen*
SHAWNA YEN
Assistant U.S Attorney