UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILEIRI DOE,<br>MERYEM DOE, and<br>OLIVIA DOE,<br>on behalf of themselves and all others similarly situated, and<br>VENEZUELAN ASSOCIATION OF MASSACHUSETTS,<br><br>                Plaintiffs,<br>   v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection.<br><br>                Defendants. | Civil Action<br>No. 1:25-cv-12245-ADB |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

Defendants, by and through their counsel Leah B. Foley, United States Attorney for the District of Massachusetts, submit their Consolidated Memorandum of Law in support of Defendants' Motion to Dismiss, Defendants' Cross-Motion for Summary Judgment, and in Opposition to Plaintiffs' Motion for Summary Judgment (ECF Doc. 32 & 32-1).

**INTRODUCTION**

As a general matter, an alien who arrives in the United States and cannot demonstrate his admissibility generally is either promptly removed or detained pending removal proceedings. See 8 U.S.C. §§ 1225(b)(1)(A), (B), and (2)(A). The Immigration and Nationality Act ("INA") provides, however, that in limited circumstances the Secretary of Homeland Security may parole such an alien—that is, release him from detention and allow him to temporarily enter the United States. See 8 U.S.C. § 1182(d)(5)(A). Whether to grant parole to inadmissible applicants for admission and release them into the interior in lieu of otherwise mandatory immigration detention, and whether and when to terminate that parole, lies within the discretion of the Department of Homeland Security (DHS)—as does the decision to terminate any such parole whenever "the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). Therefore, the temporary and discretionary nature of parole indicates that reliance interest upon the continued existence of parole is limited.

In April 2025, U.S. Customs and Border Protection (CBP), a component of DHS, started transmitting notices to inadmissible aliens who had been paroled at a Port of Entry (POE) along the U.S.-Mexico border POEs after scheduling appointments for inspection using the CBP One app, informing them that their parole was being terminated.  Plaintiffs challenge this discretionary termination of parole, alleging the termination of their parole (as well as their parole-based employment authorization) was arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act (APA) and have moved for summary judgment on their claims.

The Court should deny Plaintiffs' motion and dismiss their claims, or in the alternative, grant summary judgment for Defendants. As a threshold matter, this Court lacks jurisdiction to review

DHS's decisions to terminate parole. Congress reserved the parole-termination decision exclusively to the opinion of the Secretary. Underscoring as much, Congress barred judicial review of discretionary decisions like the decision to end parole: "Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action . . . the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). And the parole power is just one such discretionary authority. The Venezuelan Association of Massachusetts (VAM) also lacks standing. But, even if the Court were to reach the merits of Plaintiffs' claims, Defendants' terminations of parole for Plaintiffs were not contrary to law because there is no requirement that terminations of parole address individualized reasons for termination—as the First Circuit recently held in *Svitlana Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025) and because Defendants complied with their notice regulations. The terminations were also not arbitrary and capricious, but they were in accordance with the policy that such mass grants of parole were inconsistent with the purpose of the parole statute.

## **BACKGROUND**

### I.    **Legal Background**

The Executive Branch has broad constitutional and statutory power over the administration and enforcement of the nation's immigration laws. *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) *superseded by statute on other grounds as stated in Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 135 (2020); *see, e.g.*, 6 U.S.C. § 202(4); 8 U.S.C. § 1103(a)(1), (3). The INA authorizes the Secretary of Homeland Security, "in [her] discretion," to "parole into the United States" applicants for admission "temporarily under such conditions as [the Secretary] may prescribe" "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). "Congress has delegated remarkably broad discretion to

executive officials under the INA, and these grants of statutory authority are particularly sweeping in the context of parole[.]" *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987).

Parole is, by definition, a temporary permission for an alien to physically enter the United States. Parole permits an alien "to enter the United States temporarily while investigation of eligibility for admission takes place." *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005). *See also, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958) (describing parole as a device used to release aliens "while administrative proceedings are conducted" without effecting a change in legal status). "Besides allowing legal access to the United States with the ability to work, and in some cases receive federal benefits, a grant of parole does not per se confer additional rights upon a non-citizen." *Svitlana Doe v. Noem*, 152 F.4th 272, 277 (1st Cir. 2025) (citing *Dept' of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) (explaining that even aliens who have been paroled for years "are 'treated' for due process purposes 'as if stopped at the border'" (quotation omitted)).

