UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILEIRI DOE, MERYEM DOE, and OLIVIA DOE,<br>on behalf of themselves and all others similarly situated, and<br>VENEZUELAN ASSOCIATION OF MASSACHUSETTS,<br><br>Plaintiffs,<br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,<br>JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services, and<br>RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection.<br><br>Defendants. | Civil Action<br>No. 1:25-cv-12245-ADB |

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendants submit that there is no genuine dispute as to the following material facts:

1. In October 2020, U.S. Customs and Border Protection ("CBP") launched a mobile device application called CBP One. *See* Privacy Impact Assessment for CBP One, No. DHS/CBP/PIA-068 (Feb. 19, 2021), available at https://www.dhs.gov/publication/dhscbppia-068-cbp-one-mobile-application.

2. In 2023, CBP One was made available for aliens to schedule an appointment to present at a Port of Entry ("POE") for consideration for an exception to the Title 42 Public Health Order. 88 Fed. Reg. 31314, 31317-18 (May 16, 2023).
3. Following the termination of the Title 42 Public Health Order, CBP One was made available for aliens to schedule an appointment to present at a POE for inspection under Title 8. *Id.* at 31317 n.30.
4. The prior administration described this function of the CBP One app as a "mechanism for noncitizens to schedule a time to arrive at POEs along the [Southwest Border], to allow an increasing number of migrants who may wish to claim asylum to request an available time and location to present and be inspected and processed at certain POEs." *Id.*
5. Many of the aliens who presented at the POE after scheduling an appointment using the CBP One application, following immigration processing, were placed in removal proceedings under 8 U.S.C. § 1229a and paroled into the United States. EO 14165 Section 1 & 4(c), 90 Fed. Reg. 8467, 8468 (Jan, 30, 2025) (SDOE00000024-0025).
6. On January 20, 2025, President Trump signed two executive orders relevant to this case. EO 14165, 90 Fed. Reg. 8467 (Jan. 30, 2025) (SDOE00000024); EO 14159, 90 Fed. Reg. 8443 (Jan 29, 2025) (SDOE00000018).
7. First, Executive Order 14159, entitled "Protecting the American People Against Invasion" ("EO 14159") directed the Secretary of State, the Attorney General, and the Secretary of Homeland Security to take actions including "ensuring that the parole authority under section 212(d)(5) of the INA (8 U.S.C. 1182(d)(5)) is exercised on only a case-by-case basis in accordance with the plain language of the statute, and in all circumstances only when an individual alien demonstrates urgent humanitarian reasons or a significant public benefit derived from their particular continued presence in the United States arising from such parole," and "ensuring that

employment authorization is provided in a manner consistent with section 274A of the INA (8 U.S.C. 1324a), and that employment authorization is not provided to any unauthorized alien in the United States." EO 14159 Section 16(a) & (c) ( SDOE00000021).

8. The second Executive Order, 14165, entitled "Securing Our Borders" directed the Secretary of Homeland Security to "[c]ease using the 'CBP One' application as a method of paroling or facilitating the entry of otherwise inadmissible aliens into the United States," and to "[t]erminate all categorical parole programs that are contrary to the policies of the United States." EO 14165 Section 7(a) & (b) (SDOE00000025).

9. The EOs themselves did not terminate parole or take any other action concerning parole, but rather exhorted DHS to examine and modify its processes as appropriate to fit these principles. EO 14165 (SDOE00000024); EO 14159 (SDOE00000018).

10. On January 20, 2025, Acting Homeland Security Secretary Benjamine Huffman issued a memorandum entitled "Exercising Appropriate Discretion Under Parole Authority," ("January 20 Huffman Memo") (SDOE00000003-04).

11. The January 20 Huffman Memo directed DHS to, over a 60-day period, review its existing instructions, policies, procedures, rules, and regulations pertaining to parole to determine which were in strict compliance with § 1182(d)(5)(A). *Id*. at 2 (SDOE00000004).

12. The Memo also instructed DHS and its subagencies, pending that review, to "pause, modify or terminate" any parole policy that did not comply if: it "was not promulgated pursuant to the procedural requirements of the [APA] or any comparable scheme," any "legitimate reliance interests" could be protected, and "[d]oing so is otherwise consistent with applicable statutes, regulations, and court orders." *Id*.

13. Acting Secretary Huffman explained that the purpose of the memorandum was "to ensure that all future actions taken by DHS with regard to the exercise of the parole authority are consistent

with law and within the scope of DHS's authority" and that he was implementing this memorandum as a matter of "[his] discretion to deny parole in any circumstance." *Id*.

14. On January 23, 2025, Acting Secretary Huffman issued a memo entitled "Guidance Regarding How to Exercise Enforcement Discretion" ("January 23 Huffman Memo") which clarified that the January 20 Huffman Memo "authorizes DHS components to pause, modify, or terminate, effective immediately, any parole program that is inconsistent with the [January 20 Huffman Memo]– subject to certain conditions designed to ensure any such actions are lawful." January 23 Huffman Memo (SDOE00000001).

15. The January 23 Huffman Memo also directed DHS and its component agencies to (1) take all steps to review cases of aliens amenable to expedited removal and consider, in exercising enforcement discretion, whether to apply expedited removal, which may include termination of active parole status, and (2) for all other aliens who were "granted parole under a policy that may be paused, modified, or terminated immediately under the January 20 memorandum," to, *inter alia*, review the alien's parole status to determine, in exercising enforcement discretion, whether parole remains appropriate. January 23 Huffman Memo at 2 (SDOE00000002).

16. This Memo further directed that any such actions "shall be taken in a manner consistent with applicable statutes, regulations and court orders. They shall also be taken in a manner that takes account of legitimate reliance interests." *Id.*

17. The Huffman memos did not themselves terminate any parole programs or grants. January 23 Huffman Memo (SDOE00000001).

18. On January 20, 2025, CBP discontinued use of the scheduling function of the CBP One application. *See* CBP Removes Scheduling Functionality in CBP One app (Jan. 21, 2025), at https://www.cbp.gov/newsroom/national-media-release/cbp-removes-scheduling-functionality-cbp-one-app.

19. In April 2025, DHS began sending out parole termination notices to individuals who had been paroled at POEs after scheduling appointments for inspection using the CBP One app. *See, e.g.,* Department of Homeland Security, Notice of Termination of Parole (April 11, 2025) (SDOE00000140).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: November 6, 2025

By: /s/ Shawna Yen
Shawna Yen Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: Shawna.Yen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 6, 2025

By: /s/ Shawna Yen
SHAWNA YEN
Assistant U.S Attorney