UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILEIRI DOE,<br>MERYEM DOE, and<br>OLIVIA DOE,<br>on behalf of themselves and all others similarly situated, and<br>VENEZUELAN ASSOCIATION OF MASSACHUSETTS,<br><br>Plaintiffs,<br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security,<br>JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services, and<br>RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection.<br><br>Defendants. | Civil Action<br>No. 1:25-cv-12245-ADB |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**STATEMENT OF MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendants respond to the Factual Background section in Plaintiffs' Memorandum in Support of Plaintiff's Motion for Summary

Judgment (Doc. No. 32):[1]

**I. Statutory and Regulatory Background**

1. The Executive Branch has long been permitted to exercise its discretion to temporarily allow into the United States noncitizens who are applying for admission to the country. See 8 U.S.C. § 1182(d)(5)(A). Currently, the DHS Secretary holds that parole authority by statute, which reads:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States.

*Id.*

**Response: Defendants respectfully direct the Court to the cited statutes for a true and accurate representation of their contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith. Defendants aver that this paragraph consists of statements of law to which no response is required, but to the extent a response is required, Defendants deny.**

---

[1] Defendants respond to each statement of fact as set forth in the Statement of Material Facts section of Plaintiff's Memorandum in Support of Plaintiffs' Motion for Summary Judgment (ECF Doc. 32-1 at 7-14), in the absence of a Local Rule 56.1 statement from Plaintiffs. To the extent that Defendants respond that a statement is admitted, Defendants intend for those facts to be deemed admitted for purposes of summary judgment only. L.R. 56.1. Defendants do not concede or rely upon these facts for any purpose other than for Defendants' Opposition to Plaintiffs' Motion for Summary Judgment as well as Defendants' Motion to Dismiss and Cross-Motion for Summary Judgment ("Defendants' Motion") and specifically reserve the right to refute some or all of them at trial. In addition, while the information contained in the Factual Background section of Plaintiff's Memorandum in Support of Plaintiffs' Motion for Summary Judgment, is relevant to Defendants' Motion, Defendants reserve the right to challenge such "facts" at any and all later proceedings, and to object at trial to the introduction of any or all of the information based on relevance, hearsay or any other reason set forth in the Federal Rules of Evidence. *Id.*

2. DHS regulations, in turn, provide the conditions under which the Secretary or her designees may grant and terminate parole. 8 C.F.R. § 212.5. Specifically, the regulations provide that parole may be granted "in accordance with" section 212(d)(5)(A) of the INA "after review of the individual case." *Id.* at § 212.5(c). A grant of parole terminates automatically, without written notice, when (1) the noncitizen departs the United States, or (2) "if not departed, at the expiration of the time for which parole was authorized." *Id.* at § 212.5(e)(1). In all other cases, parole "shall be terminated upon written notice to the alien." *Id.* § 212.5(e)(2). Those other cases include when the "purpose for which parole was authorized" is "accomplish[ed]" or "when in the opinion of" the DHS Secretary or an authorized official "neither humanitarian reasons nor the public benefit warrants the continued presence of the alien in the United States." *Id.*

**Response: Defendants respectfully direct the Court to the cited statutes and regulations for a true and accurate representation of their contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith. Defendants aver that this paragraph consists of statements of law to which no response is required, but to the extent a response is required, Defendants deny.**

3. Relevant here, in May 2023, DHS regulations directed noncitizens to use the CBP One app as the primary, if not exclusive, mechanism to present themselves to seek parole and/or asylum at the U.S.-Mexico border. See Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314, 31,317-18 (May 16, 2023). DHS's regulations required that noncitizens at the border use the CBP One app to schedule an appointment for inspection at a port of entry ("POE"), or else they were ineligible for asylum, with very limited exceptions. *Id.* CBP One was not a tool to request parole or to claim asylum, but a scheduling tool to

