# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SILEIRI DOE, on behalf of herself and all others similarly situated, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-12245 |
| U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*, | |
| *Defendants.* | |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT, AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

I.     This Court Has Jurisdiction Over Plaintiffs' Claims .....................................................2

       A.    The INA does not deprive the Court of jurisdiction over Plaintiffs' claims.................3

       B.    The APA does not deprive the Court of jurisdiction over Plaintiffs' claims ...............6

       C.    Plaintiffs Have Standing .............................................................................................8

II.    Defendants' Decision to Terminate Parole *En Masse* is Arbitrary, Capricious, and Contrary to Law ...............................................................................................................11

       A.    Defendants' failure to explain their decision to terminate parole *en masse* is arbitrary and capricious...................................................................................................11

       B.    Defendants' decision to terminate parole *en masse* violates the INA...........................15

       C.    Defendants' decision to terminate parole *en masse* violates DHS regulations ............17

III.   The Parole Terminations Themselves Are Arbitrary, Capricious, and Contrary to Law..................................................................................................................................18

IV.   Plaintiffs' Requested Relief Is Proper.......................................................................19

CONCLUSION ...................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017) ................................................................5

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586
    (D.C. Cir. 2022) .................................................................................................................10

*Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) ........................................................4

*Ass'n of Am. Universitiesv. Dep't of Def.*,  No. 25-cv-11740, 2025 WL 2899765
    (D. Mass. Oct. 10, 2025) .............................................................................................. 19, 19

*Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of Montana*,
    792 F.2d 782 (9th Cir. 1986) ............................................................................................4

*B.R. v. F.C.S.B.*, 17 F.4th 485 (4th Cir. 2021) ..........................................................................10

*Biden v. Texas*, 597 U.S. 785 (2022) ................................................................... 1, 3, 11, 16

*Bouarfa v. Mayorkas*, 604 U.S. 6 (2024) .............................................................................3, 6

*Coal. for Humane Immigrant Rts. v. Noem*, 2025 No. 25-cv-872, 2025 WL 2192986
    (D.D.C. Aug. 1, 2025) ........................................................................... 11, 14, 18, 18

*Coll. Of Dental Surgeons of Puerto Rico v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33 (1st Cir. 2009)..................9

*Conservation Law Foundation of New England, Inc. v. Clark*, 590 F. Supp. 1467 (D. Mass. 1984)...............2

*Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018)................................................................5

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019)..........................................................7, 11

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) .................................. 3, 7, 14

*Doe 1 v. Mayorkas*, 530 F. Supp. 3d 893 (N.D. Cal. 2021)..........................................................5

*Doe v. Noem,* 152 F.4th 272 (1st Cir. 2025) .............................................................. 11, 15, 16

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ..........................................................14

*Haoud v. Ashcroft*, 350 F.3d 201 (1st Cir. 2003)........................................................................7

*Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499 (D.C. Cir. 1988)........................................10

*Housatonic River Initiative v. U.S. Env't Prot. Agency, New England Region*, 75 F.4th 248
    (1st Cir. 2023).................................................................................................................11

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ....................................8, 8

*Implement Workers of Am. v. Brock*, 783 F.2d 237 (D.C. Cir. 1986) ....................................................7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 110 F.4th 295 (1st Cir. 2024)...........................8

*Kucana v. Holder*, 558 U.S. 233 (2010) ................................................................... 2, 3, 5, 6

*Melone v. Coit*, 100 F.4th 21 (1st Cir. 2024) ..........................................................................7, 14

*Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998)..............................19

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto Ins. Co.*,
     463 U.S. 29 (1983) ........................................................................................ 11, 13, 14

*N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66 (1st Cir. 2006) .........................................9

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ........................................8, 10

*Nat'l Motor Freight Traffic Ass'n, v. United States*, 372 U.S. 246 (1963) ........................8

*New Hampshire Indonesian Cmty. Support v. Trump*, 157 F.4th 29 (1st Cir. 2025) ....................10

*R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019)..............................................5

*River St. Donuts, LLC v. Napolitano*, 558 F.3d 111 (1st Cir. 2009) ...............................11, 12

*Roe v. Mayorkas*, 22-cv-10808, 2023 WL 3466327 (D. Mass. May 12, 2023)..........................4

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006) .....................10

*S.A. v. Trump*, 363 F. Supp. 3d 1048 (N.D. Cal. 2018) ..............................................14

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ........................................................7, 16

*Soltane v. U.S. Dep't of Just.*, 381 F.3d 143 (3d Cir. 2004)........................................4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141 (2023)................8

*Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005).....................................................4

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..............................................9

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ................................................... 19, 19

*United States v. AVX Corp.*, 962 F.2d 108 (1st Cir. 1992) ........................................9

*United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279 (D.C. Cir. 2019)...........................2

*Valley Citizens for a Safe Env't v. Aldridge*, 886 F.2d 458 (1st Cir. 1989) .......................2

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ........................................................................10

*Webster v. Doe,* 486 U.S. 592 (1988) ..................................................8

*Workers Union, Local 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) ...........................9

