**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SILEIRI DOE, on behalf of herself and all others similarly situated, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-12245 |

**PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE AND
FOR AN EMERGENCY STATUS CONFERENCE**

One year ago, the Department of Homeland Security arbitrarily terminated the parole of potentially hundreds of thousands of Plaintiff Class members in this action, stripping them of their legal authorization to live and work in the United States even though they were lawfully permitted to enter and remain in the country for up to two years. On March 31, 2026, this Court granted partial summary judgment to a certified class of Plaintiffs, concluding that the parole statute and DHS regulations "do not give the agency unfettered discretion to terminate parole," and therefore, that Defendants' arbitrary mass terminations of the Plaintiff Class's parole status unlawfully "exceeded the agency's statutory authority and contradicted the procedures set forth in its own regulations." ECF No. 48 at 22, 24. As a result, the Court vacated the Plaintiff Class's parole terminations and ordered Defendants "to return class members to the parole status that they held prior to the April 2025 Termination Email." *Id.* at 25. The order was effective immediately. The Court's order has now been in effect for more than one week, yet Defendants have not restored parole to any member of the Plaintiff Class. With each additional day that Defendants fail to comply, class members suffer ongoing and compounded harm, including increased risk of detention and deportation, loss of the ability to work, serious emotional distress, and, for some, continued detention notwithstanding their entitlement

to release—underscoring the urgent need for immediate enforcement of this Court's order.  *See* ECF No. 32-1 at 9-10.

On March 31, April 3, and April 6, Plaintiffs' counsel emailed Defendants' counsel to communicate Plaintiffs' position—which Defendants did not contest at any point—that the Court's order requires Defendants to immediately restore parole to all class members. *See* Declaration of Allyson R. Scher, Ex. A at 2, 3-4, 6.  Plaintiffs requested an update on Defendants' compliance by Monday, April 6.  *Id.* at 3-4.  Plaintiffs also provided a list of specific steps that they believe are necessary to effectuate the Court's order and return all class members to their status quo ante, *i.e.*, the parole status that they held prior to the April 2025 Termination Email, which requires Defendants to: (1) restore to all class members the parole status that they held prior to the April 2025 Termination Email; (2) notify all class members by email and detained class members by physical mail that their parole has been restored; (3) update class members' I-94 forms and USCIS's online system (SAVE) to accurately reflect class members' parole status; (4) update USCIS's website to reflect that the parole terminations have been vacated pursuant to the Court's order; and (5) restore work authorization (EAD) for class members whose authorizations were terminated due to the unlawful parole terminations.  *Id.*  Recognizing that calculating new individual parole expiration dates for every class member would be time-consuming and administratively burdensome, Plaintiffs also proposed a compromise to ensure timely compliance that would have Defendants extend all class members' parole until January 19, 2027—the latest expiration date held by any class member prior to the April 2025 terminations.  *Id.*  Defendants' counsel promptly confirmed receipt of the March 31 and April 3 emails but did not provide a substantive response.  *Id.* at 2-3, 5.

On Monday, April 6, Defendants' counsel requested an additional day to provide their initial response to Plaintiffs' requests for information on Defendants' compliance.  Plaintiffs agreed and requested that Defendants "describe[] what steps Defendants have taken and what steps Defendants plan to take to comply with the Court's order" by April 7 at COB.  *Id.* at 2.  On April 7 at 4:02pm, Defendants' counsel emailed that "Defendants are in the process of pulling the list of class members as defined by the Court's Order," which they "anticipate completing . . . by the end of this week."  *Id.*

2

at 1.  However, Defendants plan to re-review the initial list and exclude: (1) "individuals whose parole would have naturally expired between April 2025 and today"; and (2) "individuals who have, since April 2025, become Lawful Permanent Residents, U.S. Citizens, or have been granted asylum."  *Id.* Defendants therefore "estimate that they will need another two weeks (a) to arrive at the final list of individuals whose parole will be reinstated and (b) to reinstate parole for those individuals."  *Id.*

Defendants' response facially demonstrates non-compliance with the Court's order.

