# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SILEIRI DOE, on behalf of herself and all others similarly situated, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-12245 |

## PLAINTIFFS' EMERGENCY MOTION TO ENFORCE COMPLIANCE, OR IN THE ALTERNATIVE, CLARIFY THE COURT'S ORDER

**INTRODUCTION**

It has now been more than three weeks since the Court's March 31, 2026 order, yet Defendants effectively concede they have not complied. Indeed, they have made clear they do not intend to comply, instead announcing a plan that would eliminate their need to comply altogether, and as a result, nullify the relief ordered by this Court. Defendants' actions are a deliberate attempt to evade compliance with the Court's order and deprive class members of the practical benefits of the relief that this Court held they are entitled to receive.

On March 31, 2026, the Court vacated the Plaintiff Class's parole terminations and ordered Defendants "to return class members to the parole status that they held prior to the April 2025 Termination Email." ECF No. 48 at 25. After a week passed in which they admit they made no efforts to comply, Defendants represented that they needed three weeks, until April 21, 2026, to reinstate parole. ECF No. 50-1 at 3, ECF No. 51 at 6. The Court determined that it was satisfied with Defendants' compliance timeline and ordered Defendants to confirm by April 21, 2026, as Defendants had proposed, that they had reinstated parole or to show cause for any delay. ECF No. 55. The Court also ordered Defendants to "describe all steps taken to ensure that the vacated parole terminations and any collateral consequences thereof, such as the accrual of unlawful presence in the United States, do not have legal effect for any class member." *Id.*

However, on the date of their deadline, Defendants filed a status report indicating that Defendants have not restored parole for any class member, have not taken any steps to restore parole for any class member (except for the completion of the list of class members), and have not taken any action to prevent the collateral consequences of the unlawful terminations. *See* ECF No. 56 at 2 (explaining only that Defendants "*will* update the parole end dates in the systems of record to reflect the revocation of the April 2025 termination notices") (emphasis added). Instead, Defendants explained that *they will never restore parole to any class member* because, that very same day, on April 21,

1

2026, agency leadership issued a memorandum (which Defendants have not made available) that will serve as the basis for Defendants' future mass re-terminations of parole for the entire Plaintiff Class. *Id.* Defendants further indicated that such re-terminations will occur on an unspecified date pursuant to that memorandum. *Id.* at 2-3.

Defendants' status report makes clear that they delayed compliance with the Court's order and then reissued their prior decision in revised form as a pretext to deprive the Court's order of any practical effect.

This Court has both inherent equitable authority and statutory authority pursuant to the All Writs Act, 28 U.S.C. § 1651, to enforce compliance with its orders and issue subsequent orders to prevent attempts to undermine court-ordered relief. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (federal courts have inherent authority to grant equitable remedies in the execution of its judgment); *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977) (the All Writs Act enables a federal court to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained"); *United States v. Friedman*, 143 F.3d 18, 22 (1st Cir. 1998) (All Writs Act authority "certainly includes the power to issue a subsequent order which is needed to implement an earlier order which the district court had authority to issue").

Accordingly, this Court should enforce its March 31, 2026 order by requiring Defendants to immediately restore parole to the Plaintiff Class. Moreover, to "ensure that the vacated parole terminations and any collateral consequences thereof, such as the accrual of unlawful presence in the United States, do not have legal effect for any class member," the Court should further enter an order prohibiting Defendants from re-terminating parole—absent intervening facts or circumstances—or otherwise depriving class members of the benefits of parole for the amount of time each class member would have continued to have parole but for the unlawful termination. At minimum, the Court should

enter an order prohibiting any re-termination of parole for the roughly four-week period (and counting) that Defendants did not comply with the Court's March 31, 2026 order.[1]

