IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SILEIRI DOE, et al., | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | No. 1:25-cv-12245-ADB |
| v. | ) ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | ) ) ) | |
| *Defendants.* | ) ) ) | |

**DECLARATION OF LUIS MEJIA**

I, Luis Mejia, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and documents and information made known or available to me from official records and reasonably relied upon in the course of my employment, hereby declare as follows:

1. I serve as the Deputy Executive Director, Admissibility and Passenger Programs (APP), Office of Field Operations (OFO), U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have served in this position since July 2021. In this position, I oversee 11 Director-level program offices and am responsible for overseeing all OFO programs related to the admissibility of passengers at ports of entry (POEs) including policy guidance pertaining to passenger inspectional processes. I also recently served as the acting Port Director for the Port of El Paso, one of the largest POEs on the Southwest Border, from May 2023 to October 2023. Prior to this role, I served as the Director of Enforcement Programs Division from January 2018 to July 2021. In that capacity, I had oversight of OFO policy related to United States Code, Title 8 for all 328 POEs and was responsible for preparing field guidance surrounding the application of relevant laws, regulations, court decisions, executive orders, and other statutory interpretations. From April 2021 through September 2021, I was Acting Area Port Director for the Area Port of Charleston, South Carolina. Previously, I also served as Branch Chief, Enforcement Operations, Port of New York/Newark, where I was responsible for a staff

1

of 165 CBP officers. I began my career as a CBP officer at the Port of New York/Newark, New Jersey in 2003.

2.      CBP has a broad mission of both protecting the United States from external threats (such as terrorists and other dangerous individuals, narcotics and other substances that can harm U.S. citizens, and counterfeit goods and other products that can undermine U.S. economic prosperity) and facilitating lawful trade and travel in ways that can help support and enhance the U.S. economy and the U.S. population. CBP's mission to protect national security while promoting economic prosperity includes the enforcement of the customs, immigration, and agriculture laws of the United States, as well as the enforcement of hundreds of other laws at the border on behalf of numerous federal agencies. OFO is the main component of CBP that is responsible for implementing these missions, as OFO is responsible for inspecting everything and everyone that enters the United States at its 328 POEs across the country (e.g., all vehicles, conveyances, goods, people, plants, animals, food, medicine, merchandise, etc.), and determining whether that person or thing complies with U.S. law. Therefore, OFO is the first line of defense against threats entering the nation and is primarily responsible for facilitating the free flow of travel and trade.

3.      I am familiar with this Court's March 31, 2026 order requiring the government to reinstate the paroles of a class of aliens who: (1) made an appointment to present at a southwest border land POE using the CBP One application; (2) were subsequently paroled into the United States between May 16, 2023 and January 19, 2025; (3) received an email in April 2025, terminating that parole; and (4) are still in the United States.  I make this declaration to explain CBP's steps to comply with that order.

4.      CBP's OFO and Office of Information Technology (OIT) were made aware of the court's order on March 31, 2026, and, as directed, began taking steps on that day to assess what efforts were required to create a list of individuals who were potentially members of the defined class.  On April 10, 2026, using the above criteria, OFO and OIT created an initial list of approximately 613,000 individuals.  The list is subject to the limitations of CBP systems and the nature of the CBP One application.

5.      Between April 10, 2026, and April 20, 2026, CBP worked with U.S. Immigration and Customs Enforcement (ICE) and U.S. Citizenship and Immigration Services (USCIS) to further narrow and limit the list.  Specifically, CBP understands that USCIS reviewed the list to

2

identify any individuals who were confirmed to be a U.S. citizen or Lawful Permanent Resident (LPR), who are not eligible for parole, or who have asylee status.  CBP also understands that ICE reviewed the list to confirm whether anyone on the list had since been removed by ICE.  These people were removed from the list of 613,000, making the list approximately 603,000.

6.      CBP also worked to determine, of the individuals on the list, whose parole Admit Until Date (AUD) (the date until which an alien individual is permitted to lawfully remain in the United States, if abiding by the terms of their parole) fell between April 2025 and April 2026.  Approximately 284,000 individuals were identified whose parole dates fell between April 2025 and April 24, 2026.  The remaining approximately 319,000 individuals had an AUD that fell later than April 24, 2026.

7.      On April 21, 2026, the CBP Commissioner issued a memorandum explaining that, in his determination, there was no longer any significant public benefit or urgent humanitarian reason for continuing to maintain parole for individuals initially processed following the use of the CBP One application, and that the purpose of such paroles had been served.  Thus, he directed OFO to terminate the paroles of such individuals.  On April 25, 2026, CBP sent emails notifying the recipients whose parole had not yet expired that their parole was being terminated.

8.      For all of the approximately 603,000 individuals who potentially meet the class definition, CBP also updated the AUD.  For the approximately 284,000 people whose AUDs expired between April 2025 and April 24, 2026, the dates were updated to reflect the date on which their original parole expired.  For the approximately 319,000 whose parole was terminated as a result of the April 2026 memorandum, the AUD was updated to April 24, 2026.  The CBP I-94 public website reflects the updated AUD.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 5th day of May, 2026.

_Luis A. Mejia_

Luis Mejia
Deputy Executive Director
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

3