# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SILEIRI DOE, on behalf of herself and all others similarly situated, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>*Defendants*. | Case No. 1:25-cv-12245 |

### <u>DECLARATION OF ASHLEY HUEBNER SUBMITTED IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE</u>

I, Ashley Huebner, make this declaration based on my personal knowledge.  I declare under penalty of perjury that the following is true and correct:

1.      I am an attorney currently employed at Jones Day and dedicated counsel to Jones Day's Border Project.  The Border Project provides access to the rule of law for migrants who are detained in ICE custody in Texas detention centers.  I submit this declaration in support of the Plaintiffs' motion to enforce compliance.

2.      I currently represent a *Sileiri Doe* class member in a habeas corpus petition challenging her unlawful detention and seeking her immediate release from ICE custody, as well as in her underlying immigration proceedings.  In October 2024, she entered the United States after having scheduled an appointment through the CBP One app and was paroled into the United States for a period of two years.  As a Cuban citizen who was paroled into the United States, she would become eligible to apply for lawful permanent resident status under the Cuban Adjustment

Act after being physically present in the United States for one year.  On April 11, 2025, she received an email substantially similar to the one reproduced at paragraph 38 of the Complaint terminating her lawful parole status without any rationale and without even a statement that the conditions for terminating her parole had been met.  The email did not offer an opportunity to respond or challenge the termination.  She has remained in the United States since her lawful entry in October of 2024.

3.      After having received inaccurate information, my client voluntarily presented herself to the local ICE Enforcement and Removal Operations (ERO) Field Office.  She mistakenly thought that she had to present herself to ERO in order to pursue lawful permanent residency under the Cuban Adjustment Act.  At the ERO Field Office, she was scheduled for an appointment to return in June of 2025.  She presented herself at that appointment in June of 2025 and was detained. She has remained in ICE custody since that date.

4.      My client represented herself as a *pro se* litigant before the immigration court.  Her case was docketed on an accelerated timeline because ICE detained her and has kept her in custody and she ultimately appeared *pro se* at a merits hearing before an immigration judge, who ordered her removed.  This decision to keep her in ICE custody also meant that the immigration court would not pause or delay her proceedings so that she could apply for status under the Cuban Adjustment Act; her final merits hearing occurred only three days before she accrued the one year of presence in the United States that made her eligible for relief through the Cuban Adjustment Act.  Had she been released from ICE custody, her case would not have proceeded on a compressed schedule and she could have obtained a continuance to allow her time to apply for residency under the Cuban Adjustment Act. Once she applied for residency, she could have obtained the termination of her removal proceedings based on that pending application.

5.      After the immigration court's decision, I began representing my client in her appeal before the Board of Immigration Appeals, as well as in her application for lawful permanent status under the Cuban Adjustment Act.  That appeal and application both remain pending.

6.      On April 3, 2025, I notified DHS of this Court's decision in *Doe et al v. DHS* by contacting my client's deportation officer at the local ERO office.  In an email to the deportation officer assigned to my client's case, I requested her release because the Court Order issued on March 31, 2026 vacated her parole termination, and she is therefore no longer amenable to removal or detention.

7.      I sent an additional email on April 7, 2026 because I had not received a response. On the same day, the deportation officer responded: "ERO has contacted OPLA for guidance on this case.  As soon as we get a response on how to proceed, we will notify you."  OPLA is the Department of Homeland Security's Office of the Principal Legal Advisor and provides legal advice to ICE personnel.

8.      I sent an additional email on April 10, 2026 because I had not received a decision on my client's release from ICE custody.  On the same day, the deportation officer responded: "As of today, we haven't received an update from OPLA.  I'll reach out and let you know as soon as we received an answer."

9.      Later that day, on April 10, 2026, I received an email from the deportation officer, stating, "As per OPLA guidance ERO has been instructed not to release alien until expressly told to do so through a broadcast or other suitable channels.  Currently awaiting further guidance."

10.     I have not received any more correspondence or communication from my client's deportation officer since the April 10, 2026 email.

11.     My client remains in ICE custody. I filed a habeas corpus petition on April 13, 2026, challenging her unlawful detention.  The habeas corpus case is currently pending.  I specifically raised her *Sileiri Doe* class membership in the habeas corpus petition.  Respondents have filed a response to the habeas corpus petition.  Respondents have neither acknowledged my client's membership in the *Sileiri Doe* class nor the relief that was issued.  To date, Respondents have not conceded that her parole was restored pursuant to this Court's order.

12.     Through the Border Project, I have become aware of other individuals who are *Sileiri Doe* class members yet remain in detention.  I am aware of two *Sileiri Doe* class members currently detained in Laredo-area detention centers who were recently arrested in or around March of 2026.  They were both inspected at the border after securing appointments using the CBP One application and were granted parole for a period of two years.  One entered with parole in October 2024 and the other entered with parole in September 2024.  To the best of my knowledge, neither individual nor my client received any notification of the Court's Order issued on March 31, 2026, nor did they receive any notification or evidence that their parole had been restored.  Both individuals remain detained in ICE custody and have continuously remained in ICE custody since ICE arrested them.

Signed under pains and penalty of perjury, this 5th day of May 2026.


*/s/ Ashley Huebner*
Ashley Huebner, Esq.