# Exhibit 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

|  |  |
|---|---|
| ██████████████████████████ , | |
| Petitioner, | Case No.    _____ |
| v. | |
| MARY DE ANDA-YBARRA, Field Office Director, El Paso Field Office, Immigration and Customs Enforcement, in her official capacity; | **VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |
| MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, in his official capacity; | |
| TODD BLANCHE, Acting U.S. Attorney General, in his official capacity; | |
| TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; | |
| Warden of Otero County Processing Center Detention Facility, in their official capacity, | |
| Respondents. | |

**INTRODUCTION**

1.      Petitioner, ██████████████████████████, is in the physical custody of Respondents at the Otero County Processing Center in Chapparal, New Mexico. He now faces unlawful detention because the Department of Homeland Security (DHS) has unlawfully revoked his humanitarian parole.

2.      Petitioner entered the United States on September 13, 2023, and was granted humanitarian parole that same day under 8 U.S.C. § 1182(d)(5) "for urgent humanitarian reasons or significant public benefit." For over two years, Petitioner lived in the United States while complying with all requirements of his parole. During this time, he relocated to Chicago, Illinois, and married his fiancé on ██████████.

3.      On April 11, 2025, Petitioner received a form email from DHS stating that his humanitarian parole would be terminated within 7 days from the date of notice, purporting to exercise its discretion under 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. §212.5(e) to terminate his humanitarian parole. Petitioner received no subsequent notice regarding DHS' purported revocation of his parole status.

4.      On November 10, 2025, Petitioner was arrested while attending a routine ICE check-in in Broadview, IL, which is just outside of Chicago. Petitioner was detained at ERO Camp East Montana Detention Facility until ██████████, when he was transferred to Otero County Processing Center, where he remains detained.

5.      Petitioner previously filed a Petition for a Writ of Habeas Corpus before the Western District of Texas, El Paso Division, on ██████████. Upon his transfer by the government to Otero County Processing Center, Petitioner filed an unopposed motion to dismiss, which was granted without prejudice on ██████████.

6.      Petitioner is represented by counsel in his removal proceedings. He is eligible and has applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT).

7.      On March 31, 2026, the District Court of Massachusetts certified a class and ordered DHS to restore the parole status of all class members to the status prior to April 2025 mass email. *Doe v. United States Department of Homeland Security*, Civil Action No. 25-cv-12245-ADB, 2026 WL 880442 (D. Mass. Mar. 31, 2026). Petitioner is a member of this certified class, which includes "All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced at paragraph 38 of the Complaint without any further explanation; and (iv) remain in the United States." *Id*. at *12.

8.      Pursuant to the District Court of Massachusetts' Order, DHS' parole termination is vacated, and it must return Petitioner's humanitarian parole to the active status he held prior to April 2025. Consequently, Respondents must release Petitioner from continued detention

9.      Alternatively, Respondents have unlawfully revoked Petitioner's humanitarian parole, in violation of the Immigration and Nationality Act (INA); Due Process Clause of the Fifth Amendment to the U.S. Constitution (Due Process); the Administrative and Procedures Act (APA); and the *Accardi* doctrine, which obligates administrative agencies to follow their own rules, procedures, and instructions.

10.     The INA and its implementing regulations allow for parole revocation only where the parole's purpose has been served or where humanitarian reasons and public benefit no longer justify the noncitizens' presence in the United States. At the time of revocation, the purpose of

Petitioner's parole had not been served as his asylum application remained pending. Meanwhile, humanitarian reasons continued to justify his presence because the conditions in Venezuela that were the underlying basis for his asylum claim remained fundamentally unchanged. Similarly, as there had been no material change in circumstances since Respondents determined Petitioner was not a flight risk or danger upon his initial release, his parole remained in the public interest. In addition, a noncitizen must receive notice, reasoning, and an individualized determination from an authorized official before parole may be revoked. Petitioner did not receive any of these.

11.    Respondents' failure to meet the statutory and regulatory requirements for parole revocation violates the APA as arbitrary and capricious and under the *Accardi* doctrine.

12.    Finally, Due Process requires the government to provide a noncitizen with an opportunity to be heard and submit evidence prior to revocation. Respondents failed to provide these procedural protections to Petitioner, in violation of his Due Process rights.

