UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SILEIRI DOE, *on behalf of herself and all others similarly situated*, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY et al.,<br><br>Defendants. | * * * * * * * * * * * * * * | Civil Action No. 25-cv-12245-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is Plaintiffs' emergency motion to enforce compliance or, in the alternative, to clarify the Court's order, [ECF No. 57]. As explained below, the motion is **DENIED**, but the Court, pursuant to its inherent powers, will—subject to consideration of any objections by either party—enter an order requiring notice to all affected class members and documentation of Defendants' efforts to undo collateral consequences for any class members whose asylum or other immigration proceedings were affected.

I.      **FACTUAL AND PROCEDURAL HISTORY**

On March 31, 2026, the Court certified a class and granted partial summary judgment to Plaintiffs pursuant to the Administrative Procedure Act ("APA"), Pub. L. No. 79-404, 60 Stat. 237 (1946) (codified as amended in scattered sections of 5 U.S.C.), which vacated the terminations of class members' parole statuses pursuant to a generic email delivered in April 2025. [ECF No. 48]. Specifically, the Court ordered:

> The terminations of class members' parole statuses announced by the April 2025 Termination Email are **VACATED** pursuant to 5 U.S.C. § 706. Defendants are

ordered to return class members to the parole status that they held prior to the April 2025 Termination Email.

[Id. at 25]. Defendants "began taking steps on that day to assess what efforts were required to create a list of individuals who were potentially members of the defined class." [ECF No. 61-1 ("Mejia Decl.") ¶ 4].

On April 8, 2026, Plaintiffs filed their first emergency motion, which sought an order compelling Defendants to "show cause . . . as to why they [we]re not in violation of this Court's March 31, 2026 order" because they had not yet restored class members' parole. [ECF No. 50 at 6]. Defendants responded on April 9, 2026. [ECF No. 51 at 1]. In their response, they cited the "practical realities of compl[iance]" with the Court's order and the difficulty of "coordinat[ing] multiple components of the Department of Homeland Security" to effectuate the relief ordered by the Court, [id. at 2], but estimated that within "two weeks . . . [Defendants would be able] to reinstate parole for [class members]," [id. at 3 (citing [ECF No. 50-1 at 3])].[1] On the basis of Defendants' statement that parole would be reinstated within a reasonable time frame, the Court concluded that Defendants' compliance was timely and denied Plaintiffs' motion, but ordered Defendants to provide a status update by April 21, 2026, confirming that Defendants had "reinstate[d] parole for [class members]." [ECF No. 55 (first alteration in original) (quoting [ECF No. 51 at 3])].

By April 20, 2026, [Mejia Decl. ¶ 5], Defendants were seemingly in a position to satisfy the Court's order, but instead of reinstating parole, on April 21, 2026, Defendants took a new

---

[1] The Court accepts that Defendants were making efforts to comply with its order. By April 10, 2026, Defendants had "an initial list of approximately 613,000 individuals," [Mejia Decl. ¶ 4], which they then spent ten days "review[ing] . . . to identify any individuals who were confirmed to be a U.S. citizen or Lawful Permanent Resident (LPR), who [we]re not eligible for parole, . . . who ha[d] asylee status[, or] . . . [who] had since been removed by ICE," [id. ¶ 5].

agency action and once again terminated parole for the same class members, [ECF No. 61-2].  In their court-ordered status report on April 21, 2026, Defendants wrote that although they would "updat[e] their systems . . . 'to ensure that the vacated parole terminations and any collateral consequences thereof . . . do not have legal effect for any class member,'" [ECF No. 56 at 2–3 (quoting [ECF No. 55])], they planned to immediately "giv[e] effect to the [new] termination memorandum," [id.].

On April 23, 2026, Plaintiffs filed the instant motion, [ECF No. 57], and the next day, the Court set a hearing for May 6, 2026, [ECF No. 58].  On April 25, 2026, Plaintiffs sought an emergency stay of the new parole terminations, [ECF No. 59], which the Court denied on April 27, 2026, [ECF No. 60].  On May 5, 2026, Plaintiffs filed additional attorney declarations in support of their motion, [ECF No. 62], and Defendants filed their response, [ECF No. 61].  The Court held a remote hearing on May 6, 2026.  [ECF No. 63].

## II.    LEGAL STANDARD

The standard remedy under the APA for unlawful agency action is vacatur and remand. See 5 U.S.C. § 706 (providing that courts should "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); INS v. Orlando Ventura, 537 U.S. 12, 16–17 (2002) ("Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context."); FDA v. Wages & White Lion Invs., L.L.C., 604 U.S. 542, 587 (2025) ("[W]hen an agency error is identified, . . . 'except in rare circumstances,' [courts should] ' . . . remand to the agency for additional investigation or explanation . . . .'" (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985))); see also 33 Wright & Miller's Federal Practice & Procedure § 8381 (2d ed. Apr. 2026 update) (noting that "[t]his approach . . . avoids judicial encroachment on agency discretion").  For the

3

Court to "compel agency action under section 706 of the APA," by contrast, "the Court must conclude that an agency 'failed to take a discrete agency action that it is required to take.'" Am. Waterways Operators v. U.S. Coast Guard, 613 F. Supp. 3d 475, 486 (D. Mass. 2020) (emphasis added) (quoting Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv., 674 F.3d 97, 99 (1st Cir. 2012)).

