**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SILEIRI DOE, on behalf of herself and all others similarly situated, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY *et al.*,<br><br>    *Defendants*. | Case No. 1:25-cv-12245 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO
THE COURT'S PROPOSED ORDER**

Plaintiffs respond briefly to correct the mischaracterizations in Defendants' Objections to the Court's Proposed Order, ECF No. 68. The Court correctly found that Defendants "failed to comply with the Court's order" and that their subsequent agency action "turned delayed compliance into affirmative non-compliance by permanently depriving class members of the relief to which they were entitled." ECF No. 67 at 6. Defendants do not dispute that finding, nor do they contest the Court's authority to sanction their non-compliance. Defendants identify no legal barrier to the Proposed Order and no basis to pare back the limited sanction the Court announced. Defendants do not argue that they cannot comply with the Court's Proposed Order; they argue that compliance would be inconvenient. That is not an objection—it is a burden of their own making. *Cf. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (weighing "the fact that the defendant brought that injury upon itself" in issuing relief); *Ramirez v. U.S. Immigr. & Customs Enf't*, 568 F. Supp. 3d 10, 34 (D.D.C. 2021) (hardship ICE and DHS faced in remedying violations was "not legally relevant" to whether proposed relief was appropriate). As explained below, Defendants' objections overwhelmingly fail.

1

## I.  Requirements (1) and (2): Identifying Class Members and Correcting Adverse Effects

Plaintiffs' response to Objection #1. Defendants first mischaracterize the Proposed Order as "presum[ing]" that class members detained after April 2025 would not have been detained absent the unlawful parole terminations. ECF No. 68 at 3. The Proposed Order presumes nothing about causation. It directs Defendants to make that very determination—to identify which adverse consequences, detention and missed appointments among them, in fact resulted from the terminations. *See* ECF No. 67 at 6 (requiring Defendants to determine whether class members' proceedings "were affected by the unlawful parole terminations, including due to missed appointments"). Where an independent, non-termination basis for a class member's detention existed—for example, a criminal ground that independently required mandatory detention—Defendants remain free to document it in the weekly status reports the Proposed Order already requires.

Defendants' related point—that DHS retains discretion to detain a validly paroled individual on a case-by-case basis, ECF No. 68 at 3—does not help them and, if anything, confirms the Proposed Order's approach. Defendants concede that detention is permissible only "as long as ICE detention does not obviate/impede the purpose of the Section 1182 parole." *Id.* Valid humanitarian parole and detention thus do not ordinarily coexist, which is exactly why identifying paroled class members who were nonetheless detained is how one surfaces the detentions attributable to the terminations.

Read in context, Defendants' Objection #1 is an attempt to avoid the consequence that matters most: releasing class members who are in detention only because their parole was unlawfully terminated. The Court's order returns class members to the *status quo ante*, and the Court found that detained class members "should have been released when the Court reinstated their parole." ECF No. 67 at 6. Defendants resist that result by asserting that DHS "could have detained the [non-citizen] on an individual basis notwithstanding the mass parole terminations." ECF No. 68 at 3. But that is a

statement of authority, not a decision Defendants ever made. Defendants identify no class member whom DHS actually elected to detain, case by case, on a ground independent of the terminations. Where the basis for a class member's detention was the unlawful termination of parole, remedying the adverse consequences from the unlawful termination requires that person's release—and Defendants cannot keep the person detained by invoking a discretionary authority they never exercised. Where an independent basis for detention does exist, it will appear in the class member's records, and Defendants may document it in the weekly status reports the Court proposed. What Defendants may not do is treat a hypothetical power to detain as a license to keep detaining class members whose only disqualifying event was Defendants' own unlawful act.  Defendants may not rewrite the past to escape a remedy for it.

Plaintiffs' response to Objection #2. Defendants overstate compliance as "impossible or extremely difficult," ECF No. 68 at 3, but their own conduct refutes that claim. Following the Court's order, Defendants—coordinating across CBP, ICE, and USCIS—assembled an initial list of approximately 613,000 potential class members (by April 10); cross-checked it against ICE and USCIS systems to remove individuals confirmed to be U.S. citizens or lawful permanent residents, those with asylee status, and those ICE had already removed, narrowing the list to roughly 603,000 (by April 20); sorted those 603,000 by their Admit Until Date to determine whose parole fell within the relevant window; and then bulk-updated the Admit Until Date in the systems of record for all 603,000, including on the public-facing I-94 website (by April 25). ECF No. 61-1, Mejia Decl. ¶¶ 4–8. A party able to query, cross-reference, and bulk-edit its systems by A-number at that scale in the weeks that followed the Court's March 31, 2026 order cannot credibly claim it is unable to run those same A-numbers to identify which class members had a benefit request denied or other adverse consequences. Defendants concede as much: USCIS "could run a list of [A-]numbers against systems to determine if any class members had any benefit request denied . . . or a missed appointment during a specific

time period." ECF No. 68 at 3–4. And because Defendants can use A-numbers to access each class member's entire immigration file, which includes every contact that the individual has had with the immigration system, the information needed to identify any adverse consequence is information Defendants already possess. And where a class member's A-file shows an independent basis for an adverse consequence, Defendants can bring that to the Court's attention through the regular status updates the Court has proposed.

