UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SILEIRI DOE, *on behalf of herself and all others similarly situated*, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 25-cv-12245-ADB |
| U.S. DEPARTMENT OF HOMELAND SECURITY et al., | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On July 15, 2026, the Court entered a memorandum and order that explained its decision to impose a sanction on Defendants pursuant to its inherent powers and instructed the parties to submit responses to a proposed sanctions order. See [ECF No. 67 at 7]. After reviewing the parties' responses, [ECF No. 68]; [ECF No. 69], the Court concluded that further specificity was required and that the parties were best positioned to provide that specificity, see [ECF No. 70]. The parties have now conferred and submitted a joint statement, [ECF No. 73], that contains several agreed-upon terms, as well as certain outstanding disagreements. This order resolves those disagreements and concludes with a final sanctions order against Defendants.

## I. PRODUCTION OF CLASS LIST

The parties agree that Defendants will produce to Plaintiffs' counsel, subject to a protective order, the list of potential class members that Defendants generated in response to the Court's March 31, 2026, order. They have the following disagreements.

### A. Country of Origin

Plaintiffs request that the list include each class member's country of origin. Plaintiffs argue that they require this information to determine whether each class member is detained and in removal proceedings and to predict which language would be most effective for reaching that class member. [ECF No. 73-1 ("Pls.' Statement") at 6–7]. Defendants do not respond directly to this contention, see generally [ECF No. 73-2 ("Defs.' Statement")]. Accordingly, the Court concludes that the list should include country of origin.

### B. Effect of Protective Order on Compliance Timeline

The parties dispute whether the list should be disclosed before or after entry of a protective order. Plaintiffs note that they have already attempted to reach agreement on a draft protective order and argue that Defendants should not be able to "further delay[] . . . compliance" by prolonged protective-order negotiations. [Pls.' Statement at 7]. The Court concludes that disclosure of the private information contemplated by the parties' agreement should not occur without a protective order in place, but will order the parties to promptly reach agreement on the terms of such order pursuant to the timeline set forth in the Court's sanctions order.

## II. ADVERSE CONSEQUENCES

The parties agree that Defendants will identify to Plaintiffs' counsel all class members who experienced an "Adverse Consequence," as defined in the order, which they agree includes being detained, receiving an adverse decision on an immigration benefit request, and missing an appointment with a Department of Homeland Security ("DHS") subcomponent. [ECF No. 73 at 3]. They disagree about the following.

### A. Inclusion of Removal Orders and In Absentia Removal Orders

The parties disagree about whether "Adverse Consequence" should include issuance of removal orders and in absentia removal orders. Plaintiffs assert that as a result of the April 2025

parole terminations, some class members may have "chose[n] not to pursue available relief or . . . not . . . appear for a hearing," resulting in the entry of a removal order against them. [Pls.' Statement at 9]. Defendants argue that removal orders are not direct consequences of the April 2025 parole terminations because the class members' removal proceedings exist independently of their parole status. See [Defs.' Statement at 6]. They further argue that class members should have attended their hearings even if their parole had been revoked, and in those hearings, any defense against removal would have remained available. See [id.]. Nonetheless, Defendants "will not oppose motions to reopen before EOIR premised on an adverse consequence during the March 31, 2026, to April 2[1], 2026[,] time period." [Id.].

On the parties' briefing, the Court finds that the chain of reasoning articulated by Plaintiffs is too attenuated and speculative, and that the legal basis for the Court invalidating final removal orders is too vaguely articulated. They will not be included in the definition of "Adverse Consequences."

**B. Relevant Time Period**

Plaintiffs propose that Adverse Consequences from April 2025 through April 21, 2026, should be covered by this provision, [Pls.' Statement at 7], while Defendants propose that only Adverse Consequences from March 31, 2026, to April 21, 2026, should be covered, [Defs.' Statement at 4]. Plaintiffs argue that their proposed time period follows naturally from the fact that the original parole terminations were vacated by the Court's order granting partial summary judgment to Plaintiffs, [ECF No. 48], meaning that all consequences of those terminations were invalid. [Pls.' Statement at 8]. Defendants respond that the basis of the Court's decision to order sanctions was their delayed compliance with the Court's summary judgment order, and that because their noncompliance only lasted from March 31, 2026, until April 21, 2026, only that time period should serve as a basis for further sanctions. [Defs.' Statement at 3–5]. Defendants

further contend that including the time period prior to the Court's March 2026 decision would result in relief beyond what is available to a class under the APA. [Defs.' Statement at 5].