Immigration officers such as CBP officers have the discretion to parole applicants for admission into the United States. *See* 8 C.F.R. §§ 212.5(b), 235.3(b)(2)(iii), (c). Such parole "shall not be regarded as an admission." 8 U.S.C. § 1182(d)(5)(A). DHS may also terminate parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served," and "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*; *see also* 8 C.F.R. § 212.5(e).

**CBP One App**. In October 2020, CBP launched a mobile device application called CBP One. Beginning in 2023, CBP One was made available for aliens to schedule an appointment to present at a POE for consideration for an exception to the Title 42 Public Health Order. 88 Fed. Reg. 31314, 31317 n.30 (May 16, 2023). Following the termination of the Title 42 Public Health Order,

CBP One was made available for aliens to schedule an appointment to present at a POE along the Southwest Border for inspection under Title 8. *Id.* at 31317.

The prior administration described this function of the CBP One app as a "mechanism for noncitizens to schedule a time to arrive at POEs along the [Southwest Border], to allow an increasing number of migrants who may wish to claim asylum to request an available time and location to present and be inspected and processed at certain POEs." *Id.* Many of the aliens who presented at the POE after scheduling an appointment using the CBP One app, following immigration processing, were placed in removal proceedings under 8 U.S.C. § 1229a and paroled into the United States.

**Executive Orders and Agency Memoranda**. On January 20, 2025, President Trump signed two executive orders relevant to this case.   First, Executive Order 14159, entitled "Protecting the American People Against Invasion" ("EO 14159") directed the Secretary of State, the Attorney General, and the Secretary of Homeland Security to take actions including "ensuring that the parole authority under section 212(d)(5) of the INA (8 U.S.C. 1182(d)(5)) is exercised on only a case-by-case basis in accordance with the plain language of the statute, and in all circumstances only when an individual alien demonstrates urgent humanitarian reasons or a significant public benefit derived from their particular continued presence in the United States arising from such parole,"  and "ensuring that employment authorization is provided in a manner consistent with section 274A of the INA (8 U.S.C. 1324a), and that employment authorization is not provided to any unauthorized alien in the United States." EO 14159 § 16(a) & (c); 90 Fed. Reg. 8443, 8446 (Jan. 20, 2025) (Certified Administrative Record ("CAR") Bates No. SDOE0021) (Exhibit A).[1]

---

[1] Exhibit A, the Certified Administrative Record, is being filed with the Court manually due to its size.

The second Executive Order, 14165, entitled "Securing Our Borders" directed the Secretary of Homeland Security to "[c]ease using the 'CBP One' application as a method of paroling or facilitating the entry of otherwise inadmissible aliens into the United States," and to "[t]erminate all categorical parole programs that are contrary to the policies of the United States."  EO 14165 § 7(a) & (b), 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025); SDOE 0025.  The EOs themselves did not terminate parole or take any other action concerning parole, but rather exhorted DHS to examine and modify its processes as appropriate to fit these principles.

On January 20, 2025, Acting Secretary of Homeland Security Benjamine Huffman issued a memorandum entitled "Exercising Appropriate Discretion Under Parole Authority," ("Jan. 20 Huffman Memo").  The January 20 Huffman Memo directed DHS to, over a 60-day period, review its existing parole policies to determine which were in strict compliance with § 1182(d)(5)(A).  *Id.* at 2; SDOE 0004.  The Memo also instructed DHS and its components, pending that review, to "pause, modify or terminate" any parole policy that did  not comply if: it "was not promulgated pursuant to the procedural requirements of the [APA] or any comparable scheme," any "legitimate reliance interests" could be protected, and "[d]oing so is otherwise consistent with applicable statutes, regulations, and court orders." Jan. 20 Huffman Memo at 2; SDOE 0004.  Acting Secretary Huffman explained that the purpose of the memorandum was "to ensure that all future actions taken by DHS with regard to the exercise of the parole authority are consistent with law and within the scope of DHS's authority" and that he was implementing this memorandum as a matter of "[his] discretion to deny parole in any circumstance."  *Id.* at 2; SDOE 0004.