make appointments for inspection at a designated port of entry. *See* Fact Sheet: Using CBP One™ to Schedule an Appointment, CBP One: Policies, Guides, Training, Memos (Sept. 26, 2024) at 2 (Sept. 26, 2024), https://perma.cc/XGP9-G5AP ("This scheduling function will allow noncitizens to schedule a time and place to seek an exception from Title 42 public health order for humanitarian reasons based on self-certification of a vulnerability at a port of entry."). CBP officers at the border retained discretion to determine the appropriate process for each noncitizen, including an option to grant parole on a case-by-case basis for urgent humanitarian reasons or significant public benefit. *Id.* ("The granting of an appointment does not guarantee an exception from the Title 42 order. CBP will make determinations of whether an exception is authorized at the POE.").[2]

**Response: To the extent the statements in this paragraph describe the contents of cited materials, Defendants respectfully direct the Court to the cited documents for a true and accurate representation of their contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith. Defendants otherwise admit the facts alleged in this paragraph.**

## II. Factual Background

4. Individual Plaintiffs Sileiri Doe, Meryem Doe, and Olivia Doe, and members of Plaintiff

[2] On January 20, 2025, Defendants canceled all pending CBP One appointments and disabled the application's scheduling functionality; in March, Defendants renamed the app "CBP Home" and enabled it so that noncitizens could report their departures via the app. See Dep't of Homeland Sec., Six Months of Keeping America Safe Under President Trump and Secretary Noem (July 20, 2025), https://perma.cc/7Z6X-328H.

VAM secured appointments for inspection at the U.S.-Mexico border using CBP One and were permitted to lawfully enter the United States between May 16, 2023, and January 19, 2025. Sileiri Decl. ¶ 3, ECF No. 32-4; Olivia Decl. ¶¶ 3,5, ECF No. 32-5; Meryem Decl. ¶ 3, ECF No. 32-6; Velasquez Decl. ¶¶ 9,11-13, ECF No. 32-7.

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

5. Sileiri Doe is a native and citizen of Venezuela, and fled Venezuela based on her fear that the government will harm or kill her for having protested the poor conditions and lack of resources in Venezuelan hospitals. Sileiri Decl. ¶¶ 1, 9. Sileiri was kidnapped and tortured by the Venezuelan government while pregnant. Id. ¶ 9. After inspection on September 14, 2024, Sileiri was granted parole for urgent humanitarian reasons or significant public benefit and was provided an I-94 (proof of legal visitor status) allowing her to stay in the United States until September 13, 2026. Id. ¶ 3. Sileiri also received work authorization that permitted her to work lawfully in the United States until September 13, 2026. Id. Sileiri's parole was terminated on April 18, 2025, and her work authorization was revoked around the same time. Id. ¶ 16. Sileiri timely filed an application for asylum. Id. ¶ 13. The next hearing in Sileiri's asylum case is scheduled for September 22, 2026. Id.

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their**

**claims.**

6. Olivia Doe is a native and citizen of Haiti, and fled Haiti after being threatened and harassed by members of a gang. Olivia Decl. ¶¶ 1, 10. After inspection on December 1, 2024, Olivia was granted parole for urgent humanitarian reasons or significant public benefit and was provided an I-94 allowing her to be lawfully present in the United States through November 30, 2026. Id. ¶¶ 3, 5. Olivia's parole was terminated on April 18, 2025. Id. ¶ 14. Olivia timely filed an application for asylum and has a court date on December 8, 2027. Id. ¶¶ 12, 14.

   **Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

7. Meryem Doe is a native and citizen of Cuba, and fled Cuba after being harassed for her alleged political opinion. Meryem Decl. ¶¶ 1, 11. Meryem was wrongly accused of helping a colleague flee to Mexico and was told that to rehabilitate herself she had to declare herself a member of the Communist Party. Id. ¶ 12. When she refused, she was reported to the Communist Party; the government and the Communist Party began to investigate her, threatened her husband's business, and extorted them. Id. After inspection on July 14, 2024, Meryem was granted parole for urgent humanitarian reasons or significant public benefit and was provided an I-94 allowing her to be lawfully present in the United States through July 13, 2026. Id. ¶ 3. Meryem also received work authorization that permitted her to work lawfully in the United States until July 13, 2026. Id. Meryem's parole was terminated on April 18, 2025, and her work authorization was

revoked around the same time. Id. ¶¶ 21, 23. Meryem timely filed for relief under the Cuban Adjustment Act. Id. ¶ 4.