## FEDERAL STATUTES

5 U.S.C. § 701(a)(2) ....................................................................6

5 U.S.C. § 704 ..........................................................................6

5 U.S.C. § 706 ........................................................................7, 19

8 U.S.C. § 1182(d)(5)(A) ......................................................3, 4, 6, 14, 15

8 U.S.C. § 1252(a)(2)(B)(ii)..............................................................3

## FEDERAL REGULATIONS

8 C.F.R. § 212.5 ...................................................................6, 17, 18

8 C.F.R. § 1003.2(a) ....................................................................5

87 Fed. Reg. 63,507 (Oct. 19, 2022) ....................................................13

88 Fed. Reg. 1,243 (Jan. 9, 2023)........................................................13

88 Fed. Reg. 1,255 (Jan. 9, 2023) .......................................................13

88 Fed. Reg. 1,266 (Jan. 9, 2023) .......................................................13

88 Fed. Reg. 1,279 (Jan. 9, 2023) .......................................................13

88 Fed. Reg. 26,327 (Apr. 28, 2023) .....................................................13

88 Fed. Reg. 26,329 (Apr. 28, 2023) .....................................................13

90 Fed. Reg. 13,611 (Mar. 25, 2025) .....................................................13

## INTRODUCTION

Defendants terminated *en masse* the parole of over 900,000 noncitizens for no apparent reason other than that the noncitizens had scheduled their appointments for inspection at the border using the government's CBP One app.  Defendants admit this point, explaining that "[t]he Office of the Commissioner directed the Agency's decision in or around April 2025 to terminate parole grants issued by CBP," and that decision applied specifically to noncitizens "who had been paroled after having made an appointment to present at a U.S. [port of entry] using the CBP One app."  ECF No. 32-3 ("Certification of Administrative Record"), ECF No. 40 ("Defs.' Br.") at 18.  But just several months prior, DHS had determined that Individual Plaintiffs, Venezuelan Association of Massachusetts (VAM) members, and putative class members qualified for parole for a variety of reasons.  In terminating their parole, DHS has now effectively concluded that these individuals no longer satisfy the agency's parole-eligibility criteria, yet it identifies no common factor—other than the manner in which they scheduled their inspection appointments—to justify terminating their parole *en masse*.  Defendants' arbitrary decision flouts Congress's well-expressed intent as set forth in the Immigration and Nationality Act (INA) and Administrative Procedure Act (APA).

None of Defendants' threshold arguments is persuasive.  The Supreme Court recently reaffirmed that DHS's parole authority is not unlimited and *is* subject to APA requirements: "Every administration, including the Trump and Biden administrations, has utilized [their parole] authority to some extent. Importantly, the authority is not unbounded . . . And under the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained."  *Biden v. Texas*, 597 U.S. 785, 806–07 (2022).

On the merits, Defendants continue to reject the premise that meaningful APA review applies. They contend that, contrary to the APA and *Biden v. Texas*, they were not required to explain their decision; nor were they (in Defendants' view) required to state or provide support for their determination that the purposes of parole had been served—despite that the statute and regulations expressly require such a determination.  In the alternative, Defendants contend that their explanation and their determination with respect to the purposes of parole were implicit.  But courts cannot review

unarticulated explanations for compliance with the APA's standards of reasoned decisionmaking.

Defendants also resist Plaintiffs' claim that the INA does not authorize Defendants to modify the conditions of parole *en masse*. While they do not dispute this premise, Defendants contend that DHS terminated parole *en masse*, rather than modified it. However, Defendants can do and did both here, where DHS decided *sub silentio* that Plaintiffs no longer met the conditions of parole and terminated their parole as a result of that decision.

At bottom, Defendants' *en masse* parole terminations are both contrary to the governing statute and regulations and a wholesale failure of reasoned decisionmaking. The Court should therefore follow "the normal course" and vacate DHS's decision to terminate parole *en masse* and vacate the individual terminations made pursuant to that decision. *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019).[1]

## ARGUMENT

## I.  This Court Has Jurisdiction Over Plaintiffs' Claims

This Court has jurisdiction over Plaintiffs' claims. As a threshold matter, precedent clearly establishes a strong presumption in favor of judicial review of executive actions, *Kucana v. Holder*, 558 U.S. 233, 251 (2010), and Defendants cannot overcome that presumption here. *First*, Defendants' contention that DHS's *en masse* parole terminations are committed to the agency's unreviewable discretion fails. Plaintiffs do not challenge any determination that is committed by statute to the agency's discretion. Instead, Plaintiffs challenge DHS's *en masse* parole terminations as violating clear non-discretionary limits on DHS's exercise of its parole authority—namely, requirements imposed by the INA and DHS regulations that parole can be terminated only after an authorized official determines that the purposes of parole have been served and that modifications to the conditions of

---

[1] Plaintiffs do not contend that there is a genuine issue of material fact; instead, the court's review is limited to the administrative record, *see Valley Citizens for a Safe Environment v. Aldridge*, 886 F.2d 458, 460 (1st Cir. 1989) (the court's review is limited to the record before the agency at the time the initial decision was made), and Plaintiffs' declarations to establish their standing and reliance interests, *see Conservation Law Foundation of New England, Inc. v. Clark*, 590 F. Supp. 1467, 1475 (D. Mass. 1984) (Courts may consider extra-record evidence "to show factors [that] the agency should have considered, but did not.").

parole be made on a case-by-case basis. *See infra* Parts II.B & II.C. Plaintiffs' challenge to the *en masse* parole terminations is also a challenge to a broader policy decision of the sort that courts have consistently held to be reviewable. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020). *Second*, Defendants' objections to VAM's standing as a plaintiff reduce to a patchwork of generalized objections to associational standing and plaintiff pseudonymity that courts have repeatedly rejected. And in any event, Defendants do not dispute that Individual Plaintiffs have established standing.

### A. The INA does not deprive the Court of jurisdiction over Plaintiffs' claims

The INA's jurisdiction-stripping provision, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), is inapplicable here because Plaintiffs do not challenge Defendants' discretionary exercise of parole authority. Section 1252(a)(2)(B)(ii) strips courts of authority to review challenges to the DHS Secretary's decisions or actions that are committed by statute to the Secretary's "discretion." *Id.* As a threshold matter, there is strong presumption in favor of judicial review of executive action, and courts have "consistently applied that [presumption] . . . to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction." *Kucana*, 558 U.S. at 251. Defendants' decision here is not committed to the agency's discretion for three reasons: *First*, the parole statute makes at most two decisions discretionary, and Plaintiffs challenge neither. *Second*, Defendants' parole authority "is not unbounded," and courts retain jurisdiction over claims that agencies exceeded non-discretionary limits on their authority, as is the case here. *Biden v. Texas*, 597 U.S. at 806–07. *Third*, Plaintiffs challenge a broader policy decision that directs DHS's exercise of its parole authority, distinct from individual adjudications of parole status which may be committed to the agency's discretion.