*First*, Defendants acknowledge that they intend to initially identify all class members but then to restore parole only to a subset of the class members.  *See id.* ("Defendants are in the process of pulling the list of class members as defined by the Court's Order . . . .  However, Defendants will need to go through the list in finer detail to arrive at a final list of those individuals whose parole will be reinstated pursuant to the Court Order.").  This plainly violates the Court's order "to return class members to the parole status that they held prior to the April 2025 Termination Email."  ECF No. 48 at 25.  Defendants have no authority to unilaterally narrow the class this Court defined or to decide that only some class members are entitled to relief—let alone to delay relief for those members of the class who all agree are entitled to it.  While class members who are now lawful permanent residents, U.S. citizens, or asylees might no longer benefit from restoration of their parole, that is no reason to delay parole for the many thousands of individuals who are entitled to it now.  Defendants are also incorrect to exclude "individuals whose parole would have naturally expired between April 2025 and today" from the Court's order.  Ex. A at 1.  The Court's order defines the Plaintiff Class to include: "all individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced at paragraph 38 of the Complaint without any further explanation; and (iv) remain in the United States."  ECF No. 48 at 25.  The Court then vacated "the terminations of class members' parole statuses announced by the April 2025 Termination Email" and ordered Defendants "to return class members to the parole status that they held prior to the April 2025 Termination Email."  *Id.*  The Court therefore plainly required Defendants to restore parole to class members whose parole would

have naturally expired over the last year, for whatever period of time remained on their parole as of the April 2025 Termination Email.

This makes sense. If the Court's order held otherwise, many class members' harm would continue without any redress. For example, if parole is not fully restored for the entire period during which it was improperly terminated for class members whose parole would have naturally expired in the last year, those class members would potentially have improperly accrued unlawful presence in the United States beginning on the date of the unlawful termination, even though their parole should have continued beyond April 2025. *See* 8 U.S.C. § 1182(a)(9)(B)(ii) (unlawful presence begins to accrue when a noncitizen is present in the United States without being admitted or paroled). This, in turn, would jeopardize class members' ability to apply for legal permanent resident status or future attempts to re-enter the United States. *See* 8 U.S.C. § 1182(a)(9)(B)(i) (imposing three- and ten-year bars to admissibility based on accrual of unlawful presence); 8 U.S.C. § 1255(a) (requiring that an applicant for adjustment of status be "inspected and admitted or paroled"); 8 C.F.R. § 245.1(b)(5) (stating that to apply for adjustment of status in the United States a person must maintain valid status). Defendants' atextual narrowing of the Court's order would also deprive class members of eligibility for re-parole and related protections. DHS regulations provide that re-parole may be granted on a discretionary, case-by-case basis to individuals who are presently seeking admission or otherwise in a posture that allows for parole consideration. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5. To implement that requirement, USCIS directs individuals to "[f]ile the request [for re-parole] *before the authorized parole period expires* to allow enough processing time and to avoid the potential for accruing time in unlawful status." *See* U.S. Citizenship & Immigr. Servs., Humanitarian Parole, https://www.uscis.gov/humanitarian/humanitarian_parole (last visited Apr. 8, 2026) (emphasis added). Class members whose parole status was unlawfully terminated are effectively precluded from seeking re-parole under existing agency practice, which generally requires continuity of lawful presence or an active parole framework. Excluding the subset of class members whose parole would have expired between April 2025 and today—thereby depriving them of the balance of time in parole to which they otherwise would have been entitled as of April 2025—thus not only contravenes the

4

Court's order to return all class members to "the parole status that they held prior to" the unlawful termination but also imposes significant collateral harms for the excluded subset (while delaying relief for *all* class members in the process).