## ARGUMENT

### I. Defendants have not restored parole to any class member

In plain contradiction of this Court's April 14, 2026 minute order, Defendants did not restore class members' parole by the Court's April 21, 2026 deadline, and did not show cause for their failure to do so.[2]  ECF No. 55.  Instead, Defendants assert a brand-new position that the Court's March 31, 2026 order automatically restored class members' parole and no affirmative steps were required from Defendants to restore parole.  ECF No. 56 at 2 (claiming that "the paroles of class members have been reinstated" automatically "as a result of the court's vacatur").  This previously unasserted proposition stands in stark contrast to Defendants' earlier position that several steps would be necessary for them to take to restore class members' parole.  *See* ECF No. 50-1 at 3; ECF No. 51 at 6-8.  Defendants' new position also makes no sense.  While the court's order vacating the unlawful termination reinstated parole as a theoretical matter, class members have no way of knowing or proving that their parole status has in fact been restored unless and until Defendants provide the necessary notices and update class members' I-94 forms and other systems.  Critically, Defendants by their own admission have failed to take any of those steps, and they instead have refused to treat class members' parole as restored at every turn.  Plaintiffs and their counsel are aware of no updates to any class members' I-94 forms, which serve as the primary source to verify individuals' immigration status.  Moreover, on April 10, ten days after the Court's order, Defendants claimed that it would be

---

[1] Pursuant to Local Rule 7.1, undersigned counsel certifies that they have conferred with Defendants' counsel and have attempted in good faith to resolve the issue.

[2] Defendants' statement that they "*will* update the parole end dates in the systems of record to reflect the revocation of the April 2025 termination notices" facially demonstrates that Defendants have not yet taken *any* action, nor have they shown cause for their delay.  ECF No. 56 at 2 (emphasis added).

"premature" to post notice on DHS websites regarding the invalidity of the April 2025 mass terminations. ECF No. 51 at 7. The undersigned counsel also understands based on outreach from other attorneys—and can provide declarations if it would aid the Court—that Defendants have refused to release class members who are detained because of the unlawful parole termination, and class members continue to be unable to verify their work authorizations. There is no question that Defendants have not restored class members' parole to date. They should be ordered to do so immediately.

The CBP commissioner's April 21, 2026 memorandum, which Defendants have not published or provided to the Court or Plaintiffs, does not excuse Defendants' non-compliance with the Court's order. Defendants have not yet re-terminated parole for the Plaintiff Class pursuant to the memorandum. Even if they validly do so at an unspecified future date, they remain bound by the Court's order in the meantime. The government cannot exempt itself from compliance with judicial decrees simply by representing that it intends to take some superseding action in the future—particularly where, as here, there is every reason to believe the superseding action amounts to a bare effort to deprive the Court's order of any meaningful effect.

## II. Defendants' plan to re-terminate parole violates the Court's order

Defendants' plan to re-terminate parole before complying with the Court's order likewise violates the March 31, 2026 order and would render that order meaningless. The Court directed Defendants to "return class members to the parole status that they held prior to the April 2025 Termination Email," ECF No. 48 at 25. The Court subsequently explained that this order requires Defendants to "ensure that the vacated parole terminations and any collateral consequences thereof . . . not have legal effect for any class member." ECF No. 55. As Plaintiffs have previously explained, see ECF No. 50 at 3-5, to return class members to their status prior to the unlawful parole termination, Defendants must restore class members' parole—and the benefits thereof—for the

4

amount of time that they were unlawfully denied parole.  Defendants appear to agree with this in principle; by explaining that they will update class members' parole expiration dates to ensure that unlawful presence will not accrue for the period between April 2025 and April 2026, Defendants accept the premise that they are required to restore the benefits of parole for the period of time that class members were unlawfully denied parole.  *See* ECF No. 56 at 2-3.

This is also consistent with the principles of vacatur.  When the Court ordered Defendants to return class members to the status they held prior to the parole terminations, it required them to restore the status quo ante.  *See Independent U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854-55 (D.C. Cir. 1987) (noting that vacatur of an agency action returns conditions to the status quo ante); *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005) (same).  Defendants are therefore required to restore class members to the position they would have occupied had the unlawful termination never occurred—they are therefore entitled benefits of parole for the period of parole that remained prior to the April 2025 terminations.

Defendants' contrary position that they can re-terminate class members' parole without restoring the parole they lost due to the prior unlawful termination makes no sense and would deprive class members of the very relief that this Court ordered.  Defendants would deny class members the time that they otherwise would have had to lawfully remain in the United States (free from detention or the threat thereof), access employment, and apply for permanent immigration relief.  Defendants do not and cannot explain how refusing to reinstate parole to any class member for any period of time is consistent with the Court's instruction to "return" class members "to the parole status that they held prior to the April 2025 Termination Email."  ECF No. 48 at 25.  Critically, Plaintiffs' counsel understands that there are a number of class members in detention, who cannot properly access employment, or who are impeded in their ability to apply for permanent immigration relief *as a direct result* of the parole terminations.  None of these class members will receive a single day of parole or

5

its benefits, much less be restored to their status prior to the April 2025 terminations, if Defendants' re-terminations are permitted to take immediate effect. The Court should not permit Defendants to act lawlessly and still reap the benefits of their illegal actions by effectively nullifying the Court's order. Doing so would allow Defendants to create a self-perpetuating cycle of non-compliance, in which court-ordered relief is continually undermined before it can take effect. That cannot be right.