13.    Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released and returned to humanitarian parole status.

### JURISDICTION

14.    Petitioner is in the physical custody of Respondents. Petitioner is detained at Otero County Processing Center in Chapparal, New Mexico.

15.    This Court has jurisdiction under 28 U.S.C. § 2241(c) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

16.    This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

17.     Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District of New Mexico, the judicial district in which Petitioner currently is detained.

18.     Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in the District of New Mexico.

## REQUIREMENTS OF 28 U.S.C. § 2243

19.     The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

20.     Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

21.     Petitioner ███████████████████████ is a citizen of Venezuela who has resided in the United States since September 13, 2023. He has been in immigration detention since November 10, 2025.

5

22.     Respondent Mary De Anda-Ybarra is the ICE Field Office Director for the El Paso Field Office, which includes the Otero County Processing Center in Chapparal, New Mexico. As such, Respondent De Anda-Ybarra is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. She is named in her official capacity.

23.     Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

24.     Respondent Todd Blanche is the Acting Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

25.     Respondent Todd Lyons is the Acting Director of ICE. As the head of ICE, he is responsible for decisions related to the detention and removal of certain noncitizens, including Petitioner. As such, he is also a legal custodian of Petitioner. He is sued in his official capacity.

26.     Respondent Warden of the Otero County Processing Center Detention Facility is responsible for the operation and oversight of the Otero County Processing Center Detention Facility where Petitioner is currently detained and thus is an immediate custodian of Petitioner. They are sued in their official capacity.

## FACTUAL BACKGROUND

27.     Petitioner is a ■-year-old national of Venezuela. He entered the United States on September 13, 2023, by presenting at a port of entry for an appointment which he had made

6

through the United States Customs and Border Protection Mobile App (CBPOne) and was briefly detained.

28. On September 13, 2023, the same date Petitioner entered the United States, he was released from custody on humanitarian parole. Ex. A; Ex. F.

29. After being released, Petitioner relocated to Chicago, Illinois, and married his fiancé on ▮▮▮▮▮▮. During this time, Petitioner complied with all requirements of his parole.

30. On ▮▮▮▮▮▮, Petitioner timely filed an application for asylum, withholding of removal, and relief under the CAT based on Petitioner's well-founded fear of future persecution based on his sexual orientation. Ex. B. As detailed in Petitioner's asylum application, Petitioner and his now-husband were subjected to violent physical assaults and repeated threats of violence in Venezuela because of their relationship and status as gay men. Petitioner's application is pending. *Id*.

31. On April 11, 2025, Petitioner received correspondence from the Department of Homeland Security via email stating that the Department was "exercising its discretion" to terminate Petitioner's parole. Ex. C. The correspondence did not indicate that the purpose of Petitioner's parole had been accomplished or that an authorized official ever made any decision to that effect. *Id*. Petitioner received no other correspondence from the Department related to the termination of his parole. Subsequently, his electronic I-94 was updated to reflect an "admit until" date of April 18, 2025. Ex. D.

32. On November 10, 2025, Petitioner was arrested during a routine ICE check-in in Chicago, Illinois. He received the same appointment confirmation notice as he had for prior check-ins which contained no indication that he would be detained. Ex. E.

33.     Petitioner is now detained at the Otero County Processing Center in Chapparal, New Mexico. He is represented by counsel in his removal proceedings. He has attended all of his immigration court hearings and continues to seek asylum, withholding of removal, and relief under the CAT.

34.     Petitioner remains unlawfully detained. Petitioner is a member of the certified class in *Doe v. United States Department of Homeland Security*, Civil Action No. 25-cv-12245-ADB, 2026 WL 880442 (D. Mass. Mar. 31, 2026), which vacated DHS' mass parole termination notice and ordered DHS to return class members to the parole status prior to the April 2025 termination email, which would result in Petitioner's humanitarian parole to be restored until the purposes of such parole has been served, that is, until his pending asylum claims have been resolved.