In addition to APA remedies, all courts possess "[c]ertain implied powers . . . necessarily result[ing] . . . from the nature of their institution." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812)); see also id. ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates." (quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 227 (1821))). "When a court confronts a violation of its own order, 'it may choose from a broad universe of possible sanctions.'" In re Charbono, 790 F.3d 80, 89 (1st Cir. 2015) (quoting Velázquez Linares v. United States, 546 F.3d 710, 711 (1st Cir. 2008)). In doing so, "the court must give 'individualized consideration to the particular circumstances,' . . . and 'balance a myriad of factors,'" id. (first quoting Velázquez Linares, 546 F.3d at 711; and then quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)). The Court must exercise its inherent powers "circumspectly and with particular regard for due process protections," id. at 88 (first citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980); then citing United States v. Horn, 29 F.3d 754, 760 (1st Cir. 1994); and then citing Boettcher v. Hartford Ins. Grp., 927 F.2d 23, 26 (1st Cir. 1991)). Though "sovereign immunity forecloses the imposition of monetary sanctions against the federal government" pursuant to a court's inherent powers, Horn, 29 F.3d at 766, courts have ordered a variety of nonmonetary sanctions against the federal government, see id. at 766–67 (collecting cases); Chilcutt v. United States, 4 F.3d 1313, 1327 (5th Cir. 1993)

4

("[T]o restrict a district court's power to fashion appropriate sanctions, simply because the transgressor is a member of the executive or legislative branch, would violate the separation of powers doctrine . . . [and] rob federal courts of power they inherited at their inception . . . to preserve order in judicial proceedings and enforce judgments.").

III.    **DISCUSSION**

The legal effect of the Court's order was to invalidate the revocations of parole that had been effectuated nearly one year earlier in April 2025, returning class members to whatever status they would have held if their parole had never been revoked. The Court's order did not bar Defendants from again revoking parole, this time pursuant to the procedure required by statute. See SEC v. Chenery Corp., 332 U.S. 194, 196, 200–01 (1947) (concluding that an agency may "reexamine[] [a] problem, recast its rationale and reach[] the same result," id. at 196). Although Plaintiffs were entitled to restoration of parole, notice thereof, and whatever other steps were required to unwind the unlawful revocations, they were not entitled to any further "order prohibiting Defendants from re-terminating parole," [ECF No. 57 at 7]. Cf. DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) ("The dispute before the Court is not whether [an agency may take certain action] . . . . All parties agree that it may. The dispute is instead primarily about the procedure the agency followed in doing so."). The relief that Plaintiffs seek goes beyond the remedies available under the APA and thus exceeds the scope of the Court's order. Accordingly, Plaintiffs' motion for enforcement or clarification, [ECF No. 57], is **DENIED**.

At the same time, the Court recognizes that the government's failure to undo the original unlawful terminations before reinstating them through a new action effectively nullified any meaningful remedy that Plaintiffs could have received. All class members should have enjoyed full parole status pursuant to 8 U.S.C. § 1182(d)(5)(A) until the new agency action in 2026—yet

5

at least some detained class members, who should have been released when the Court reinstated their parole, were left in immigration detention until Defendants took new agency action. See [ECF Nos. 62-1, 62-2, 62-3]. The government also has made no representations about ensuring that asylum applicants among the certified class, e.g., [ECF No. 1 at 5–6], were not and will not be prejudiced in the asylum process as a result of the unlawful termination of their parole.

In sum, it appears that many class members enjoyed parole in name only for the three-week period between the Court's order and Defendants' new action. Regardless of Defendants' reasons for proceeding as they did, they failed to comply with the Court's order, which required them to "return class members to the parole status that they held prior to the April 2025 Termination Email." [ECF No. 48 at 25]. The new agency action ultimately turned delayed compliance into affirmative noncompliance by permanently depriving class members of the relief to which they were entitled. The Court concludes that this conduct merits a limited inherent-powers sanction, elaborated below.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiffs' motion for enforcement or clarification, [ECF No. 57], is **DENIED**, but pursuant to its inherent powers to compel compliance with its judgment, the Court will enter the following order in fourteen days, subject to modification upon the Court's review of any objections filed by either party within ten days of this order.

1. Defendants must identify all class members and determine whether each class member had pending asylum or other immigration proceedings that were affected by the unlawful parole terminations, including due to missed appointments.

2. For any class member whose asylum or other immigration proceedings were adversely affected by the unlawful parole terminations, Defendants must document their efforts to ensure that all adverse consequences—including, but not limited to, penalties or adverse

decisions resulting from missed appointments and similar disruptions—have been undone.

3.  Finally, Defendants must send the following notice to every class member in English and translated into the preferred language on file for that class member:

> *This is an official government message.  You are receiving this message because your immigration parole under 28 U.S.C. § 1182(d)(5)(A) was previously terminated by the federal government via mass email in April 2025.  You are hereby notified that on March 31, 2026, the United States District Court for the District of Massachusetts held that the parole terminations by email in April 2025 did not follow the required procedure. The April 2025 terminations of parole via mass email were unlawful and have no legal effect.*
>
> *The government cannot detain you on the basis that your parole was terminated by mass email in April 2025.  The government must ensure that you did not suffer consequences in asylum proceedings or any other immigration proceeding as a result of the April 2025 terminations of parole via mass email.*
>
> *Other than invalidating the April 2025 terminations of parole via mass email, the Court's decision did not limit the government's ability to terminate your parole, provided that the government follows the required procedure.  This notice does not affect any other decision that the government may have made, either before or after March 31, 2026, to terminate your immigration parole, and it does not limit the government's ability to detain you or take any other lawful action against you on the basis that your parole has been lawfully terminated.*

4.  Defendants shall provide weekly status updates indicating the steps that they are taking to comply with this order until the Court advises them that such updates are no longer necessary.

**SO ORDERED.**

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

July 15, 2026

7