That any administrative cost attends this work is not a valid objection; it is the direct consequence of Defendants' own unlawful action. To the extent Defendants cannot tailor their compliance efforts without significant administrative burden, Plaintiffs do not object to Defendants withdrawing the April 2026 re-terminations and extending class members' parole through January 2027 as a remedy for their non-compliance and to ensure that no affected class member is overlooked.

Plaintiffs' response to Objection #3. Defendants call the term "adversely affected" "vague and subjective." ECF No. 68 at 4. It is neither. The Court supplies concrete examples: "penalties or adverse decisions resulting from missed appointments and similar disruptions." ECF No. 67 at 6–7. That the inquiry "may vary according to the [non-citizen]," *id.* at 4, is not a defect but the point: the harms are individualized, so the remedy must be too, which is why the Proposed Order directs a class-member-by-class-member review. If Defendants are unsure whether a particular consequence that they have identified in an individual's A-file qualifies, the Court's proposed reporting requirement enables them to timely raise their question. What Defendants may not do is convert their professed uncertainty into the demand they press throughout—limiting the Order to categories "agreed upon by the parties," *id.*—which would hand Defendants a veto over the scope of their own compliance.

Plaintiffs' response to Objection #4. Defendants misidentify the harm, treating Requirement (2) as a demand for retroactive employment authorization. ECF No. 68 at 4. It is not. The continued harm is that Defendants' unlawful termination of parole—and the resulting loss of work

authorization—exposes class members to being treated as having "worked without authorization" during the period of the terminations, a collateral consequence that may be held against them in future immigration proceedings. *See, e.g.,* 8 U.S.C. § 1255(c)(2), (8). Defendants' invocation of INA provisions that govern employer sanctions for employing unauthorized workers underscores this point. At minimum, the Proposed Order would require Defendants to issue a clear directive that the unlawful revocation of work authorization will not be used in this manner in admissibility decisions and in immigration court.

## II.  Requirement (3): Class Notice

Plaintiffs' response to Objection #1. Defendants speculate that the Proposed Order's required notice to class members "will likely cause considerable confusion," particularly for class members whose parole was re-terminated. ECF No. 68 at 5. Quite the opposite—and Defendants' concern is answered by the notice itself. Its final paragraph tells each recipient that, apart from invalidating the April 2025 email terminations, the Court's decision "did not limit the government's ability to terminate [their] parole, provided that the government follows the required procedure," and "does not affect any other decision that the government may have made, either before or after March 31, 2026, to terminate [their] … parole." ECF No. 67 at 7. The very confusion Defendants predict for re-terminated class members is thus dispelled on the face of the notice. Any residual confusion stems from Defendants' own terminations and re-terminations, and the cure for confusion is clearer notice, not silence—yet Defendants identify no language they would change and propose no alternative but suppression. There is no better way to remedy confusion than to apprise class members of their rights, stating plainly what the Court held and what its ruling does and does not do. The notice should issue as written.

Plaintiffs' response to Objection #2. Defendants say only that a class member's "preferred language" is "not something Defendants have noted in their records." ECF No. 68 at 5. That gap is

easily filled: DHS's parole records reflect each class member's nationality, so where no preferred language is on file, Defendants can send the notice in the language primarily spoken in that class member's country of origin. Defendants' alternative—only "the three most common languages for the class," *id.*—would leave every class member outside those three languages with a notice they cannot read, which is no notice at all.

Plaintiffs' response to Objection #3. Plaintiffs do not oppose correcting the notice's citation from "28 U.S.C. § 1182(d)(5)" to "8 U.S.C. § 1182(d)(5)." ECF No. 68 at 5.

## III.  Requirement (4): Status Reporting

The weekly reporting requirement responds directly to Defendants' pattern of non-compliance—delay followed by affirmative inaction—and lets the Court monitor compliance in real time. ECF No. 67 at 5–6. Plaintiffs do not oppose reporting every two weeks if the Court prefers.

\* \* \*

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule Defendants' objections and enter the Proposed Order. And should the Court have any doubt that Defendants can comply, it need only permit them to satisfy the Order the simplest way: by withdrawing the April 2026 re-terminations and extending class members' parole through January 2027.

Dated: July 28, 2026

Respectfully submitted,

*/s/  Allyson R. Scher*
Allyson R. Scher (D.C. Bar No. 1616379)*
Cortney Robinson Henderson (D.C. Bar No. 1656074)*
Catherine M.A. Carroll (D.C. Bar No. 497890)*
Brian D. Netter (D.C. Bar No. 979362)*
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
bnetter@democracyforward.org
ascher@democracyforward.org
crhenderson@democracyforward.org

6

Melanie M. Chaput (MA Bar No. 643470)
Heather Arroyo (MA Bar No. 698460)
Iris Gomez (MA Bar No. 201000)
MASSACHUSETTS LAW REFORM INSTITUTE
40 Court Street, Suite 700
Boston, MA 02108
Telephone: 617.357.0700
Facsimile: 617.357.0777
mchaput@mlri.org
harroyo@mlri.org
igomez@mlri.org

*Counsel for Plaintiffs*
*Admitted pro hac vice*

7