The Adverse Consequences identified by the parties are collateral effects of the Defendants' unlawful termination of parole in April 2025, which was vacated by the Court's order. Accordingly, they are within the scope of relief available in this action. Though Defendants' noncompliance itself only occurred after March 31, 2026, the group of class members who may have been prejudiced by that noncompliance includes those who suffered Adverse Consequences between April 2025 and March 31, 2026, who may have been unable to seek remediation of collateral effects prior to the re-termination of their parole in April 2026. Accordingly, the Court concludes that the relevant time period for defining Adverse Consequences runs from the initial parole termination through April 21, 2026.

## III. AFFIRMATIVE REMEDIATION

The parties agree that, for the group of "Affected Class Members," defined as any class member who suffered an Adverse Consequence, Defendants will take certain remedial steps. The parties disagree about whether those steps should include the following.

### A. Release of Affected Class Members Presently in Immigration Detention

The parties disagree as to whether Defendants should be required to release presently detained Affected Class Members who were detained because their parole lapsed between April 2025 and April 2026. Plaintiffs argue that release "is the only way to undo the harm" of being detained pursuant to a parole termination that was later vacated (and, in some cases, kept in detention after the vacatur of the parole terminations). [Pls.' Statement at 11]. Defendants argue that class members cannot seek present release as a remedy for past detention and that Plaintiffs have not identified any basis for that remedy. [Defs.' Statement at 6–7].

Though the Court is sympathetic to the facts presented by Plaintiffs throughout this litigation, Plaintiffs have not identified any case in which a court ordered the release of people whom the Executive had independent lawful authority to detain; nor have they persuaded the Court that such a remedy would be appropriately tailored to the situation at hand or comport with basic separation-of-powers principles. Accordingly, the Court will not issue a class-wide order that orders release or bar the government from asserting another basis for ongoing detention. Any challenges to present detention will need to be litigated in separate matters.

**B. Waiver of Fines and Civil Penalties**

The parties dispute whether Defendants should waive any fines based on "fail[ure] to depart after being ordered removed" and any collateral civil penalties resulting from being removed. [Pls.' Statement at 14]. The costs Plaintiffs identify are those prescribed by 8 U.S.C. § 1253(a), which provides for financial penalties where a noncitizen does not comply with a removal order, and the civil penalties identified are those prescribed by 8 U.S.C. § 1182(a)(9)(A), which makes noncitizens who were previously removed under certain circumstances inadmissible for a particular period of time. See [Pls.' Statement at 14]. Plaintiffs argue that "it would be doubly unjust to . . . penalize class members . . . for complying with an instruction Defendants had no lawful basis to give." [Id. at 14]. Defendants argue that these remedies would both require a "highly burdensome case-by-case review" and would address "consequences that are too attenuated from the parole termination." [Defs.' Statement at 5]. On balance, the Court finds Defendants' position persuasive as a legal and practical matter, though it acknowledges Plaintiffs' fairness concerns.

**C. Public Notice**

Plaintiffs propose that Defendants provide notice to Affected Class Members of the availability of this process. [Pls.' Statement at 15]. Notice is necessary, they explain, because

the April 2025 parole terminations might have made Affected Class Members believe they were no longer eligible for certain benefits that require a noncitizen to have held parole status for a certain time period before applying. [Id.]. Because the Court later declared those parole terminations unlawful, Plaintiffs suggest that Affected Class Members be advised that they may now be eligible, or might have been eligible at a certain earlier time, to apply for an immigration benefit. [Id.]. More generally, they point out that without notice, the remediation process offered by Defendants may "exist[] on paper" without the affected individuals ever learning about it. [Id. at 16]. Defendants do not explain why they oppose such notice. See [Defs.' Statement at 4–7]. On balance, the Court concludes that notice of the remediation process is appropriate.