On January 23, 2025, Acting Secretary Huffman issued a memo entitled "Guidance Regarding How to Exercise Enforcement Discretion" ("Jan. 23 Huffman Memo") which "authorizes DHS components to pause, modify, or terminate, effective immediately, any parole program that is inconsistent with the [Jan. 20] memorandum – subject to certain conditions designed to ensure any

such actions are lawful." The Jan. 23 Huffman Memo also directed DHS and its component agencies to (1) take all steps to review cases of aliens amenable to expedited removal and consider, in exercising enforcement discretion, whether to apply expedited removal, which may include termination of active parole status, and (2) for all other aliens who were "granted parole under a policy that may be paused, modified, or terminated immediately under the January 20 memorandum," to, *inter alia*, review the alien's parole status to determine, in exercising enforcement discretion, whether parole remains appropriate. Jan. 23 Huffman Memo at 2; SDOE0002. This memo further directed that any such actions "shall be taken in a manner consistent with applicable statutes, regulations and court orders. They shall also be taken in a manner that takes account of legitimate reliance interests." *Id.*

The Huffman memos did not themselves terminate any parole programs or grants.

**Discontinuance of CBP One App and Parole Terminations.** On January 20, 2025, CBP discontinued use of the scheduling function of the CBP One app. *See CBP Removes Scheduling Functionality in CBP One™ App* (Jan. 21, 2025), at https://www.cbp.gov/newsroom/national-media-release/cbp-removes-scheduling-functionality-cbp-one-app. In April 2025, DHS began sending out parole termination notices to individuals who had been paroled at POEs after scheduling appointments for inspection using the CBP One app. (SDOE 00140).

**PROCEDURAL HISTORY**

On August 11, 2025, Plaintiffs—three aliens whose identities are still unknown to Defendants (Sileiri Doe, Olivia Doe, and Meryem Doe) and one association, VAM, which purports to represent unnamed members—filed this putative class complaint challenging the termination of parole of aliens who had received parole after presenting themselves at POEs with appointments scheduled using the CBP One app, alleging that these parole terminations were unlawful and in violation of the APA. (Complaint) (ECF Doc. 1).

On October 16, 2025, Plaintiffs filed the instant Motion for Summary Judgment, arguing Defendants' decision to terminate parole for aliens who presented at a POE on the U.S-Mexico border pursuant to a CBP One appointment was arbitrary and capricious and otherwise contrary to law. The pseudonymous Plaintiffs and anonymous VAM members assert that they presented themselves at POEs pursuant to scheduled CBP One appointments, were inspected and processed by immigration officers, and received parole for a two-year period. (ECF Doc. 32-1 at 7-10). None assert that they received any indication from the government—orally or in writing—of the reason or reasons they were granted parole. Plaintiffs and the VAM members fail to disclose whether they were also placed in removal proceedings under 8 U.S.C. § 1229a when processed, although presumably they were—and most of them implicitly acknowledge as much, asserting that they have upcoming hearings on their asylum applications in their removal proceedings. *Id.*

Plaintiffs and the anonymous VAM members all assert that their parole was terminated in April 2025, but they claim that not all of them received a written notice of this termination. ECF 32-1 at 6-7. All individual Plaintiffs except for Meryem Doe assert that they have filed or will file an asylum application, which enables them to apply for employment authorization under 8 C.F.R. § 274a.12(c)(8) if the application remains pending for a certain period of time. *See* ECF 32-4 at ¶ 13;

ECF 32-5 at ¶ 5 (Olivia Doe obtained employment authorization due to pending asylum application); ECF 32-7 at ¶¶ 11-13.