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

*8.* VAM Member A is a native and citizen of Venezuela, and fled Venezuela after being abused, mistreated, and threatened for her political opposition to Hugo Chavez and the narco-dictatorship in Venezuela. Velasquez Decl. ¶ 11. After inspection on July 24, 2024, VAM Member A was granted parole for urgent humanitarian reasons or significant public benefit and was provided an I-94 allowing her to be lawfully present in the United States through July 23, 2026. *Id.* VAM Member A's parole was terminated on or about April 6, 2025. *Id.* She timely filed an application for asylum on June 18, 2025, and has an upcoming hearing in immigration court on November 6, 2025. *Id.*

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

9. VAM Member B is a dual citizen of Venezuela and Colombia. *Id.* ¶ 12. He was specifically targeted in Venezuela because he is against the regime in power. *Id.* He fled Venezuela after his partner was kidnapped and he was threatened with death; he went to Colombia, where he was nearly killed on account of his sexual orientation. *Id.* After inspection on November 17, 2024, VAM Member B was granted parole for urgent

humanitarian reasons or significant public benefit and was provided an I-94 allowing him to be lawfully present in the United States through November 16, 2026. *Id.* VAM Member B's parole was terminated on or about April 18, 2025. *Id.* He timely filed an application for asylum on May 6, 2025. *Id.* He has an upcoming hearing in immigration court scheduled for April 21, 2027. *Id.*

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

10. VAM Member C is a citizen of Venezuela who fled Venezuela with his wife, VAM Member D, another citizen of Venezuela, and their young daughter because they are against the government in power and were targeted because of their political opposition. *Id.* ¶ 13. After inspection on December 2, 2024, VAM Members C and D were granted parole for urgent humanitarian reasons or significant public benefit and were provided I-94s allowing them to be lawfully present in the United States through December 1, 2026. *Id.* Their daughter has serious medical needs. *Id.* VAM Members C and D's parole was terminated on April 18, 2025. *Id.* VAM Members C and D timely filed asylum applications, and have an upcoming hearing in immigration court on July 21, 2026. *Id.*

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

11. Sileiri, Olivia, Meryem, VAM Member A, VAM Member B, and VAM Members C and

D fled their home countries due to violence and persecution and traveled through multiple countries to reach Mexico. Sileiri Decl. ¶¶ 4- 5, Meryem Decl. ¶¶ 5, 11-13, Olivia Decl. ¶¶ 6-7, 10-11, Velasquez Decl. ¶¶ 11-13. They downloaded the CBP One app and tried regularly—some daily—to procure an appointment from Mexico, waiting weeks to as many as nine months in Meryem's case. Sileiri Decl. ¶ 6, Meryem Decl. ¶ 6, Olivia Decl. ¶ 8, Velasquez Decl. ¶¶ 11-13. Several of them endured dangerous conditions in Mexico including being kidnapped, Velasquez Decl. ¶ 13, and hiding at night to avoid kidnapping and extortion, Meryem Decl. ¶ 5, Sileiri Decl. ¶ 6.