1. To determine whether an agency action triggers the INA's bar on review of discretionary decisions, "properly identifying the mandatory or discretionary nature of a particular agency decision" is "critical." *Bouarfa v. Mayorkas*, 604 U.S. 6, 10 (2024). Here, the parole statute makes discretionary at most two decisions: (1) whether to parole a noncitizen, *see* 8 U.S.C. § 1182(d)(5)(A) ("[t]he Secretary . . . may . . . in his discretion parole into the United States . . . any alien applying for admission"); and (2) whether "the purposes of such parole . . . have been served," *id.* Plaintiffs do not

challenge either of these decisions—indeed, in terminating Plaintiffs' parole, DHS made no such decision. Instead, Plaintiffs challenge DHS's *en masse* termination of parole of an arbitrary class of noncitizens based solely on their use of the CBP One app.

2. This Court retains jurisdiction to determine whether DHS exceeded non-discretionary limits on its authority. DHS's decision to terminate parole *en masse* did not adhere to the requirements imposed by the INA and DHS regulations—namely, that such a decision cannot be made without first determining that the purposes of parole have been served, that the decision must be made by an authorized official, and that modifications to the conditions of parole must be made on a case-by-case, rather than class-wide, basis. *See infra* at Parts II.B & II.C. "Courts have widely held that claims that an agency has acted outside its statutory authority are reviewable even though its decision on the merits might be unreviewable as committed to agency discretion." *Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of Montana*, 792 F.2d 782, 791–92 (9th Cir. 1986); *see also Succar v. Ashcroft*, 394 F.3d 8, 9 (1st Cir. 2005) (regulation defining eligibility to apply for adjustment of status was reviewable despite that the government decisionmaker was "given ultimate discretion to deny adjustment of status after application"). Nor does anything in section 1252(a)(2)(B)(ii) purport to strip a court's jurisdiction to review whether DHS's exercise of the parole authority complied with non-discretionary limits. *See Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 146 (3d Cir. 2004) (Alito, J.) ("The key to § 125[2](a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute.").

3. This Court also retains jurisdiction over challenges to DHS's categorical policy decisions that direct DHS's exercise of its parole authority, as compared to case-specific parole adjudications. Courts have routinely made this distinction in holding that challenges to broader policy decisions are reviewable. *See Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327, at *8–9 (D. Mass. May 12, 2023) (Burroughs, J.) (challenge to "changes in policy" and "seeking to ensure compliance with certain minimum procedural safeguards when parole decisions are made" is distinct from "seeking review of their individual parole determination" and thus reviewable); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole

decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328 (D.D.C. 2018) (holding that claims that do not ask the Court "to review the propriety of any given parole decision, but, instead, 'simply seek compliance with certain minimum procedural safeguards when parole decisions are made' . . . do not fall within the jurisdictional bar of 1252(a)"); *Abdi v. Duke*, 280 F. Supp. 3d 373, 384 (W.D.N.Y. 2017) (noting that "the ultimate decision regarding parole . . . would plainly fall outside [the] Court's jurisdiction," but "[the plaintiffs] are asking that this Court ensure that [the defendants] comply with certain policies and procedures in making that parole decision—issues that are beyond the jurisdictional bar of § 1252(a)(2)(B)(ii)"); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 369 (S.D.N.Y. 2019) ("The plaintiffs do not seek to litigate individual claims but rather a policy the agency uses to adjudicate those claims."); *Doe 1 v. Mayorkas*, 530 F. Supp. 3d 893, 904 (N.D. Cal. 2021) (finding that § 1252(a)(2)(B)(ii) "applies to decisions made to *individual* applications" and was not applicable to a "challenge of immigration policy").  To reach the opposite decision, Defendants would have this Court adopt an impermissibly broad interpretation of the relevant statute, untethered to its text, to immunize all aspects of any exercise of parole authority from judicial review.  That position is untenable.

4.  Moreover, the cases cited by Defendants are inapposite.  *Kucana v. Holder*, *see* Defs.' Br. at 9, actually supports Plaintiffs' position.  *Kucana*, 558 U.S. at 242.  There, a plaintiff challenged the Board of Immigration Appeals' decision to deny his motion to reopen his removal proceedings.  The parties "[a]ll agree[d] that the Attorney General's *regulation*, 8 CFR § 1003.2(a), places '[t]he decision to grant or deny a motion to reopen . . . within the discretion of the Board,'" *id.* at 242 (emphasis added), but disputed whether a *statute* must specify that the decision was committed to the discretion of the Board.  The Court held that the plaintiff's challenge was reviewable, explaining that the INA's jurisdiction-stripping provision requires a *statute* to specify that the agency's decision is committed to the Board's discretion.  Here, there is no statute that commits to the agency's discretion the authority to terminate parole *en masse*, especially without first determining that the purposes of parole have been served.  The Court in *Kucana* also emphasized that "[w]hen a statute is 'reasonably susceptible to

5

divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Id.* at 251.

In *Bouarfa*, *see* Defs.' Br. at 9, the Court held that DHS's revocation of prior approval of a visa petition was a discretionary decision barred from judicial review. *Bouarfa*, 604 U.S. at 6. First, *Bouarfa* is inapposite because there the plaintiff challenged an individual adjudication rather than a broader policy decision. Second, in *Bouarfa*, the relevant statute provided that the Secretary "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any [visa] petition." *Id.* at 13 (citation omitted). The Court thus explained that the revocation decision was committed to the agency's discretion because "Congress has in no way prescribed how that discretion must be exercised. There are no conditions that the Secretary must satisfy before he can revoke the agency's approval; he may do so 'at any time,' for whatever reason 'he deems to be good and sufficient cause.'" *Id.* at 14 (citation omitted). The statute in *Bouarfa* in no way resembles the parole statute here, wherein Congress placed enforceable limits on the Secretary's parole authority, *i.e.*: modifications to the conditions of parole must be made on a case-by-case basis and only after a determination that the purposes of parole have been served (a determination was never made here), 8 U.S.C. § 1182(d)(5)(A); and in order to early terminate parole, an authorized official must determine that neither humanitarian reasons nor public benefits warrant the continued presence of that person in the United States (again, a determination was never made here), 8 C.F.R. § 212.5(e)(2)(i). These mandatory requirements are far afield from the statutory text of "at any time" and "for what he deems to be good and sufficient cause" at issue in *Bouarfa*. *Bouarfa*, 604 U.S. at 13.