*Second*, although Defendants acknowledge that they will be able to compile the list of class members this week, they nevertheless have decided to withhold relief from the Plaintiff Class beyond that date even for those class members whose parole they intend to restore. *See* Ex. A at 1 ("Defendants anticipate completing this initial list of class members by the end of this week" but "need another two weeks" to finalize the list and restore parole). This too violates the Court's order, which requires compliance expeditiously—at a minimum—and not three weeks after the Court's order. Nor have Defendants provided any good reason for their delay in compliance. Defendants did not indicate whether they had even started to identify class members prior to their April 6 email (six days after the Court's order), how many hours it will take Defendants to pull the list of individuals that meet the class definition, the number of individuals that Defendants anticipate will require case-by-case review and how many hours that case-by-case review will take, or how many hours it will take Defendants to restore parole to class members once they have completed their final list. Defendants also do not explain why they will not restore parole for *any* class member until three weeks after the Court's order so that they can undertake a time-intensive case-by-case review of some subset of individuals to determine, for example, which class members have since become permanent residents or U.S. citizens. A case-by-case review did not previously prevent Defendants from their mass termination of parole for the Plaintiff Class, and it should not now delay relief for those who are entitled to it.

*Third*, Defendants are incorrect to exclude from their compliance plan the additional steps that are necessary to return all class members to the parole status that they held prior to the April 2025 Termination Email. As discussed above, *supra* at 2, this includes, *inter alia*, updating class members' I-94 forms and the SAVE system, notifying all detained and non-detained class members, and restoring work authorization that was based on their parole status. *See, e.g.*, U.S. Citizenship & Immigr. Servs., Update on Termination of Temporary Protected Status for Burma,

https://www.uscis.gov/save/current-user-agencies/news-alerts/update-on-termination-of-temporary-protected-status-for-burma (USCIS's website explaining that "TPS Burma beneficiaries will keep their status and employment authorization" pursuant to a court order postponing the TPS Burma termination").

Defendants' failure to comply with the Court's March 31, 2026 order has caused ongoing and escalating harm. For a whole year, Plaintiffs and class members have been deprived of parole to which they are entitled, and each additional day without parole compounds that injury. As Plaintiffs explained in detail in their motion for summary judgment and the supporting record, Plaintiffs live in constant fear of being detained and deported to countries where their lives would be at risk; as a result, they suffer anxiety attacks, avoid normal activities outside of the home like taking their children to the park, and have difficulty sleeping at night. ECF No. 32-1 at 9-10. That harm will continue each day until Defendants restore their parole. Plaintiffs and class members also remain without employment authorization and therefore are unable to properly access employment *now*, despite the urgent and critical need to support themselves and their families—a need that is exacerbated as time passes without employment. *Id.* There are also class members in detention that may be subject to release if their parole is restored, but who will remain in detention until Defendants restore their unlawfully terminated parole. Critically, because parole is time-limited, Defendants' noncompliance irreparably deprives Plaintiffs and class members of the benefit of the Court's order with each passing day. Immediate action is therefore necessary to prevent further harm and to give full effect to the Court's order.

Plaintiffs therefore respectfully request that the Court order Defendants to show cause by Thursday, April 9 at 6:00 p.m. as to why they are not in violation of this Court's March 31, 2026 order and a telephonic or video emergency status conference on Friday, April 10 or as soon thereafter as the Court's schedule allows. Plaintiffs' counsel has conferred with Defendants' counsel and has attempted in good faith to resolve the issue pursuant to Local Rule 7.1(a)(2). Defendants have indicated that they oppose the motion.

Dated: April 8, 2026

Respectfully submitted,

*/s/ Allyson R. Scher*
Allyson R. Scher (D.C. Bar No. 1616379)*
Cortney Robinson Henderson (D.C. Bar No. 1656074)*
Catherine M.A. Carroll (D.C. Bar No. 497890)*
Brian D. Netter (D.C. Bar No. 979362)*
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ascher@democracyforward.org
crhenderson@democracyforward.org
ccarroll@democracyforward.org
bnetter@democracyforward.org

Melanie M. Chaput (MA Bar No. 643470)
Heather Arroyo (MA Bar No. 698460)
Iris Gomez (MA Bar No. 201000)
MASSACHUSETTS LAW REFORM INSTITUTE
40 Court Street, Suite 700
Boston, MA 02108
Telephone: 617.357.0700
Facsimile: 617.357.0777
mchaput@mlri.org
harroyo@mlri.org
igomez@mlri.org

*Counsel for Plaintiffs*
*Admitted *pro hac vice*

7