### III.  The Court should enforce compliance with its order

In light of the foregoing violations, the Court should enter further relief. *First*, as demonstrated above, Defendants have not complied with the Court's March 31, 2026 order and therefore should be directed to immediately restore parole for all class members. The Court should further order Defendants to take specific steps to ensure that class members are returned to the status quo ante because they did not describe any steps they have taken to ensure that class members do not shoulder the consequences of the unlawful parole terminations, in direct violation of this Court's April 14, 2026 order. *See* ECF No. 55. Defendants should therefore be required to: (1) notify all class members by email and detained class members by physical mail that their parole has been restored; (2) update class members' I-94 forms and USCIS's online system (SAVE) to accurately reflect class members' parole status; (3) update USCIS's website to reflect that the parole terminations have been vacated pursuant to the Court's order; and (4) restore work authorization (EAD) for class members whose authorizations were terminated due to the unlawful parole terminations. *See* ECF No. 51 at 2.

*Second*, this Court should further enter an order prohibiting Defendants from re-terminating parole—absent intervening facts or circumstances—for the amount of time each class member was deprived of parole and its benefits as a result of the unlawful termination. At minimum, the Court should enter an order prohibiting any re-termination of parole for the period of time (which currently stands at roughly four weeks) that Defendants did not comply with the Court's March 31, 2026 order.

Courts "clearly possess the jurisdiction and power to modify [their] original injunction so as to effectuate its intended purpose and result. It is beyond challenge that the standard for determining whether modification is appropriate is whether the purposes of the litigation as incorporated into the injunctive decree have been fully achieved." *1250 24th St. Assocs. Ltd. P'ship v. Brown*, 684 F. Supp. 326, 328 (D.D.C. 1988); *see also United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 251-52 (1968) (if an injunction has failed to achieve its intended results, the district court has the power and the duty to modify the order); *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 503-04 (5th Cir.1980) (an injunction may be modified to impose more stringent requirements on the defendant when the original purposes of the injunction are not being fulfilled). This principle applies equally to the Court's March 31, 2026 order in this case. *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (the power to modify injunctive orders derives from the Court's inherent authority to enforce its jurisdiction). The "essential inquiry" is "whether modification is necessary in order to fulfill the original purpose" of the Court's order. *1250 24th St. Assocs. Ltd. P'ship*, 684 F. Supp. at 329. Here, Plaintiffs have shown that Defendants intend to thwart this Court's order and refuse to restore parole to the Plaintiff Class, in direct contravention of the relief the Court expressly mandated. Absent the Court's intervention, Defendants' attempted end-run will nullify the order's core purpose, making further relief necessary to vindicate the Court's authority and ensure compliance.

## CONCLUSION

For the above reasons, Plaintiffs' motion should be granted.

Dated: April 23, 2026                    Respectfully submitted,

                                         */s/ Allyson R. Scher*
                                         Allyson R. Scher (D.C. Bar No. 1616379)*
                                         Cortney Robinson Henderson (D.C. Bar No. 1656074)*
                                         Catherine M.A. Carroll (D.C. Bar No. 497890)*
                                         Brian D. Netter (D.C. Bar No. 979362)*
                                         Democracy Forward Foundation

P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ascher@democracyforward.org
crhenderson@democracyforward.org
ccarroll@democracyforward.org
bnetter@democracyforward.org

Melanie M. Chaput (MA Bar No. 643470)
Heather Arroyo (MA Bar No. 698460)
Iris Gomez (MA Bar No. 201000)
MASSACHUSETTS LAW REFORM INSTITUTE
40 Court Street, Suite 700
Boston, MA 02108
Telephone: 617.357.0700
Facsimile: 617.357.0777
mchaput@mlri.org
harroyo@mlri.org
igomez@mlri.org

*Counsel for Plaintiffs*
*Admitted *pro hac vice*