35.     Alternatively, Respondents have improperly revoked Petitioner's parole in violation of the INA, the APA, and Due Process. Absent relief from this Court, Petitioner faces the prospect of months, or even years, in immigration custody, separated from his family and community, without proper revocation of his parole. As of the date of this filing, Petitioner has been unlawfully detained for over five months.

## DISCUSSION

### I. Legal Framework Governing Parole Revocation

36.     Noncitizens subject to mandatory detention under Section 1225 may not be released except under the parole authority provided by 8 U.S.C. § 1182(d)(5)(A). *See Jennings*, 583 U.S. at 300. Such parole may be granted "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," "provided the [noncitizen] present[s] neither a security risk nor a risk of absconding." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

37.     After parole has been granted, it may only be terminated if the purpose of parole is accomplished, or when, in the opinion of an authorized official, humanitarian reasons and the public benefit no longer warrant a noncitizens' presence in the country. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2). The noncitizen must also receive written notice of the parole's termination. 8 C.F.R. § 212.5(e)(2).

38.     In addition, revocation requires an individualized review. *See Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) ("just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1168 (S.D. Cal. 2025) ("revocation of that parole similarly requires an individualized determination."); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("Common sense suggests … that parole given only on a case-by-case basis is to be terminated only on such a basis.") (citation omitted); *Orellana v. Francis*, No. 25-CV-04212 (OEM), 2025 WL 2822640, at *2 (E.D.N.Y. Oct. 3, 2025) (appeal pending in 2d Cir.) ("A natural reading of [§ 1182(d)(5)(A)] suggests that any opinion as to the revocation of parole shall be made in the same manner as its grant: on a case-by-case basis and upon consideration of urgent humanitarian reasons and significant public benefit.").

## II. Petitioner is a Member of a Certified Class in *Doe v. United States Department of Homeland Security* and Must Have His Humanitarian Parole Restored

39.     On March 31, 2026, the District Court of Massachusetts certified the following class: "All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced at paragraph 38 of the Complaint without any further explanation; and (iv) remain in the United States." *Doe*, 2026 WL 880442, at *12.

40.     The court vacated the blanket termination of class members' parole status announced via an email sent in April 2025 because DHS failed to observe the process for parole revocation mandated by the INA and DHS's regulations. *Id*. at *11-12. Specifically, no authorized DHS official ever reviewed any individual class members' parole status to determine whether the purpose of that individual's parole had been accomplished, as required by 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e). *Id*. at *11.

41.     The court further ordered DHS to return class members to the parole status that they held prior to the April 2025 email notice regarding termination of parole. *Id*. at *12.

42.      Petitioner is plainly a member of the certified class because he scheduled an appointment for entry into the United States through the CBP One app, presented at a port of entry, was subsequently granted humanitarian parole on September 13, 2023, had his parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced in the *Doe* decision, and has remained in the United States since.

43.     As such, DHS must comply with the District Court of Massachusetts' order to restore Petitioner's parole status because as of April 2025, his humanitarian parole was still in effect. Consequently, Respondents must release Petitioner from detention.

### III. Respondents Violated the INA by Revoking Petitioner's Parole Without Proper Notice, Reasoning, or Individualized Determination

44.     Even if Petitioner is not a member of the *Doe* certified class, Petitioner's detention is not authorized under the applicable statutory and regulatory provisions because his parole was not properly revoked.

45.     As discussed above, once granted, the government may only revoke Section 1182(d)(5)(A) parole where "(1) the parole's purpose is served or (2) when humanitarian reasons and public benefit are no longer warranted, *and* the noncitizen is provided written notice." *Noori*,

807 F. Supp. 3d at 1167 (citing *Y-Z-L-H*, 792 F. Supp. 3d at 1144-46). And just as a grant of parole can only be made on a case-by-case basis, revocation also requires an individualized determination. Here, the government has not satisfied any of these requirements.