### D. Backdating Benefit Awards

The parties agree that Defendants will implement a process by which class members may request reopening or reconsideration of any adverse immigration benefit decision that they believe resulted from the April 2025 parole termination. [ECF No. 73 at 3–4]. Plaintiffs propose that where a benefit is awarded following reopening or reconsideration of a case or application under this procedure, the award be backdated "nunc pro tunc, under 8 C.F.R. § 214.1(c), to the date of the earliest time the applicant could have applied if it had not been for the unlawful termination of their parole." [Pls.' Statement at 15]. Plaintiffs again note that because eligibility for benefits in the immigration context often depends on how long a noncitizen has held a certain previous status or benefit, backdating the award of benefits is necessary to prevent any prejudice in applying for future immigration benefits resulting from the April 2025 parole terminations. [Id.]. Defendants note that "[c]lass [m]embers were not precluded from filing for immigration benefits as a result of the April 2025 parole termination" and contend that Plaintiffs have identified no basis, other than concerns of fairness, for why applications for benefits should be

treated as approved on the first day they could have been filed, as opposed to on the date they are approved. [Defs.' Statement at 7 (emphasis in original)]. On balance, although the Court understands the practical utility of backdating, such a remedy is not appropriately tailored to the issues addressed by this order. Accordingly, the order will not contain a term concerning nunc pro tunc issuance.

## IV. SYSTEMIC CORRECTIVE MEASURES

### A. Guidance Concerning Release from Detention

Plaintiffs propose that Immigration and Customs Enforcement's Office of the Principal Legal Advisor be directed to issue guidance that entitles Affected Class Members to immediate release from detention. Plaintiffs incorporate the arguments discussed supra Section III.A. [Pls.' Statement at 19]. For the reasons previously discussed, their position is unavailing.

### B. Restoration of Asylum Proceedings

Plaintiffs propose that Defendants terminate removal proceedings and reinstate affirmative asylum proceedings for class members who had pending asylum applications at the time of their parole terminations, then were placed in removal proceedings after their parole was terminated. Plaintiffs argue that their proposal "would simply return class members to the proceedings they were already pursuing before Defendants' unlawful conduct disrupted them." [Pls.' Statement at 19]. Defendants argue that the Court need not, and cannot, provide for an alternative asylum process outside of the existing procedures afforded by the Executive Office for Immigration Review ("EOIR"). [Defs.' Statement at 8]. On balance, and in the absence of a substantiated legal argument in support of Plaintiffs' request, the Court agrees with Defendants.

### C. Addition of a Notation to Class Members' Files

Plaintiffs propose that Defendants "add a notation to each class member's file that the April 2025 parole termination may not be used as a basis for denial of any applications, or as the

basis for accrual of unlawful presences under 8 U.S.C. § 1182(a)(9)(B)." [Pls.' Statement at 17]. Plaintiffs argue that such a notation is necessary to produce "a durable record" as opposed to a "database" that may not be in front of a given immigration officer or attorney. [Id. at 19]. Defendants argue that this is "cumulative and disproportionately burdensome" in light of the existing correctional measures to which Defendants have agreed, and aver that "adding a notation to a class member['s] record in a relevant database is the most consistent and efficient way of ensuring that the notation is visible . . . ." [Defs.' Statement at 7–8]. On balance, the Court concludes that the parties agreed-upon approach is sufficient and that Defendants need not add any further notation.

### D. Revision of Internal Policy Manuals, Similar Materials, and Case Management Systems

Plaintiffs propose that Defendants "promptly revise all applicable policy manuals, practice manuals, field guidance, training materials, and case-management systems." [Pls.' Statement at 17]. Plaintiffs argue that without such revisions, there is a risk that "Defendants' own personnel" may "continue relying on the unlawful terminations." [Id. at 20]. Defendants argue that this is unnecessarily burdensome given the safeguards that Defendants have already agreed on. [Defs.' Statement at 7]. The Court agrees with Defendants.

### E. Translation of the Notice

Plaintiffs propose that Defendants translate the notice into languages "sufficient to reach at least 95% of class members." [Pls.' Statement at 17]. Defendants propose working with Plaintiffs to select three languages for translation of the notice. [Defs.' Statement at 7]. Plaintiffs argue that Defendants have not provided a clear rationale for why translation into a certain number of languages would be particularly burdensome, and that the notice should be translated in relation to "the actual composition of the class," which may require more languages

to be effective. [Pls.' Statement at 20]. Defendants argue simply that "[t]hree [l]anguages is [r]easonable." [Defs.' Statement at 8]. On balance, the Court concludes that the expenditure of resources to calculate which languages would reach 95% of class members would be excessive, but that three languages may be too few. Accordingly, Defendants will translate the notice into five languages, to be determined jointly with Plaintiffs.