## STANDARDS

Federal courts are courts of limited jurisdiction, and the party asserting jurisdiction bears the burden of showing it exists. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). "Dismissal based on the pleadings is appropriate . . . when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction." *Patel v. Jaddou*, 695 F. Supp. 3d 158, 165 (D. Mass. 2023), *aff'd sub nom. Gupta v. Jaddou*, 118 F.4th 475 (1st Cir. 2024). Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, in cases involving review of agency action under the APA, "review is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012)

## ARGUMENT

The Court should dismiss Plaintiffs' claims or, alternatively, grant summary judgment to Defendants. First, this Court lacks jurisdiction. Parole terminations are unreviewable discretionary decisions by the Secretary of Homeland Security. Moreover, Plaintiffs have failed to show that VAM has standing to sue on behalf of its members. Second, even if the Court reaches the merits of Plaintiffs' arguments, either as a matter of law or as supported by undisputed facts, Defendants' discretionary decision to terminate parole for Plaintiffs or others who received parole after presenting themselves at POEs after having made appointments via the CBP One app was not contrary to law or arbitrary and capricious.

### A. The Court Lacks Subject Matter Jurisdiction

This Court lacks jurisdiction over Plaintiffs' claims because parole terminations are

discretionary decisions by the Secretary of Homeland Security that are not reviewable, under the INA, 8 U.S.C. § 1252.   The APA also forecloses review of this discretionary decisionmaking. Furthermore, VAM lacks associational standing.

### 1.    The INA Deprives the District Court of Jurisdiction

Section 1252(a)(2) of Title 8 of the United States Code, entitled "Matters Not Subject to Judicial Review" states that "[n]otwithstanding any other provision of law . . . no court shall have jurisdiction to review" and decision or action of the Secretary "the authority for which is specified under this subchapter to be in [her] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii).

Congress has placed the authority to terminate parole in the Secretary's discretion.   The parole statute explicitly provides that the Secretary may terminate parole when she determines, in her "opinion," that the "purposes" of parole "have been served." 8 U.S.C. § 1182(d)(5)(A); *see also Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (determining that statutory language that Secretary may revoke visa approval "for what he deems to be good and sufficient cause" denotes discretion).

Accordingly, because parole termination is a discretionary decision by the Secretary, Section 1252(a)(2)(B)(ii)'s judicial-review bar applies. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Kucana v. Holder*, 558 U.S. 233, 247–48 (2010).   The language "no court shall have jurisdiction to review" in § 1252(a)(2)(B) is about as specific as language gets—and this bar applies without exception and "notwithstanding any other provision of law (statutory or nonstatutory)." 8 U.S.C. § 1252(a)(2)(B).   The Court thus may not review the decisions to terminate parole at issue in this matter and should dismiss them.

### 2.    The APA Forecloses Judicial Review

In addition, the APA provides a second independent ground for why review is foreclosed.

The parole terminations are "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As stated, *supra*, Section 1182(d)(5)(A) vests the Secretary with authority to terminate parole whenever "the purposes of such parole shall, *in [her] opinion*, … have been served." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The statute thus makes the Secretary's *opinion* the touchstone for the decision. Reviewing courts cannot know better than the Secretary herself what her own opinion is. That phrasing thus "fairly exudes deference" to the Secretary, closely resembling other statutes that commit a decision to agency discretion such that judicial review is not authorized. *See Bouarfa*, 604 U.S. at 13-14 (statute providing that Secretary may revoke visa petition approval "for what he deems to be good and sufficient cause"); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (statute providing official may fire employee when he "shall deem such termination necessary or advisable"). "Short of permitting cross-examination of the [Secretary] concerning [her] views," there is "no basis on which a reviewing court could properly assess" her decision. *Webster*, 486 U.S. at 600.

3.    Plaintiffs Have Failed to Show Associational Standing

VAM fails to show that it has standing in this case. The concept of standing is rooted in the traditional understanding of a case or controversy and, at a constitutional minimum, requires that a plaintiff (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Raines v. Byrd*, 521 U.S. 811, 818-20 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). VAM, as an organization, fails to meet those constitutional minimums. VAM's standing argument rests solely on the application of the comparatively new, and judicially suspect doctrine of associational standing. *See, e.g., Alliance for Hippocratic Medicine*, 602 U.S. at 398 (Thomas, J., concurring) ("[T]he Court has never explained or justified . . . [the associational standing] doctrine's expansion of Article III standing."). The Court should not entertain this constitutionally

suspect, novel doctrine to find standing.