**Response: Deny due to lack of basis for knowledge.**

12. Once they were able to obtain a CBP One appointment, Plaintiffs traveled to their designated ports of entry ("POEs") and presented themselves for inspection at the U.S.-Mexico border. Sileiri Decl. ¶ 3, Meryem Decl. ¶ 3, Olivia Decl. ¶ 3, Velasquez Decl. ¶¶ 11-13. They provided biometrical information, including fingerprints and DNA samples, to CBP officials, see Sileiri Decl. ¶ 8, Meryem Decl. ¶ 8, Olivia Decl. ¶ 9, Velasquez Decl. ¶ 11, and answered questions, see Sileiri Decl. ¶ 8, Meryem Decl. ¶ 8, Velasquez Decl. ¶ 11. Following the CBP officials' assessment, Individual Plaintiffs and at least 18,500 VAM members were lawfully granted parole based on urgent humanitarian reasons or a significant public benefit, pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5, and were issued a Form I-94 indicating they were lawfully present in the United States for the two-year term of their parole.2 Sileiri Decl. ¶ 3, Meryem Decl. ¶ 3, Olivia Decl. ¶ 5, Velasquez Decl. ¶¶ 11-13 They were then eligible to obtain work authorization, allowing them to work legally in the United States for the duration of their parole. Sileiri Decl. ¶ 3, Meryem Decl. ¶ 3, Velasquez Decl. ¶¶ 11-13.

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

13. In April 2025, the Trump Administration announced that it terminated all grants of parole to noncitizens who had entered the United States through appointments procured on the CBP One app. See Ali Bianco, DHS Revokes Parole for Hundreds of Thousands Who Entered Via the CBP One App, Politico, (Apr. 8, 2025), https://perma.cc/M7FE-7DQJ. Many noncitizen parolees received a mass email from a "no reply" government email address ("Termination Notice") that stated that their lawful parole status would terminate within seven days of receipt of the notice and urged them to depart from the United States "immediately." *See* Sileiri Decl. ¶ 16, Olivia Decl. ¶ 14, Velasquez Decl. ¶¶ 11, 13. The Termination Notice read:

<u>Notice of Termination of Parole</u>

It is time for you to leave the United States.

You are currently here because the Department of Homeland Security (DHS) paroled you into the United for a limited parole period. Pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), DHS is now exercising its discretion to terminate your parole. Unless it expires sooner, your parole will terminate 7 days from the date of this notice.

If you do not depart the United States immediately you will be subject to potential law enforcement actions that will result in your removal from the United States – unless you have otherwise obtained a lawful basis to remain here. Any benefits you receive in the United States in connection with your parole – such as work authorization – will also terminate. You will be subject to potential criminal prosecution, civil fines, and penalties, and any other lawful options available to the federal government.

DHS encourages you to leave immediately on your own. You can use the CBP Home mobile app on your phone to make arrangements for your departure. If you are departing the United States via land, you should report your departure once outside the United States via that same

app. If you are having trouble reporting your departure via land, visit https://i94.cbp.dhs.gov/home for more information about voluntarily reporting your departure.

Again, DHS is terminating your parole. Do not attempt to remain in the United States – the federal government will find you. Please depart the United States immediately.

ECF No. 32-3, SDOE140. Many parolees did not receive this notice but instead learned of their parole termination only after they looked up their online Form I-94 upon seeing the mass parole terminations on the news or social media. Meryem Decl. ¶¶ 21-22 (describing that she regularly checked her I-94 status on the CBP website and, one day, saw that her parole was terminated). Individual Plaintiffs and VAM members subsequently learned that their work authorization had been revoked. Sileiri Decl. ¶ 16, Meryem Decl. ¶ 23, Velasquez Decl. ¶¶ 11-13. Defendants do not explain their decision to terminate en masse the parole of all individuals who secured their appointments for inspection via the CBP One app. Defendants' administrative record consists primarily of DHS documents outlining policy changes and legal authorities governing parole, enforcement discretion, and border management. The administrative record includes two memoranda from Acting Secretary Benjamine C. Huffman that direct DHS components to revise or terminate parole programs inconsistent with new enforcement discretion guidance; multiple Federal Register notices establishing or modifying unrelated parole processes for nationals of Cuba, Haiti, Nicaragua, and Venezuela (2022-2023); executive orders (EO 14159 and EO 14165) and Federal Register rules expanding expedited removal and border security policies (Jan. 2025); prior DHS and Border Patrol memoranda (2021-2023) on "Parole Plus Alternatives to Detention" and conditional parole procedures; and two 2025 DHS template notices that advise parolees that their

parole has been terminated (April 11 and June 20, 2025). The record is 142 pages total.