**B. The APA does not deprive the Court of jurisdiction over Plaintiffs' claims**

For the same reasons as above, Defendants' claim that this suit is unreviewable under the APA as a challenge to a decision "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), fails.[2] As a threshold matter, "[t]he APA establishes a basic presumption of judicial review [for] one suffering

---

[2] Defendants do not dispute that DHS's decision to terminate parole *en masse*, and the individual terminations pursuant to that decision, are otherwise final agency actions reviewable under the APA. 5 U.S.C. § 704.

legal wrong because of agency action." *Regents*, 591 U.S. at 16 (citation omitted). "To honor the presumption of review, [the Supreme Court] ha[s] read the exception in § 701(a)(2) quite narrowly." *Id.* at 17. That exception applies *only* in "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019); otherwise courts "could never determine that an agency abused its discretion [under 5 U.S.C. § 706(2)(A)] if all matters committed to agency discretion [are] unreviewable," *id.*[3]

Defendants' argument fails at the outset because it presupposes that the Secretary formed an "opinion" that the purposes of parole had been served when Defendants *en masse* terminated parole. *See* Defs.' Br. at 9–10. The administrative record contains no evidence that the Secretary or anyone else reached that conclusion. Therefore, the decision that Defendants say is committed to agency discretion was never actually made. *See Melone v. Coit*, 100 F.4th at 31 ("It is a bedrock principle of administrative law that a court reviewing agency action may consider only the agency's explanation given at the time the relevant decision was made, as opposed to its post hoc rationale.") (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

Even assuming the contrary, the statutory and regulatory mandates that parole can be terminated only after an authorized official determines that the purposes of parole have been served and that modifications to the conditions of parole must be made on a case-by-case basis provide a "meaningful standard" to "judge the agency's exercise of discretion." *Dep't of Commerce*, 588 U.S. at 772; *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 783 F.2d 237, 245 (D.C. Cir. 1986) ("Indeed, it seems almost ludicrous to suggest that there is 'no *law* to apply' in reviewing whether an agency has reasonably interpreted a *law*."); *Haoud v. Ashcroft*, 350 F.3d 201, 206

---

[3] "There is a circuit split on whether Section 701(a)(2)'s 'committed to agency discretion' bar is jurisdictional." *See Make the Road New York v. Noem*, No. 25-5320, slip. op. at 41–42 n.5 (D.C. Cir. Nov. 22, 2025) (collecting cases). The First Circuit does not appear to have squarely addressed the question, and therefore Plaintiffs preserve the argument that section 701(a)(2) speaks only to whether an APA cause of action is available, and thus does not go to this Court's jurisdiction, as the D.C. Circuit held. *Id.*

(1st Cir. 2003) ("[R]egulation[s] provide[ ] more than enough 'law' by which a court could review."). If, for example, the Secretary affirmatively decided that the purposes of parole had *not* been served in a given case but terminated the individual's parole anyway, the Secretary would obviously have violated applicable statutory and regulatory mandates, and judicial review would be available to enforce them.

Defendants' reliance on *Webster v. Doe*, *see* Defs.' Br. at 10, is no help. 486 U.S. 592 (1988). Similar to *Bouarfa*, the plaintiff in *Webster* challenged a case-specific adjudication rather than a broader policy, and the statute at issue—permitting the agency to terminate an employee whenever it "deem[s] such termination necessary or advisable in the interests of the United States"—plainly contained no law to apply. *Id.* at 600.

### C. Plaintiffs Have Standing

Defendants do not dispute that Individual Plaintiffs have established standing. And their efforts to manufacture skepticism about VAM's associational standing fail because associational standing is firmly recognized under established law.

As a threshold matter, although Defendants assert that associational standing is a "constitutionally suspect" doctrine, Defs.' Br. at 10–11, courts have consistently upheld standing based on associational theories. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2158 (2023); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 110 F.4th 295, 319 (1st Cir. 2024) (holding nonprofit organization of elected mayors had standing as an associational plaintiff). Indeed, Defendants do not cite any Supreme Court or circuit precedent that invalidates the theory of associational standing. Rather, Defendants ask this court to reject generations of precedent to the contrary. *See NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449 (1958); *Nat'l Motor Freight Traffic Ass'n, v. United States*, 372 U.S. 246, 247 (1963); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977).

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. The first two of these

requirements derive from Article III, while the third is prudential. *United Food & Commer. Workers Union, Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555–57 (1996).

Plaintiffs have easily met these requirements. *First*, VAM has demonstrated that its members would otherwise have standing to sue in their own right. *See* ECF No. 32-7 ("Velasquez Decl."). VAM Members A, B, C, and D were paroled into the United States after border inspections scheduled using the CBP One app, their parole was prematurely terminated in April 2025, and they currently reside in the United States (just like Individual Plaintiffs, whose standing Defendants do not contest). *Id.* at ¶¶ 11–13; *cf. United States v. AVX Corp.*, 962 F.2d 108, 116 (1st Cir. 1992) (noting that if "at least one" member "possesses standing to sue in [its] own right," first prong is satisfied). *Second*, VAM seeks to protect its members from DHS's unlawful termination of their parole and work authorizations, which is plainly germane to VAM's purpose to provide humanitarian aid and advice on immigration issues to the local Venezuelan community. Velasquez Decl. ¶¶ 2–8. *Third*, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit because no "fact-intensive-individual inquiry" is required to litigate this case. *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006) (citation omitted). Indeed, this suit is an APA challenge to DHS's summary termination of the parole of a putative class. DHS did not take individualized considerations into account when it terminated parole; it follows that no individualized information is necessary to adjudicate this case. *Coll. Of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 41 (1st Cir. 2009) (individual participation not required where "[t]he complaint alleges that the defendants' pernicious practices harm all affected dentists in the same way"). And Plaintiffs' requested relief—vacatur of the *en masse* terminations—"would inure to the benefit of all the affected [individuals] equally, regardless of their individual circumstances." *Id.* Defendants meaningfully contest none of this.