46.    First, the purpose of Petitioner's parole has not been served. Petitioner fled to the United States from Venezuela after experiencing violent physical assaults and repeated threats of violence because of his sexual orientation and was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). As discussed, such parole is granted "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A); here, to allow Petitioner the opportunity to apply for asylum relief. Accordingly, on July 30, 2024, Petitioner timely filed an application for asylum, withholding of removal, and relief under the CAT with the U.S. Department of Justice Executive Office for Immigration Review (EOIR). Ex. B. When Petitioner was arrested and detained, Petitioner's asylum application remained pending with EOIR. As such, the purpose of the parole has not been served. *See, e.g., Martinez v. Raycraft*, No. 1:25-cv-1504, 2025 WL 3511093, at *5 (W.D. Mich. Dec. 8, 2025) (parole's purpose not accomplished where noncitizen fleeing persecution from Venezuelan government filed asylum application, which remained pending at time of arrest); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (parole's purpose not served where Petitioner had fled from Colombia to seek asylum, which was still pending at time of arrest); *Noori*, 2025 WL 2800149, at *13 (purpose of parole not served where noncitizen "applied for asylum and was still in the middle of those proceedings when Respondents issued and executed the revocation."); *Y-Z-L-H*, 792 F. Supp. 3d at 1145 (revocation improper where petitioner was "paroled into the United States based on his express intent to apply for asylum and withholding of removal under CAT" and still pursuing asylum claim at time of purported termination).

47.     Meanwhile, humanitarian reasons continue to justify Petitioner's presence in the United States. As discussed, Petitioner fled Venezuela after being subjected to violent physical assaults and repeated threats of violence because of his sexual orientation. At the time of revocation, Petitioner's well-founded fear of future persecution in Venezuela based on his sexual orientation remained unchanged, and Petitioner continues to be eligible for asylum, withholding of removal, and relief under the CAT. Therefore, the same humanitarian reasons for granting Petitioner's parole continue to warrant his presence in the United States. *See, e.g., Arias*, 2025 WL 3295385, at *3 (humanitarian reasons still justify parole where "Autodefensas Gaitanistas, the organization that threatened [petitioner]'s life, continues to 'engage[ ] in drug trafficking, migrant smuggling, and extortion and is considered a[ ] [foreign terrorist organization] by the U.S. government.'") (citation omitted); *Noori*, 807 F. Supp. 3d at 1168 (humanitarian reasons still warrant parole where Petitioner "had aided United States forces against the Taliban, and since the United States left Afghanistan, Petitioner was forced to go into hiding and was threatened with death" and government offered no evidence to the contrary).

48.     Similarly, Petitioner's parole continues to be in the public benefit. Notably, DHS has issued a "Parole Directive" which serves "as a guide for the meaning of 'public benefit' under the applicable parole regulation, 8 C.F.R. § 212.5." *See Orellana*, 2025 WL 2822640, at *3; ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009). Under the Directive's guidance, "if an asylum-seeker establishes her identity and that she represents neither a flight risk nor a danger to the public, her detention 'is <u>not</u> in the public interest," and thus ICE 'should, absent additional factors … parole the [noncitizen]." *Y-Z-L-H*, F. Supp. 3d at 1145 (citing *Mons v. McAleenan*, 2019 WL 4225322, at *2 (D.D.C. Sept. 5, 2019) (emphasis in original)). Here, DHS' release of Petitioner on parole

reflects an initial determination that Petitioner is not a danger or flight risk, 8 C.F.R. § 212.5(b), and there has been no material change in circumstances since then. Petitioner has complied with his parole requirements, has no criminal history, and attended all ICE check-ins. Therefore, public benefit continues to justify his parole.

49.     Nor has there been any other material change in Petitioner's circumstances that would justify revocation of his parole. When Petitioner was granted parole, the government necessarily determined that Petitioner presented "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Since then, Petitioner has been living in the United States while attending all ICE check-ins, pursuing asylum and relief under the CAT, and without committing any crimes. As such, Petitioner continues to present no flight risk or danger to the community.

50.     Moreover, Respondents failed to make any individualized review regarding the revocation of Petitioner's parole. There is no indication that Respondents ever made a determination specific to Petitioner that the purpose of his parole was accomplished, that neither humanitarian reasons nor public benefit warrant his continued presence in the country, or that any other material change justified revocation of his parole.

51.     In addition, even if a determination regarding humanitarian reasons or public benefit had been made, it would need to come from an authorized official. 8 C.F.R. § 212.5(b) ("when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"). Here, there is no indication that any of the officials listed at § 212.5(a) made any such determination.