### F. Referral to Legal Services Providers

Plaintiffs propose that Defendants "provide each class member with information regarding available free or low-cost legal service providers accredited to practice before EOIR and USCIS." [Pls.' Statement at 18]. Plaintiffs argue that such a referral is "a low-burden addition that helps class members act on the very rights this Order would otherwise give them only on paper." [Pls.' Statement at 20]. Defendants argue that this requirement would "impose a burden" disproportionate to the circumstances. [Defs.' Statement at 8]. On balance, the Court concludes that providing legal services referrals would overstep any party's role here, and as such this term will be excluded.

## V. OTHER DISPUTES

### A. Compliance Deadlines

The parties disagree about a variety of deadlines. As to each deadline, the Court has selected a deadline that it deems reasonable in light of its resolution of all disputed issues.

### B. Supervision

Plaintiffs propose that Defendants be required to submit weekly status reports and appoint a particular point of contact, termed a "compliance liaison." [Pls.' Statement at 21]. They contend that issues they have had receiving timely responses from defense counsel, who have needed to consult agency personnel, suggest that without close oversight by the Court, Defendants will not timely comply. [Id.]. Defendants disagree and do not consent to such

reporting, noting that it would be particularly redundant where they have reached agreement with Plaintiffs on much of this order. [Defs.' Statement at 8]. On balance, the Court agrees with Defendants. The Court's order instructed the parties to agree to terms that "d[o] not require an onerous administrative burden." [ECF No. 70]. Close supervision of the type contemplated by Plaintiffs would be a poor use of the Court's limited resources.

### C. Alternative Compliance Path

Plaintiffs propose that Defendants be permitted to comply with this order, in the alternative, by withdrawing the April 2026 terminations of parole and extending class members' parole for six months. [Pls.' Statement at 22]. Given the 15-day time limitation Plaintiffs propose on Defendants' election of this alternative pathway, [id. at 22], and the fact that Defendants appear disinterested in it, see [ECF No. 73 at 7], the Court sees no utility in providing this as an alternative remedy.

### D. The Final Paragraph of Defendants' Proposed Order

Plaintiffs do not agree to the final paragraph of Defendants' proposed order, which notes:

> Nothing in this order impacts or prohibits the Defendants from exercising DHS's discretionary authority to terminate parole for a particular Class Member, or impacts Defendants' discretionary decision to terminate Class Members' parole in April 2026. DHS will consider all requests for immigration relief, including requests to reopen or reconsider an adverse decision on an immigration benefit request, on a case-by-case basis.

Plaintiffs do not raise any particular argument as to why this paragraph should not be included. Nonetheless, to the extent that this paragraph is an accurate description of Defendants' authority, its inclusion would be redundant, and to the extent, if any, that it implies a conclusion about Defendants' authority beyond what is established by existing law, Defendants have not provided any support for such a conclusion. Accordingly, the Court will exclude it.

## VI. FINAL ORDER

For the reasons previously elaborated, see supra; [ECF No. 67 at 5–7], the parties are **ORDERED** as follows:

### A. Protective Order

No later than five days after the entry of this Order, Defendants shall provide Plaintiffs with a good-faith proposal for a stipulated protective order governing information disclosed to Plaintiffs' counsel pursuant to this Order, if they have not done so already. No later than 14 days after the entry of this Order, the parties shall submit a proposed protective order. Except where a deadline in this Order is specifically defined in relation to the Court's approval and entry of that protective order ("Protective Order"), all deadlines are defined in relation to the entry of this Order.

### B. Production of Class List

No later than 48 hours after the entry of the Protective Order, Defendants shall provide to Plaintiffs' counsel the list of all potential class members that Defendants generated in response to the Court's March 31, 2026 order.[1] The list must include each individual's name, Alien Registration Number (A#), date of birth, and country of origin.