However, even if this novel doctrine were to be applied, Plaintiffs have failed to show that the requirements for associational standing have been met. Associational standing can be appropriate only in limited situations where three prerequisites have been met: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim nor the relief requested requires the participation of individual members of the lawsuit." *Hunt v. Wash. State Apple Advertising Com'n*, 432 U.S. 333, 343 (1977). The doctrine demands that the organization identify a particular affected member, not merely a "statistical probability that some of [its] members are threatened with concrete injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). A general reference to unidentified members is insufficient to confer standing on an organization. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.23 (1982).

In the present case, the organization itself admits that membership in it is free and has "members who are not of Venezuelan origin nor have Venezuelan heritage," indicating a large amorphous group with varied interests. ECF 32-7, ¶¶ 6-7. Plaintiffs mention certain alleged anonymous members of VAM who are only known by pseudonyms, without any other indicators of their identities. Defendants are unable to determine the immigration histories of any of the individual plaintiffs, to confirm whether they are actually present in the United States—much less whether they were paroled at land POEs pursuant to CBP One appointments—or to determine if they have standing to sue in their own right; if VAM requires the participation of the individual plaintiffs or not; and if any of the individual plaintiffs suffered concrete injury. Certainly to establish injury in fact, would require the participation of the individual members of the lawsuit. Accordingly, based on this record, Plaintiffs cannot establish the requirements for associational standing.

**B.     The Terminations of Parole Were Not Contrary to Law or Regulation**

Plaintiffs argue that the Defendants' terminations of parole of individuals who had made appointments to present themselves at a POE using the CBP One app violate the INA and DHS regulations.  ECF 32-1 at 17-20.  These arguments are meritless.

1.     The Parole Statute Does Not Require Individualized Terminations of Parole

Plaintiffs argue that "the *en masse* terminations violate the INA, which requires that any modifications to the conditions of parole be made on a case-by-case basis." (ECF 32-1 at 16).  First, plaintiffs provide no evidence that these terminations were indeed "*en masse.*"  Case-by-case termination decisions are not fundamentally incompatible with a general policy directive applied to a large number of individual cases.  Second, despite Plaintiffs' characterization, undisputed facts make clear that Plaintiffs' and others' parole was terminated, not modified. *See* SDOE 140 ("DHS is now exercising its discretion to terminate your parole."); ECF 32-5 at 10 (Olivia Doe notice of denial of parole-based employment authorization stating that "DHS records indicate that your parole has expired."). The ending of a parole term cannot be understood as a new or modified "condition" on a grant of parole. *Cf.* 8 C.F.R. § 212.5(d), (e) (treating "conditions" like "periodic reporting" separately from "termination"). Plaintiffs themselves refer to the Secretary's decision as a mass termination. ECF 32 at 1; ECF 32-1 at 2 (asserting that DHS and CBP "terminated *en masse* humanitarian parole").  Accordingly, their efforts to re-characterize parole terminations as "*en masse*" and modifying the conditions of parole fail.

Even if plaintiffs were correct that these were terminations "en masse," Plaintiffs' argument has been rejected by the First Circuit. In *Svitlana Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), the First Circuit held that the parole statute does not require terminations of parole to be done on a case-by-case basis.  In *Doe*, Plaintiffs had challenged the CHNV parole programs allowing Venezuelan, Cuban, Haitian, and Nicaraguan nationals and their immediate family members to obtain

authorization to travel to the United States to seek a discretionary, case-by-case grant of parole for up to two years.  87 Fed. Reg. 63507, 63508 (Oct. 19, 2022).  On March 25, 2025, DHS terminated the CHNV parole programs effective immediately. 90 Fed. Reg. at 13611. In the ensuing litigation, the First Circuit agreed with the Government's assertion that the parole statute permits categorical or *en masse* termination of parole.  152 F.4th at 287.  The Court noted that while the parole statute specifies that grants of parole must be carried out "only on a case by case basis" and "for urgent humanitarian reasons or significant public benefit" (citing 8 U.S.C. § 1182(d)(5)), "the clause describing the Secretary's authority to terminate any grants of parole does not contain the same limiting language." *Id.* at 286.  Thus, assuming *arguendo*, the decision to terminate Plaintiffs' or others' parole was made categorically and *en masse*, that did not render those terminations unlawful.

Plaintiffs also argue that the terminations violate the parole statute because there is no evidence that the Secretary (or her designee) determined that the "purposes of parole have been served." ECF No. 32-1 at 18. But, as noted, no individualized determination needs to be made to terminate parole. And in any event, whether terminations are based on categorical or individual grounds, the determination that the purposes of parole have been served is implicit in the discretionary decision to terminate—which, as discussed, the Court cannot review.  8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e); SDEO0039; *supra* § I.A-I.B.  Plaintiffs point to nothing requiring a statement of reasons or other memorialization of that decision, and in any event such a requirement would be inconsistent with the discretion granted DHS in this arena, as well as the INA's and the APA's bars to judicial review of discretion.

### 2.  The Parole Terminations Comport with DHS Regulations.

Plaintiffs allege that the Notices of Termination provided no explanation for the termination of parole and were not signed by an authorized official.  (ECF Doc. 32-1 at 18-19).   First, Plaintiffs point to no statutory or regulatory requirement, nor does one exist, requiring that a Notice of

Termination provide, on its face, any explanation for the termination of parole nor that any explanation for the termination decision be otherwise memorialized. As explained, the determination that the purposes of parole have been served is implicit in the discretionary and unreviewable decision to terminate. Nor does the termination regulation require any signature by the authorized official. Instead, 8 C.F.R. § 212.5(e) provides in relevant part:

> [U]pon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i) (emphasis added). According to the plain text of this regulation, the written notice simply needs to advise the alien that his/her parole is being terminated. Plaintiffs seek to insert requirements that the Notice of Termination also contain an explanation for the termination and be signed by an authorized official (ECF Doc. 32-1 at 23), but the text of the regulation does not support either of these requirements. Instead, what is required is that the Secretary of Homeland Security, or one of her designees, make a determination that the purpose for which parole was authorized was accomplished, or that neither urgent humanitarian reasons nor significant public benefit warrants the alien's continued presence in the United States, followed by written notice of termination to the alien. The explanation for that determination was provided by Acting Secretary Huffman in his two Memos, as set forth above.

Second, in this case, the Notices of Termination did provide an explanation for the terminations by invoking 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e) as the authorities under which parole was being revoked. (SDOE0140 & SDOE0141).

Section 1182(d)(5)(A) provides that:

> The Secretary of Homeland Security may, . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded

as an admission of the alien and <u>when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served</u> the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphases added).    By invoking these statutes, the termination notice denoted that the purposes of parole had been served.

Further, the policy announced by the Secretary of Homeland Security, both through the Jan. 20 and Jan. 23 Huffman memos and the EOs on which they were based, which led to the parole terminations here, was based on the recognition that it was not consistent with the statute or in the public interest to have granted parole on a large-scale, *en masse* basis to the vast majority of aliens who presented at a U.S. POE after having made an appointment to do so with the CBP One app. Indeed, this approach led to inadequate vetting of individuals before they were granted parole, leading to many individuals being in the United States who do not meet the criteria for parole and in fact should be excluded for various reasons.  *See* EO 14165, 90 Fed. Reg. 8467, 8467 (Jan. 20, 2025); SDOE0024.  Thus, the Secretary made the decision to terminate the parole of individuals like the Plaintiffs because continuing with their parole no longer served the country's interest.  As the First Circuit recognized in *Svitlana Doe*: "[o]nce the executive branch determines . . . that achieving the policy aim is no longer possible or desired, then it takes no individualized determination in any way to ascertain those persons for whom it can no longer be said that parole furthers the country's interest."  152 F.4th at 286.

Plaintiffs finally argue that DHS's terminations violated their regulations because some individuals—including Plaintiff Meryem Doe—allegedly did not receive written notice. Summary judgment cannot be granted on this claim for several reasons.  First, Defendants cannot possibly demonstrate whether or how notice was provided to Plaintiff Meryem Doe (or any Plaintiff or anonymous putative class member) because Plaintiff has not revealed her identity. Plaintiffs should

not be allowed to claim a fact is undisputed when they have denied the government the ability to dispute it. Second, to the extent that Plaintiffs seek to certify a class, this is not an issue common to the class or to members of VAM, and thus relief cannot be granted on this ground on a class-wide or organization-wide basis. Accordingly, it is premature to grant summary judgment or any relief to Meryem Doe on this basis.

### C.     The Decision to Terminate Parole was Not Arbitrary and Capricious

Plaintiffs next assert that the terminations of their parole were arbitrary and capricious because no explanation was given for the terminations. Not so. First, as discussed, DHS may terminate parole at its discretion at any time, when, in the opinion of the Secretary, the purpose of the parole has been served. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2); SDEO0039. Second, DHS has provided sufficient explanations for its termination of parole in this context, and its decision to do so was not arbitrary and capricious.

"Review under the arbitrary and capricious standard is narrow and this [c]ourt may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." *Svitlana Doe*, 152 F.4th at 290 (quoting *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009)). Here, the agency has provided an explanation for its termination of parole grants. In January 2023, Acting Secretary Huffman explained the policy that led to the termination of paroles at issue in this case: "Although parole is a discretionary authority to be exercised in narrow circumstances and only on a case-by-case basis, it has been repeatedly abused by the Executive Branch over the past several decades in ways that are blatantly inconsistent with the statute. Most important, the parole statute does not authorize categorical parole programs that makes aliens presumptively eligible on the basis of some set of broadly applicable criteria." (Jan. 20 Huffman Memo at 2). This policy was made more explicit with the Jan. 23 Huffman Memo which instructed DHS's component agencies "to pause, modify, or terminate, effective immediately, any parole

16

program that is inconsistent with the [Jan. 20] memorandum – subject to certain conditions designed to ensure any such actions are lawful." This policy, which underlies subsequent parole terminations such as those at issue here, evidences an acknowledgment that the large-scale parole of those who presented themselves at POEs with CBP One appointments is not in the public interest or consistent with the statute. Because the termination decision at issue is discretionary and unreviewable both under the INA and because it is committed to agency discretion under the APA, there is no APA requirement to explain that exercise of discretion. It would defeat the purpose of unreviewable discretion to subject it to APA review, no matter how deferential.

Plaintiffs incorrectly argue that the parole terminations here represent a change in position involving reliance interests that requires a "more detailed justification" for the reversal. ECF No. 32-1 at 13, 15-16. Plaintiffs do not actually identify a rule or policy that they claim was reversed—they point to no policy document governing grants of parole for those who presented themselves at POEs with CBP One appointments. Although the government has indeed terminated individual grants of parole for Plaintiffs and others as a result of the policy announced in the Huffman memos, Plaintiffs do not point to any particular reason they were granted parole such that the agency should be required to justify any alleged departure from those reasons in terminating their paroles. In sum, parole terminations do not fall under the rubric of the cases Plaintiffs cite regarding departures from prior policy. *See* MSJ Mem. at 17.

Nor does the parole statute or regulations require any justification for terminating parole, including any consideration of reliance interests before terminating parole. Indeed, Plaintiffs have no legitimate reliance interests in a term of parole, as parole termination is an intended outcome of the temporary process of parole under the statute and regulations. DHS never guaranteed that the parole of those who presented themselves at POEs with CBP One appointments would not be terminated in accordance with those statutes and regulations. When parole was codified into

immigration law, the Supreme Court found that "the parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted." *See Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958); 90 Fed. Reg. at 13612. Here, although Plaintiffs have made it impossible for the government to know precisely the status of Plaintiffs' efforts to seek asylum, the government presumes that parole has served its purpose by giving Plaintiffs and anonymous VAM members the ability to apply for asylum or adjustment of status while in removal proceedings—rather than being placed in expedited removal and detained pending such proceedings. *See* 8 U.S.C. § 1225(b)(1), (b)(2)(A).

In sum, the reasons for the termination of parole for those aliens who had been paroled after having made an appointment to present at a U.S. POE using the CBP One app, are clear: to reverse the large-scale grants of parole to these individuals who had made appointments using the CBP One app, which was contrary to the INA requirement that parole grants must be made only on a case-by-case basis, and only when an individual alien demonstrates urgent humanitarian reasons or a significant public benefit derived from their particular continued presence in the United States.

**D. The Court May Not Grant the Requested Universal Relief.**

As relief if they prevail on summary judgment on their claims, Plaintiffs ask the Court to vacate the "decision" to terminate parole for members of the putative class and to vacate their parole terminations and the revocations of their corresponding parole-based employment authorization, as well as to declare such decisions unlawful. *See* ECF 32-1 at 1. First, such relief would run afoul of § 1252(a)(2)(B)(ii) by compelling the government to grant parole to aliens despite the fact that such decisions are clearly within DHS's sole discretion. Plaintiffs' proposed relief would also eliminate DHS's discretion with respect to granting employment authorization. *See* 8 C.F.R. §§ 274a.12(c)(11), 274a.13(a)(1) ("The approval of applications filed under 8 CFR 274a.12(c)…are within the discretion of USCIS.").

But even if such relief were available, it can at most be granted to the named Plaintiffs. The Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018). As noted above, Plaintiffs have failed to establish associational standing for VAM. Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Courts "do not lightly assume that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and ordinarily courts expect that Congress will make "an unequivocal statement of its purpose" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht Co.*, 321 U.S. at 329. Thus, the APA does not authorize universal vacatur. *See* ECF 176-1 at 34. Indeed, remedies "ordinarily operate with respect to specific parties," rather than "on legal rules in the abstract"; reading the APA to authorize universal relief would do the opposite. *California v. Texas*, 593 U.S. 659, 671 (2021).

But at minimum, the language of 5 U.S.C. § 706(2) authorizing courts to "set aside" agency action must be considered alongside the traditional equitable principle that equitable relief be no broader than necessary to afford relief to the specific Plaintiffs. *See Trump v. CASA, Inc.*, 606 U.S. 831, 851-52 (2025) (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.")). Indeed, the Supreme Court has recently rejected such universal relief. In *Trump v. CASA*, the Supreme Court rejected "universal injunctions," or injunctions that bar the defendant from enforcing "a law or policy against anyone," in contrast to injunctions limited to the plaintiff. *CASA*, 606 U.S. at 833 (finding "[b]ecause the universal injunction lacks a historical pedigree, it falls outside the bounds of a federal court's equitable authority under the Judiciary Act."). Similar reasoning applies here – VAM does not assert or substantiate any injury to support an injunction or

any relief beyond the named individuals—much less that relief should be entered beyond their purported affected membership. Nor can a declaration from an organizational leader alleging harm on behalf of unnamed others, establish injury in fact for the organizational plaintiff.

But even if universal vacatur would be permitted, that relief is not appropriate here where there is no overarching final agency action in the form of a decision or policy document to vacate— rather, each parole termination is the final agency action from which legal consequences flow. *See Bennett v. Spear*, 520 U.S. 154, 178 (1997).

## CONCLUSION

For the reasons described above, Plaintiffs' Complaint should be dismissed, or in the alternative, Plaintiffs' Motion for Summary Judgment should be denied, and Defendants' Cross-Motion for Summary Judgment should be allowed.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: November 6, 2025          By:     */s/ Shawna Yen*
                                         Shawna Yen Assistant U.S. Attorney
                                         U.S. Attorney's Office
                                         John J. Moakley U.S. Courthouse
                                         1 Courthouse Way, Suite 9200
                                         Boston, MA 02210
                                         Tel.: 617-748-3100
                                         Email: Shawna.Yen@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  November 6, 2025

By:    <u>*/s/ Shawna Yen*</u>
SHAWNA YEN
Assistant U.S Attorney