**Response: Defendants admit that DHS terminated parole for aliens who had been paroled into the United States via CBP One appointments, and sent parole termination notices to those aliens in and around April 2025. Defendants also admit that DHS revoked parole-based employment authorization for aliens whose parole was terminated through this process, pursuant to the procedures at 8 C.F.R. § 274a.14(b). Defendants respectfully direct the Court to the language of the parole termination and employment authorization revocation notices for a true and accurate representation of their contents. Defendants lack sufficient information about whether any parolees discovered their parole termination by first checking their I-94 status online. Defendants admit that Defendants' administrative record contained the listed materials and respectfully refer the Court to the administrative record for a true and accurate representation of its contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith. Defendants aver that the remainder of this paragraph contains legal argument to which no response is required, but to the extent a response is required, Defendants deny.**

14. While Defendants' administrative record does not purport to explain or otherwise provide a basis for their decision to terminate en masse the parole of all individuals who secured their appointments for inspection via the CBP One app, the two memoranda from the Acting Secretary, SDOE001-02 & SDOE003-04, direct DHS subcomponents to "ensure that all future actions taken by DHS with regard to the exercise of parole authority are consistent with" the Acting Secretary's interpretation of 8 U.S.C. § 1182, SDOE004, and to "exercise enforcement discretion" in furtherance of that goal, SDOE001.

**Response: Defendants respectfully direct the Court to the two memoranda from the Acting Secretary, SDOE001-02 & SDOE003-04, for a true and accurate representation of their contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith. Defendants aver that the remainder of this paragraph is legal argument to which no response is required, but to the extent a response is required, Defendants deny.**

15. The first memorandum, entitled Exercising Appropriate Discretion Under Parole Authority ("January 20 memorandum") expresses that parole authority under 8 U.S.C. § 1182(d)(5) is meant to be narrow, discretionary, and exercised "only on a case-by-case basis" for urgent humanitarian reasons or significant public benefit. SDOE003-04. The January 20 memorandum provides that 8 U.S.C. § 1182(d)(5)(A) applies in "narrow circumstances and only on a case-by-case basis" and "does not authorize categorical parole programs," which, unlike the Federal Register notices establishing or modifying parole processes for nationals of Cuba, Haiti, Nicaragua, and Venezuela, are not at issue here. *Id.* The memorandum declares that "many current DHS policies and practices governing parole, [we]re inconsistent with [8 U.S.C. § 1182(d)(5)(A)]." SDOE004. To address that apparent inconsistency, the memorandum orders Immigration and Customs Enforcement (ICE), U.S. Citizenship and Immigration Services (USCIS), and CBP to review all parole-related policies and procedures, identify those that were not "strictly in accord" with 8 U.S.C. § 1182(d)(5)(A), and develop a plan to phase them out. *Id.*

**Response: Defendants respectfully direct the Court to the referenced memorandum for a true and accurate representation of its contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith.**

16. The certification of the administrative record, certified administrative record index, and administrative record documents that are cited in this memorandum are attached hereto at ECF No. 32-3 and referenced by their bates-stamp "SDOE." The second memorandum, entitled Guidance Regarding How to Exercise Enforcement Discretion ("January 23 memorandum"), directs DHS subcomponents to limit the use of parole and to expand expedited removal. SDOE001-02. The January 23 memorandum directs DHS subcomponents to "[t]ake all steps necessary to review the alien's case and consider, in exercising your enforcement discretion, whether to apply expedited removal" and to "[r]eview the alien's parole status to determine, in exercising your enforcement discretion, whether parole remains appropriate in light of any changed legal or factual circumstances" for noncitizens that were "granted parole under a policy that may be paused, modified, or terminated immediately under the January 20 memorandum." SDOE002. The memorandum instructs that all "actions contemplated by this memorandum shall be taken in a manner consistent with applicable statutes, regulations, and court orders. They shall also be taken in a manner that takes account of legitimate reliance interests." *Id.*

**Response: Defendants respectfully direct the Court to the referenced documents for a true and accurate representation of their contents and deny to the extent Plaintiffs' descriptions are inconsistent therewith.**

17. Defendants' mass parole terminations have had devastating and far-reaching impacts on Plaintiffs. Individual Plaintiffs and VAM members relied on their parole status to enter the United States, seek more permanent immigration relief, apply for employment authorization, properly access employment, services, and resources for themselves and

their families, and reside safely in their communities. As a result of Defendants' mass parole terminations, Individual Plaintiffs and VAM members live in constant fear of being detained and deported to countries where their lives would be at risk. When Plaintiffs found out about the termination of their lawfully granted parole and loss of work authorization, they were devastated. Sileiri Decl. ¶ 17, Meryem Decl. ¶ 24, Olivia Decl. ¶¶ 15-16, Velasquez Decl. ¶¶ 11-13. Sileiri has experienced anxiety attacks, had difficulty sleeping, and is in constant fear of being returned to Venezuela. Sileiri Decl. ¶¶ 18, 21. Meryem experienced fear and hopelessness and is afraid she and her daughter will be returned to Cuba or deported to another dangerous country. Meryem Decl. ¶¶ 24, 27. Olivia feels distraught that her parole was terminated even though she followed the process and is afraid she will be picked up by ICE. Olivia Decl. ¶¶ 15-16. Similarly, VAM Members A, B, C, and D experienced fear, terror, and panic at the loss of their parole. Velasquez Decl. ¶¶ 11-13.

**Response: Deny due to lack of basis for knowledge.**

18. Individual Plaintiffs and VAM members are now terrified of leaving their homes and putting themselves at risk for detention and deportation. Sileiri Decl. ¶¶ 20, 22, Meryem Decl. ¶ 27, Olivia Decl. ¶ 16, Velasquez Decl. ¶ 13. Sileiri doesn't answer her door, leaves the house only to go to work and to purchase necessities, and rushes home as quickly as possible. Sileiri Decl. ¶ 20. She has stopped going to church or participating in community activities like taking English classes. Id. ¶ 23. Meryem used to take her daughter for walks, to play in the park, and to go grocery shopping. Meryem Decl. ¶ 27. Now they leave only once a month to go grocery shopping. Id. Olivia stays inside as much as possible, leaving only to shop for groceries and items she needs for her baby.

Olivia Decl. ¶ 16. VAM Members are similarly afraid. For example, VAM Members C and D leave the house only for their daughter's medical appointments, to get food, or when otherwise absolutely necessary. Velasquez Decl. ¶ 13.

**Response: Deny due to lack of basis for knowledge.**

19. And critically, Defendants' mass parole termination will prevent or delay Individual Plaintiffs and VAM members from obtaining more permanent immigration relief. As noted above, Sileiri, Olivia, and VAM Members A, B, C, and D have pending claims for asylum, and Meryem has a pending claim for adjustment under the Cuban Adjustment Act. The terminations of their parole will force Plaintiffs to return to the dangerous situations from which they fled or face removal to a third country to which they have no ties, thereby jeopardizing their ability to pursue claims for more permanent immigration relief.

**Response: Deny due to lack of basis for knowledge. Defendants cannot assess the truth of the facts asserted herein because Plaintiffs are using pseudonyms and have refused to provide identifying information to allow Defendants to assess their claims.**

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: November 6, 2025

By: /s/ Shawna Yen

Shawna Yen Assistant U.S. Attorney
U.S. Attorney's Office
John J. Moakley U.S.
Courthouse 1 Courthouse
Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: Shawna.Yen@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 6, 2025

By: /s/ Shawna Yen
SHAWNA YEN
Assistant U.S Attorney