Instead, Defendants assert that VAM must "identify a particular affected member"—implying that associations must always name their individual members in court. Defs.' Br. at 11. That is incorrect and unsupported by case law. VAM plainly "ma[d]e specific allegations establishing that at least one identified member had suffered or would suffer harm," *Summers v. Earth Island Inst.*, 555 U.S.

488, 498 (2009), which is sufficient to satisfy an Article III injury.[4]  *See* Velasquez Decl. ¶¶ 11–13.

Nor is anonymity a barrier to members' standing or VAM's associational standing.  "Naming [the association's] members adds no essential information bearing on the injury component of standing" that is otherwise missing.  *Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1506 (D.C. Cir. 1988).  VAM members have readily satisfied the requirements of an injury in fact and causation—and Defendants do not contend otherwise.  *Id.* (holding that the union had associational standing to sue on behalf of anonymous members because "the court need only know that some union members have sought asylum, have been denied, and were probably subjected to the INS'[s] defective procedures and thus detrimentally affected by them"); *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 593–94 (D.C. Cir. 2022) (holding that anonymous survey responses demonstrating that union members would be affected by challenged agency rule were evidence of "concrete injuries that individual members expected the rule would cause them to suffer"); *B.R. v. F.C.S.B.*, 17 F.4th 485, 495 (4th Cir. 2021) ("[T]he Supreme Court has never suggested that a case or controversy does not exist if a plaintiff sues under a pseudonym without first revealing her true name to the court. Indeed, it has suggested the contrary.").  Accordingly, it is no surprise that courts have determined that organizations have standing to sue on behalf of injured members even where those members remain anonymous.  *See, e.g.*, *NAACP*, 357 U.S. 449; *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 at n.2 (2006); *New Hampshire Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 33 (1st Cir. 2025).

---

[4] Defendants' citation to *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n.23 (1982), supports Plaintiffs' position.  Defendants rely on *Valley Forge* to say that "[a] general reference to unidentified members is insufficient," Defs.' Br. at 11.  But the cited excerpt actually says that the association "claims that it has certain unidentified members who reside in Pennsylvania . . . [but] does not explain, however, how this fact establishes a cognizable injury where none existed before. [The association] is still obligated to allege facts sufficient to establish that one or more of its members has suffered, or is threatened with, an injury other than their belief that the transfer violated the Constitution."  *Valley Forge Christian Coll.*, 454 U.S. at 487 n.23.  Therefore, the excerpt cited by Defendants refers to the court's conclusion that the plaintiff did not establish a cognizable injury.

## II.  Defendants' Decision to Terminate Parole *En Masse* is Arbitrary, Capricious, and Contrary to Law

### A.  Defendants' failure to explain their decision to terminate parole *en masse* is arbitrary and capricious

Defendants' *en masse* parole termination decision is arbitrary and capricious because Defendants offered no explanation, let alone a reasonable explanation, as required by the APA.  In their brief, Defendants waffle between arguments that they were not required to explain their decision, Defs.' Br. at 13–14, and that their explanation was "implicit," *id.*  Both arguments fail.

1.  It is blackletter law that the APA requires agencies to provide reasoned explanations for their decisions.  Defendants contend that their *en masse* parole terminations are not subject to APA review because they are committed to agency discretion by law.  Defs.' Br. at 10.  But, as the First Circuit recently explained in *Doe v. Noem*, "[t]he APA mandates 'an executive agency's exercise of discretion be reasonable and reasonably explained.'"  152 F.4th 272, 289 (1st Cir. 2025) (citing *Biden v. Texas*, 597 U.S. at 815); *see also Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872, 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025)  (reviewing several DHS decisions, including Acting Secretary Huffman's January 23, 2025 memorandum and the decision to terminate parole granted in connection with the CHNV parole program, explaining that "under blackletter administrative law, agencies must provide 'reasoned explanation[s]' for their actions" (citation omitted)).  Defendants make no effort to engage with the APA's requirement that an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted); *see also Biden v. Texas*, 597 U.S. at 806–07 ("[U]nder the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained."); *Housatonic River Initiative v. United States Env't Prot. Agency, New England Region*, 75 F.4th 248, 269 (1st Cir. 2023).

Indeed, Defendants miss the point of *why* the APA requires that an agency explain its decision.  Courts "are required to determine whether the agency's decision is supported by a rational basis."  *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009).  Courts cannot fulfill that duty if the agency does not provide any explanation for its decision.  *See Dep't of Commerce*, 588 U.S. at 755

("The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public."). Nor can courts "attempt to supply a reasoned basis for the action that the agency itself has not given." *River St. Donuts, LLC*, 558 F.3d at 115 (citation omitted).

Here, Defendants provide no reason for their April 2025 decision to terminate *en masse* the parole of over 900,000 individuals who had received parole to enter and temporarily remain in this country. Defendants acknowledge that they did not provide any contemporaneous explanation. Instead, Defendants' own administrative record consists of executive orders and memoranda written months prior to the April 2025 decision to terminate parole *en masse*, and the documents facially have no proximate connection to the April 2025 decision; critically, those documents "did not themselves terminate any parole programs or grants," Defs.' Br. at 6, and do not relate specifically to the April 2025 decision to terminate parole for individuals who secured their appointments for border inspections using the CBP One app. The documents say nothing about the noncitizens who were paroled into the country after they scheduled appointments for inspection via the government's CBP One app. They say nothing about whose parole they terminated, or even how many people were affected by the parole terminations. Defendants do not and cannot dispute this.

2.     Defendants nevertheless assert that Acting Secretary Benjamine Huffman's two memoranda, issued on January 20 and January 23, 2025, respectively, *see* ECF No. 32-1 ("Pls.' Br.") at 8–9, implicitly "provide an explanation for its [April 2025] termination of parole grants." Defs.' Br. at 16. But that is facially implausible. Defendants do not attempt to explain how the memoranda provide a reasonable explanation of their April 2025 decision to terminate parole *en masse* for Plaintiffs and putative class members—a decision that is wholly distinct from (and occurred months later than) the Huffman memoranda, *see* Certification of Administrative Record ("The Office of the Commissioner directed the Agency's decision in or around April 2025 to terminate parole grants issued by CBP."). Indeed, the January 20 memorandum simply directs DHS to determine what parole regulations or policies might be inconsistent with the INA, *see* SDOE004, which indicates that some reasoned decisionmaking process must follow as a next step. *Compare with Termination of Parole Processes*

12

*for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13,611 (Mar. 25, 2025) (explanation of DHS's decision to terminate country-specific parole programs and existing grants of parole for nationals of Cuba, Haiti, Nicaragua, and Venezuela).

Neither two-page document sheds any light on the decision at issue here.  *First*, Defendants point to the January 20 memorandum's conclusion that "parole . . . has been repeatedly abused by the Executive Branch over the past several decades in ways that are blatantly inconsistent with the statute," SDOE003–04; but that conclusory statement has nothing to do with the CBP One app and does not explain Defendants' *en masse* parole terminations here.  At best, that is a "fact found" and not a "rational connection between the facts found and the choice made."  *State Farm*, 463 U.S. at 43.  *Second*, Defendants say that the explanation is "more explicit" in the January 23 memorandum, which "instructed DHS's component agencies 'to pause, modify, or terminate, effective immediately, any parole program that is inconsistent with the [Jan. 20] memorandum."  Defs.' Br. at 16–17.  But, again, the explanation says nothing about the CBP One app.  And Plaintiffs and putative class members were not paroled under a categorical parole program.  *Compare with Implementation of a Parole Process for Cubans*, 88 Fed. Reg. 1,266 (Jan. 9, 2023); *Implementation of a Change to the Parole Process for Cubans*, 88 Fed. Reg. 26,329 (Apr. 28, 2023); *Implementation of a Parole Process for Haitians*, 88 Fed. Reg. 1,243 (Jan. 9, 2023*)*; *Implementation of a Change to the Parole Process for Haitians*, 88 Fed. Reg. 26,327 (Apr. 28, 2023); *Implementation of a Parole Process for Nicaraguans*, 88 Fed. Reg. 1,255 (Jan. 9, 2023); *Implementation of a Parole Process for Venezuelans*, 87 Fed. Reg. 63,507 (Oct. 19, 2022); *Implementation of Changes to the Parole Process for Venezuelans*, 88 Fed. Reg. 1,279 (Jan. 9, 2023) (together, country-specific parole programs under which nationals of Cuba, Haiti, Nicaragua, and Venezuela who met certain categorical criteria could seek discretionary individual grants of parole into the United States for up to two years).  *Third*, Defendants attempt to supply a connection between the January memoranda and April *en masse* parole termination decision, explaining that "it was not consistent with the statute or in the public interest to have granted parole on a large-scale, *en masse* basis to the vast majority of aliens who presented at a U.S. POE after having made an appointment to do so with the CBP One app."  Defs.' Br. at 15.  But this arbitrary conclusion comes from nowhere, has no basis in the administrative record, and should

be dismissed as a *post hoc* rationale. *Melone*, 100 F.4th at 31. It is also factually incorrect: Individual Plaintiffs and VAM members underwent individual inspections and were granted parole upon a determination that it served humanitarian reasons or public interest. *See* Pls.' Br. at 3–5.

Defendants simply cannot contend, as they must, that they "examine[d] the relevant data and articulate[d] a satisfactory explanation for" the April 2025 decision to terminate parole *en masse*. *State Farm*, 463 U.S. at 43. Nor can they contend that they articulated "a rational connection between the facts found and the choice made." *Id.*

3. Nor do Defendants provide any explanation, let alone a reasonable explanation, for "disregarding facts and circumstances that underlay," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009), their previous decision that granting the same Plaintiffs parole would serve "urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A). Defendants simply wave this claim away, arguing that "Plaintiffs do not actually identify a rule or policy that they claim was reversed." Defs.' Br. at 17. However, Defendants cannot deny that in each Plaintiff's case, they previously determined that the same individual should be granted parole because it would serve "urgent humanitarian reasons or significant public benefit," but now, the same individual's parole should be terminated because there is no longer an urgent humanitarian reason or significant public benefit. That cannot be reconciled with Defendants' conclusory assertion that they did not change positions. Moreover, even accepting *arguendo* Defendants' *post hoc* explanation that they implicitly decided that Plaintiffs' parole was inconsistent with the INA, then that would also have constituted a reversal from their previous conclusion that Plaintiffs' parole was consistent with the INA. That is arbitrary and capricious. *See Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *30 (APA requirement that agencies provide reasoned explanations for their decisions includes "at least some explanation of the agency's legal 'conclusion,' especially if the legal conclusion upon which the action relies conflicts with the agency's prior view").

4. Finally, Defendants concede that they did not consider reliance interests, instead claiming that there are none. That, too, is arbitrary and capricious. *Regents*, 591 U.S. at 33; *see also S.A. v. Trump*, 363 F. Supp. 3d 1048, 1090 (N.D. Cal. 2018) (holding DHS's decision to mass rescind conditional

parole approvals under the Central American Minors parole program arbitrary and capricious where DHS failed to consider "serious reliance interests"). There are serious reliance interests here, as Plaintiffs previously explained, *see* Pls.' Br. at 16. Plaintiffs relied on their parole status for a set time period to work lawfully and gainfully in the United States, apply for asylum or other immigration relief, and properly access services and resources for their families. Defendants' *en masse* parole terminations have threatened these crucial interests.

Defendants' position stands in stark contrast to their recent termination of the CHNV parole program. There, DHS, by its own account, "considered potential reliance interests of a range of potential supporters and beneficiaries of these programs," and ultimately decided that "the potential reliance interests among aliens paroled into the United States under the CHNV parole programs do not outweigh the U.S. government's strong interest in" the termination of the program. 90 Fed. Reg. at 13,611. The First Circuit therefore decided that the agency's decision was not arbitrary and capricious because "the Secretary *considered and addressed the reliance interests* of CHNV parolees and their supporters." *Doe v. Noem*, 152 F.4th at 290 (emphasis added). Defendants failed to do so here—an omission that is particularly striking in light of the January 23 memorandum's instruction that the agencies' actions must "take[] account of legitimate reliance interests." SDOE002.

**B. Defendants' decision to terminate parole *en masse* violates the INA**

Defendants' *en masse* parole terminations violate the INA because Defendants categorically modified the terms of Plaintiffs' parole without making the required determination that the purposes of parole have been served.

1. Defendants' actions violated the INA's requirement that the Secretary must determine that "the purposes of [ ] parole . . . have been served" before terminating an individual's parole. 8 U.S.C. § 1182(d)(5)(A). Nowhere in Defendants' administrative record is there any evidence that Defendants decided—on a categorical *or* individual basis—that the purposes of parole were served for the 900,000 individuals at issue here, each of whom had individualized reasons to meet the requirements for parole. And no such determination could reasonably have been made. The only thing those 900,000 individuals have in common is their use of the CBP One app to schedule their border inspections,

and their use of that app has nothing to do with the purposes of their parole. Defendants suggest now that "the determination that the purposes of parole have been served is implicit in the discretionary decision to terminate." Defs.' Br. at 13. But the INA requires the Secretary to determine that the purposes of parole have been served before she terminates an individual's parole, and a court cannot uphold an agency action by simply assuming that statutory requirement was met when the record gives no indication whatsoever that it was. *See Melone*, 100 F.4th at 31 (citing *Chenery*, 318 U.S. at 87–88)).

Defendants also rehash their arguments that a "memorialization of [the] decision" is not required, *see* Defs.' Br. at 13, but as explained above, *supra* at 11–13, that is obviously incorrect and at odds with clear precedent. *See Doe*, 152 F.4th at 289 ("[t]he APA mandates 'an executive agency's exercise of discretion be reasonable and reasonably explained.'" (citing *Biden v. Texas*, 597 U.S. at 815)); *Biden v. Texas*, 597 U.S. 785 ("[Parole] authority is not unbounded . . . And under the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained."); *Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *30 ("[U]nder blackletter administrative law, agencies must provide 'reasoned explanation[s]' for their actions."). Moreover, as above, Defendants' insistence that the administrative record need not contain the Secretary's determination that the purposes of parole have been served is belied by Defendants' termination of the CHNV parole programs, where the record contained the required determination. *See* 90 Fed. Reg. at 13,620. Here, as explained, no such determination could be made at all, let alone reasonably explained, since the mere use of the CPB One app to schedule a border inspection—the sole basis on which the *en masse* termination here was premised—has no bearing on a person's parole eligibility or the purposes of parole.

2. The Secretary also disregarded the INA's requirement to prescribe parole conditions on a case-by-case basis when she modified the conditions of parole for Plaintiffs *en masse*. As Plaintiffs previously explained, Pls.' Br. at 17, the only way the Secretary could have categorically terminated parole for over 900,000 individuals who were granted parole for urgent humanitarian reasons or significant public benefit (*see* Pls.' Br. at 3–5) is by altering the conditions of those individuals' parole

and then concluding that Plaintiffs no longer met the new conditions. By modifying the conditions to preclude parole for individuals who used the scheduling function of the CBP One app, the Secretary did this on class-wide—rather than case-by-case—basis, contrary to the INA's requirements. In the alternative, the Secretary's decision to alter *en masse* the expiration dates of noncitizens' periods of parole is, by itself, "prescrib[ing]" revised "conditions" of each person's parole (*i.e.*, changing the duration of each grant), but not on a case-by-case basis. *See* Pls.' Br. at 18 n.5.

Defendants respond by arguing that "plaintiffs provide no evidence that these terminations were indeed '*en masse.*'" Defs.' Br. at 12. But Defendants' own administrative record gives no indication that Defendants made any "case-by-case termination decisions." *Id.* Instead, on Defendants' own account, "[t]he Office of the Commissioner directed the Agency's decision in or around April 2025 to terminate parole grants issued by CBP." Certification of Administrative Record. It is implausible to view that statement as anything other than a concession that, in April 2025, Defendants decided to make and executed *en masse* parole terminations for all parole grants of individuals who scheduled their border inspections using the CBP One app.

Defendants rely on *Doe v. Noem*, Defs.' Br. at 12–13, but as explained in Plaintiffs' opening brief, the *Doe* court held only that the parole termination provision of the INA does not require that terminations be made on a case-by-case basis. *See* Pls.' Br. at 17–18. Here, in contrast, Plaintiffs make the distinct argument that modifications to the conditions of parole must be made on case-by-case basis; Defendants do not contend that *Doe* addressed such a claim.

### C. Defendants' decision to terminate parole *en masse* violates DHS regulations

Defendants' *en masse* parole terminations also violate DHS regulations, *see* 8 C.F.R. § 212.5, because Plaintiffs' parole was terminated without an authorized official's determination that the purposes of parole have been served. Defendants again reiterate their arguments that they were not required to explain their decision and that their explanation was "implicit," Defs.' Br. at 13–14, but for the reasons explained above, Defendants' arguments fail. *Supra* at 11–13.

1. Defendants violated their own regulations when they terminated Plaintiffs' parole early without making any determination that the purpose for which parole was authorized had been

accomplished or that humanitarian reasons or public benefit no longer warrants their continued parole. *See* 8 C.F.R. § 212.5(e)(2). Defendants have conceded that they did not explain their *en masse* parole termination decision outside of the January memoranda, which contain no determination that the purpose of Plaintiffs' parole had been accomplished or that humanitarian reasons or public benefit no longer warrants Plaintiffs' continued parole.

Regardless of any citation to the parole statute, *see* Defs.' Br. at 14–15, and even if the legal conclusion that the purposes of parole were served had been explicitly stated in the termination notice or any other decision document, the APA's requirement of a reasoned explanation requires "at least some explanation of the agency's legal 'conclusion.'" *See Coal. for Humane Immigrant Rts.*, 2025 WL 2192986, at *30. Defendants gave none.

2. Defendants also fail to rebut Plaintiffs' argument that, contrary to DHS regulations, any determination that the purposes of parole have been served—even had it been made—was not made by an authorized official. *See* 8 C.F.R. § 212.5(e)(2)(i) (authorizing parole termination when "in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"). Defendants assert that DHS regulations do not require an authorized official's signature, *id.* at 14, but that misses the point. Nowhere in the administrative record is there any evidence that an authorized official decided that the purposes of parole have been served, as DHS regulations clearly require.

Plaintiffs also observed in their previous brief that termination was not made upon written notice in every instance. *See* Pls.' Br. at 19. While Defendants respond that they did not have an opportunity to dispute that claim with respect to Plaintiff Meryem Doe in particular, Defs.' Br. at 15–16, they certainly had the opportunity to demonstrate that they provided written notice to all affected individuals. They did not do so.

## III. The Parole Terminations Themselves Are Arbitrary, Capricious, and Contrary to Law

For the same reasons discussed above *supra* Part II and in Plaintiffs' opening brief, the parole terminations themselves are arbitrary, capricious, and contrary to law. As above, the individual terminations are reviewable because Plaintiffs do not challenge the Secretary's "opinion" that the

purposes of parole have been served in any instance because no such decision was made here—either on a categorical or individual basis; and the individual terminations are part and parcel of the policy decision related to the parole eligibility of broad categories of noncitizens, *see supra* Parts I.A & I.B.

## IV. Plaintiffs' Requested Relief Is Proper

The Court should reject Defendants' request to grant less relief than is provided by statute, 5 U.S.C. § 706(2). As courts have repeatedly held, vacatur of the agency action—not merely exempting Plaintiffs from the agency action—is the normal remedy under APA section 706. *Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *see also Ass'n of Am. Universities v. Dep't of Def.*, – F. Supp. 3d –, No. 25-cv-11740, 2025 WL 2899765, at *29 (D. Mass. Oct. 10, 2025) ("Given the APA's clear textual mandate, and [ ] background legal principles, it is unsurprising that federal courts are in overwhelming consensus on this issue. The APA's remedies are 'not party-restricted and allow[ ] a court to 'set aside' an unlawful agency action.'" (citation omitted)). "Put simply, the APA requires this Court to 'set aside' unlawful or inadequately reasoned agency action. 5 U.S.C. § 706(2). To 'set aside' agency action is 'to annul or vacate' it. *Set Aside*, Black's Law Dictionary (12th ed. 2024)." *Id.*

Defendants also err in relying on *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which expressly preserved the remedy of vacatur under section 706. *See id.* at 847 n.10 ("Nothing we say today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."); *see also Ass'n of Am. Universities*, 2025 WL 2899765, at *29 (explaining that, after *CASA*, "vacatur and declaratory relief remain appropriate and normal remedies under the Administrative Procedure Act"). Accordingly, Justice Kavanaugh's concurrence highlighted that, even after *CASA*, "plaintiffs may ask a court to preliminarily 'set aside' a new agency rule" "'in cases under the Administrative Procedure Act." *CASA*, 606 U.S. at 869 (Kavanaugh, J., concurring). And as the D.C. Circuit recently explained, "*CASA* is *not* a case about the scope of relief for agency review authorized by the APA." *Make the Road New York*, No. 25-5320, slip. op. at 75, 78. The government's "procrustean effort to stretch *CASA*'s plaintiff-specific remedial framework onto the APA defies 'countless' precedents to the contrary." *Id.* at 78; *see also Ass'n of Am. Universities*, 2025 WL 2899765,

at *29 ("[E]ven insofar as *CASA* might be read to speak more generally to the history and practice of courts of equity (and their remedial progeny), the APA is simply not part of that tradition.").

Beyond their historical arguments, Defendants primarily rehash their complaints that the INA's parole authority is discretionary and that VAM did not list its members' names in the lawsuit. Defs.' Br. at 18. As described above, *supra* Part I, those arguments are unavailing.

Moreover, Defendants' line of argument makes little practical sense. VAM has established associational standing, and Plaintiffs have moved for class certification, see ECF No. 5. First principles make clear that association members and class members—if the Court certifies the class—are entitled to party-specific relief if the Court grants summary judgment.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment and deny Defendants' cross-motion and motion to dismiss.

November 25, 2025                    Respectfully submitted,

*/s/ Allyson R. Scher*
Brian D. Netter (D.C. Bar No. 979362)
Catherine M.A. Carroll (D.C. Bar No. 497890)*
Allyson R. Scher (D.C. Bar No. 1616379)
Cortney Robinson Henderson (D.C. Bar No. 1656074)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bnetter@democracyforward.org
ccarroll@democracyforward.org
ascher@democracyforward.org
crhenderson@democracyforward.org

Melanie M. Chaput (MA Bar No. 643470)
Heather Arroyo (MA Bar No. 698460)
Iris Gomez (MA Bar No. 201000)
MASSACHUSETTS LAW REFORM INSTITUTE
40 Court Street, Suite 700
Boston, MA 02108
Telephone: 617-357-0700

mchaput@mlri.org
harroyo@mlri.org
igomez@mlri.org

*Counsel for Plaintiffs*

\* Motion to appear *pro hac vice* pending