13

52.     Finally, to revoke parole, the government must not only make the required determination about the parole's purpose or humanitarian reasons and public benefit but must also provide the noncitizen with written notice. *See Y-Z-L-H*, 792 F. Supp. 3d at 1145 ("written notice is a *necessary* but not a *sufficient* condition for compliance with this regulation.") (emphasis in original). Adequate notice must contain the reasoning for the revocation. *See Noori*, 807 F. Supp. 3d at 1155 (Due Process violated where government did not provide "individualized notice and reasoning"); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (notice to appear insufficient where it did not contain "individualized justification to revoke Petitioner's parole"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) ("generic notification" such as a form letter "insufficient to fulfill the written notice requirement."). Here, the government never provided Petitioner with individualized notice of parole revocation. The government only provided Petitioner with a Termination Notice that did not indicate that the purpose of parole was accomplished or that an authorized official ever made any decision to that effect. *Doe v. Dep't of Homeland Security*, No. 25-CV-12245-ADB, 2026 WL 880442, at *11-12 (Mass. March 31, 2026). It made no mention of any material change in Petitioner's circumstances that would justify revocation. It is identical to the correspondence quoted in *Doe v. Dep't of Homeland Security* which was received by many noncitizens on the same date. *Id*. at *2. The District Court of Massachusetts found that this notice was given "without observing the process mandated by statute and by [the government's] own regulations," and that the notice was therefore "not in accordance with law." *Id*. at *12. The District Court set aside these parole terminations as unlawful. *Id*.

14

53.     In summary, Respondents have improperly revoked Petitioner's parole in violation of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5. The purpose of Petitioner's parole has not been served, humanitarian reasons and public benefit continue to warrant his presence in the United States, and there has been no other material change in his individual circumstances that would justify revocation. In addition, Respondents have not provided Petitioner with proper notice, reasoning, or individualized determination. Nor did any such determination come from an authorized official.

## IV. Respondents' Revocation of Petitioner's Parole without Notice or Opportunity to Respond Violates Due Process

54.     DHS has unlawfully revoked Petitioner's parole without the minimum procedural safeguards required by the Fifth Amendment. Under *Mathews v. Eldridge*, the balance of interests overwhelmingly favors notice, individualized determination, and an opportunity to be heard before parole can be terminated. 424 U.S. 319, 333 (1976).

55.     The *Mathews* three-factor test weighs: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

### a. *Private Interest*

56.     Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects.");

*see also, e.g., Perez v. LaRose*, No. 3:25-CV-02620-RBM-JLB, 2025 WL 3171742, at *5 (S.D. Cal. Nov. 13, 2025) (liberty interest applied to noncitizen released on humanitarian parole). Although the government has initial discretion on whether to detain or release a noncitizen on parole, once parole is granted, it "creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the … conditions of release.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morissey v. Brewer*, 408 U.S. 471, 482 (1972)). The revocation of Petitioner's parole has deprived Petitioner from seeing his husband and friends, working to support himself, and participating in his community, and deprives him of any privacy and freedom of movement.

   **b.  *Risk of Erroneous Deprivation***

  57. The government's revocation of Petitioner's parole without proper notice, reasoning, individualized determination, or an opportunity to be heard has caused an erroneous deprivation in Petitioner's liberty interest in remaining free from detention. *See Mathews*, 424 U.S. at 348 ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss (be given) notice of the case against him and an opportunity to meet it.'" (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (Frankfurter, J., concurring)); *Salazar*, 2025 WL 3063629, at *4 ("Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights").

  58. As discussed above, Petitioner was not provided with proper notice, reasoning, or an individualized determination of his parole revocation. Without these, there is a high risk of erroneously depriving Petitioner of his freedom. *See Noori*, 807 F. Supp. 3d at 1166 ("Denying Petitioner notice and reasoning of the … revocation of his parole took away a meaningful

opportunity to contest and violated due process."); *Sanchez*, 2025 WL 2770629, at *3 (finding

due process denied where parole revoked without notice); *Perez*, 2025 WL 3171742, at *5 ("the

risk of erroneous deprivation of [liberty] interest is high as Petitioner's parole was revoked

without providing [him] a reason for revocation or giving [him] an opportunity to be heard."

(internal quotation omitted)); *Martinez*, 2025 WL 3511093, at *8 ("there is a high risk of

erroneously depriving Petitioner of his freedom if Petitioner does not receive an individualized

determination regarding the revocation of his parole."); *Munoz Materano v. Arteta*, No. 25 CIV.

6137 (ER), 2025 WL 2630826, at *15 (S.D.N.Y. Sept. 12, 2025) ("[Petitioner]'s re-detention

without any individualized assessment such as 'any change in circumstances' since the

government released him on parole 'establishes a high risk of erroneous deprivation of his

protected liberty interest.'" (citation omitted)).

59.    Furthermore, before parole can be revoked, a noncitizen must be given an

opportunity to be heard. *See Salazar*, 2025 WL 3063629, at *4-5 (finding unlawful the

revocation of 1182(d)(5)(A) parole "without providing her a reason for revocation or giving her

an opportunity to be heard."); *Mata Velasquez*, 794 F. Supp. 3d at 153 (finding parole revocation

without an opportunity to be heard violated due process). The opportunity to be heard must be

meaningful, taking place "at a meaningful time and in a meaningful manner." *Mathewse*, 424

U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545 (1965)). For parole revocation, an

opportunity to be heard is "only meaningful if the government comports with its own internal

standards regarding parole revocation." *Sanchez*, 2025 WL 2770629, at *3. Here, by re-detaining

Petitioner on November 10, 2025, at a routine ICE check-in with no proper notice, reasoning, or

individualized determination, Respondents have failed to provide Petitioner with any opportunity

to be heard, let alone a meaningful one.

60. In addition, to mitigate the high risk of erroneous deprivation, courts have indicated that due process requires, "at [a] minimum, the opportunity for [Petitioner] to submit evidence relevant to whether [the government] should revoke [his parole] before [it] make[s] a revocation decision." *Martinez*, 2025 WL 3511093, at *8 (citing *Meta Velasquez*, 794 F. Supp. 3d at 153). Petitioner has been provided no such opportunity.

### c. *Government Interest*

61. The government has no significant interest in Petitioner's continued detention. As discussed, the government revoked Petitioner's parole before its purpose had been served and while humanitarian reasons and public benefit continued to justify Petitioner's presence in the country. Further, any interest in public safety or ensuring that Petitioner attends future immigration proceedings would be satisfied by Petitioner's continued attendance at ICE check-ins. Instead, given the government's minimal interest, "continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention." *Martinez*, 2025 WL 3511093 at *8.

## V. Respondents' Parole Revocation Violates the APA

62. The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

63.     A parole revocation is arbitrary and capricious in violation of the APA where the government fails to follow required procedure for revocation. *See Y-Z-L-H*, 792 F. Supp. 3d at 1146 ("by denying Petitioner the required procedure before purporting to terminate his parole, Respondents acted arbitrarily and capriciously and violated the APA."). This includes meeting the statutory and regulatory requirements of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5. *See, e.g., Perez*, 2025 WL 3171742, at *6-7 (parole revocation arbitrary and capricious for lack of reasoning, individualized determination, and where "the purpose of Petitioner's parole had not been served" and "the public benefit and humanitarian reasons still warrant Petitioner's presence in the United States."); *Salazar*, 2025 WL 3063629, at *5 (parole revocation arbitrary and capricious for lack of written notice or required finding that parole's purpose was served or that humanitarian reasons and public benefit do not warrant presence in the country); *Sanchez*, 2025 WL 2770629, at *4 (parole revocation arbitrary and capricious for lack of reasoning); *Noori*, 807 F. Supp. 3d at 1168-69 (parole revocation arbitrary and capricious for lack of individualized determination or reasoning); *Munoz Materano*, 2025 WL 2630826, at *17 (parole revocation arbitrary and capricious for lack of  individualized determination or reasoning).

64.     In addition, ICE "has the duty to follow its own federal regulations." *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (quoting *Nelson v. I.N.S.*, 232 F.3d 258, 262 (1st Cir. 2000)); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266, 268 (1954).

65.     As discussed above, Respondents here have failed to comply with any of the statutory and regulatory requirements for parole revocation. Petitioner has not been provided with proper notice, reasoning, or individualized determination of his parole revocation. And the purpose of Petitioner's parole has not been served while humanitarian reasons and public benefit

continue to justify his presence in the country. Therefore, Respondent's revocation of Petitioner's parole violates the APA as arbitrary and capricious and under the *Accardi* doctrine.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the INA**
**(Unlawful Revocation of Parole)**

66.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

67.     The provisions at 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5 govern revocation of humanitarian parole.

68.     First, these provisions allow for revocation only where the purpose of the parole has been served or humanitarian reasons and public benefit no longer warrant the noncitizen's presence in the United States. The purpose of Petitioner's parole has not been served as his application for asylum, withholding of removal, and relief under the CAT remains pending. Humanitarian reasons continue to warrant Petitioner's presence as the reasons why he fled his home country continue to exist. Public benefit continues to warrant Petitioner's presence as there has been no material change to his flight risk and danger since the government's initial determination to grant parole.

69.     Second, revocation requires written notice which contains the reasoning for revocation, an individualized determination, and a statement that such determination has been made by an authorized official. The government has satisfied none of these requirements.

70.     Petitioner's parole revocation and re-detention is therefore contrary to law.

### COUNT II
**Violation of Due Process**
**(Failure to Provide Notice or Opportunity to Respond to Parole Revocation)**

71.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

72.    The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas*, 533 U.S. at 690, 121.

73.    Petitioner has a fundamental interest in liberty and being free from official restraint.

74.    Due Process requires the government to provide a noncitizen with notice, reasoning, individualized determination, and an opportunity to be heard before parole can be revoked. Respondents have failed to provide Petitioner with any such protections from erroneous deprivation.

75.    Respondents have no significant interest in revoking Petitioner's parole. Petitioner has complied with every condition of his release. He has attended every ICE check-in and there has been no material change in his circumstances since the government granted his parole. The purpose of Petitioner's parole has not been served; humanitarian reasons continue to justify his presence in the country; and he is neither a danger nor a flight risk.

76.    Because Petitioner's parole revocation was unaccompanied by the procedural protections that such a significant deprivation of liberty requires under the Due Process of the Fifth Amendment of the U.S. Constitution, his continued detention is unlawful.

### COUNT III
**Violation of the APA**

**(Arbitrary and Capricious Parole Revocation)**

77.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

78.     The APA requires courts to hold unlawful agency action that is arbitrary and capricious. Parole revocation is arbitrary and capricious where the government fails to follow required procedure for revocation.

79.     Respondents revoked Petitioner's parole without providing proper notice, reasoning, or individualized determination. They further revoked Petitioner's parole before its purpose had been served and while humanitarian reasons and public benefit continued to justify his presence in the country. Because Respondents have failed to provide Petitioner with these required procedures, Petitioner's parole revocation was arbitrary and capricious in violation of the APA.

## COUNT IV
### Violation of the APA and the *Accardi* Doctrine
### (Failure to Follow Regulations to Revoke Parole)

80.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

81.     When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *Accardi*, 347 U.S. at 266, 268.

82.     Respondents have violated the statute and applicable regulations—8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5—by revoking Petitioner's parole before its purpose had been served, while humanitarian reasons and public benefit continue to warrant Petitioner's presence, and without notice, reasoning, or individualized determination.

22

83.    Petitioner's detention is therefore unlawful in violation of the APA and the *Accardi* doctrine.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.    Assume jurisdiction over this matter;

b.    Issue a writ of habeas corpus requiring that Respondents immediately release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within 14 days;

c.    Enjoin Respondents from moving Petitioner outside the jurisdiction of this Court pending adjudication of this petition;

d.    Declare that Petitioner's continued detention violates the INA, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act (APA);

e.    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

f.    Grant any other and further relief that this Court deems just and proper.

DATED: May 1, 2026                              Respectfully submitted,



*Attorney for Petitioner*

23

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

      I, ███████████, am submitting this verification on behalf of Petitioner because his current detention makes him unable to submit the verification on his own behalf. On information and belief, I hereby verify under penalty of perjury that the factual statements made in this Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

24