### C. Adverse Consequences

No later than 48 hours of entry of the Protective Order, Defendants will identify all class members who experienced any "Adverse Consequence," as defined below, from the date that their parole was terminated in April 2025 until April 21, 2026. The following circumstances

[1] Class members are defined as "All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced at paragraph 38 of the Complaint without any further explanation; and (iv) remain in the United States." [ECF No. 48 at 25].

constitute categories of "Adverse Consequences" warranting identification: if a class member (a) was in or placed in immigration detention; (b) received an "adverse decision" on an immigration benefit request (for the purposes of this subsection, "adverse decision" means a United States Citizenship and Immigration Services ("USCIS") decision on an immigration benefit request—including but not limited to adjustment of status, but excluding employment authorization based on parole—that was denied, dismissed, deemed abandoned, administratively closed, rejected, or referred to the Executive Office for Immigration Review (EOIR)); or (c) missed an appointment, interview, or check-in with a DHS subcomponent.

**D. Affirmative Remediation**

Within 14 days of this Order, Defendants will declare that the April 2025 termination of parole status cannot be used as a basis for denial of any applications, or as grounds for decisions regarding admissibility and detention, or as the basis for accrual of unlawful presences under 8 U.S.C. § 1182(a)(9)(B).

Within 21 days of this Order, Defendants will establish a process that will allow Affected Class Members to request reopening or reconsideration of an adverse decision on an immigration benefit request (other than employment authorization based on parole) from USCIS without a fee, if the class member believes that an adverse decision resulted from the April 2025 parole termination, he or she is otherwise eligible for the benefit sought, and USCIS retains jurisdiction over the application. As a part of this process, Defendants will ensure that Affected Class Members are notified that they may qualify to avail themselves of this process.

**E. Systemic Corrective Measures**

Within 21 days of this Order, Defendants will update relevant internal databases to reflect that parole terminated in April 2025 was reinstated, with a notice that will substantially state:

> The termination of this individual's parole in April 2025 was vacated by court order in Doe v. DHS, 1:25-cv-12245 (D. Mass. Mar. 31, 2026). The April 2025 parole termination may not be used as a basis for denial of any applications or as grounds for decisions regarding admissibility and detention. Consult agency counsel for further guidance. This court order does not impact or supersede any termination of parole that occurred in or after April 2026.

Defendants will issue guidance to USCIS, Immigration and Customs Enforcement and Customs and Border Protection to: (a) treat the April 2025 parole terminations as if they had never occurred; (b) upon request from an Affected Class Member, rescind, reopen, or correct any penalty, denial, dismissal, deemed abandonment, or adverse decision, consistent with DHS's authority, if the class member can establish eligibility for the benefit; (c) not rely on any Adverse Consequence as a basis for any future adverse action, negative discretionary finding, or statutory or regulatory bar; and (d) as to matters before EOIR, not oppose Affected Class Members' motions to reopen or rescind in absentia orders of removal, or not oppose and affirmatively support motions to reschedule premised on an Adverse Consequence, and so notify EOIR.

Within 14 days of the entry of the Protective Order, Defendants shall also send class members a notice containing the following message, translated into five languages to be determined jointly with Plaintiffs:

> This is an official government message. You are receiving this message because your immigration parole under 8 U.S.C. § 1182(d)(5)(A) was previously terminated by the federal government via mass email in April 2025. You are hereby notified that on March 31, 2026, the United States District Court for the District of Massachusetts held that the parole terminations by email in April 2025 did not follow the required procedure. The April 2025 terminations of parole via mass email were unlawful and have no legal effect.
>
> The government cannot detain you on the basis that your parole was terminated by mass email in April 2025. If you suffered consequences in asylum proceedings or any other immigration proceeding as a result of the April 2025 termination of parole via mass email, the government must provide an opportunity for you to seek relief from that consequence.

Other than invalidating the April 2025 terminations of parole via mass email, the Court's decision did not limit the government's ability to terminate your parole, provided that the government follows the required procedure. This notice does not affect any other decision that the government may have made, either before or after March 31, 2026, to terminate your immigration parole, and it does not limit the government's ability to detain you or take any other lawful action against you on the basis that your parole has been lawfully terminated.

**SO ORDERED.**

September 28, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE